IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARIA JOSE PIZARRO

                    Plaintiff,

-against-

EUROS EL TINA RESTAURANT LOUNGE and
BILLIARDS CORP., SANTIAGO QUEZADA, And
SANTIAGO QUEZADA, Jr.,

                    Defendants.

-and-

JOSE E. CASTRO, ELADIO CASTRO PRODUCTIONS,
INC., EMITON FERNANDEZ a.k.a. EMILIO
FERNANDEZ, NARCISO GOMEZ, ZOILIMAR MEJIA
a.k.a ZULIMAR MEJIA, and TOMAS ANDRES
PIZARRO ZEPEDA

                    Third Party Defendants

**No. 1:20-cv-05783-AKH**

**AFFIDAVIT IN SUPPORT
OF DEFENDANT'S
OPPOSITION TO
PLAINTIFF'S MOTION TO
COMPEL**

STATE OF NEW YORK   )
                    )   ss.:
COUNTY OF NEW YORK )

      SANTIAGO QUEZADA, Jr, being duly sworn deposes and says the following pursuant,

to the penalty of perjury:

      1.  I am a defendant in the above captioned action.

      2.  In addition, I am Santiago Quezada's son and assisted him in his dealings with Euros

El Tina Restaurant Lounge and Billiards cop. (hereinafter, the "Lounge").

      3.  I am fully familiar with the facts herein.

      4.  As an initial matter, at the commencement of this litigation my attorney on this case,

Martin E. Restituyo, asked us (my father and I) to gather all of the documents we had with

respect to the plaintiff, Maria Pizarro (the "Plaintiff").

      5.  In addition, earlier this year, my attorney's office sent me Plaintiff's First Request for

Production of Documents and Plaintiff's First Set of Interrogatories.

6. As my father's assistant I diligently searched for, gathered, and sent to my attorney all of the documents that we had with respect to the Plaintiff.

7. The search included reviewing all of our files, the computer in the office, and any surveillance information we had. In addition, I asked my father for any documents he may have had.

8. We provided everything we had to our attorney, over 250 pages worth of documents and pictures found predominantly in the office computer's hard-drive. Those documents were then bates stamped and sent to Plaintiff's attorney.

9. We have no more documents that relate to or reference Plaintiff in any way.

10. From what I have seen everything we provided to our attorney was provided to the Plaintiff.

11. During the time that the Lounge was open, there as a computer in the office. The computer was predominantly, if not exclusively, used by the Plaintiff. Our production included among other things pictures, documents, and files that were found in the computer. These items were discovered only subsequent to the closure of the Lounge.

12. The pictures of Maria in the office moving the camera were taken by me as screenshots on my phone. I found it curious that she was moving the cameras and turning off the lights.

13. Unfortunately, according to Plaintiff our surveillance systems and POS systems were not any good and so we were never actually able to retrieve much information from them. Conveniently Plaintiff had full access to both including the passwords and ability to change all settings, which she did regularly.

14. With respect to the documents, emails, and other document relating to the Plaintiff that were provided, I want to make it clear that I have never been to Plaintiff's house. I have never even seen Plaintiff's personal computer, and I have never touched her telephone. I have no contact with Plaintiff and do not otherwise have access to anything belonging to her.

15. All of the information gathered and provided to our attorney was gathered from the office computer, which we now know Plaintiff used for her own purposes.

16. With respect to personnel records for the Plaintiff, the answer is, was and will be that there are none.

17. There are no personnel records for Plaintiff because she was the general manager of the Lounge which she actually operated like the owner. Plaintiff knew more about the business than my father and I combined.

18. To be sure, Plaintiff hired, fired, and set the wages for all of the employees at the Lounge; she set her own schedule and the schedules of all of the staff; she purchased all supplies and worked with all of the vendors; and she coordinated with all of the contractors including the DJs, promoters, and security personnel.

19. As mentioned above, Plaintiff had complete access to all of the cashiers and cash registers, the Point of Sale (POS) system, and the security cameras, not to mention the security guards.

20. Plaintiff was also responsible for maintaining all of the employee files, including her own. Thus, to the extent that there was no file on her, it's because she did not keep one.

21. In sum, we searched for and provided our attorney everything we had with respect to

the Plaintiff. From everything that I've seen all of that information was sent to the Plaintiff in

this case.

Santiago Quezada, Jr.

Sworn to before me this 2nd day
of July 2021.

Notary Public

JULIO JIMENEZ
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01JI4961734
Qualified in New York County
Commission Expires March 11, 2022