## LAW OFFICES OF MARTIN E. RESTITUYO, P.C.
1325 Avenue of the Americas, 28th Floor, New York, New York 10019

Martin E. Restituyo<br>
Tel: 212-729-7900<br>
Fax: 212-729-7490<br>
restituyo@restituyolaw.com

June 10, 2022

*Via ECF*

Hon. Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 14D
New York, New York 10007-1312

   Re: *Pizarro v. Euros El Tina Restaurant Lounge and Billiards, et al.*,
      Case No. 20 Civ. 5783 (AKH)

Dear Judge Hellerstein,

  This letter is being submitted jointly by the parties in accordance with your Honor's order dated May 20, 2022, entitled "Order Regulating Proceedings" and pursuant to Rule 2E of Your Honor's Individual Rules of Practice. Specifically, the defendants, Euros El Tina Restaurant Lounge and Billiards Corp., Santiago Quezada, and Santiago Quezada, Jr. (collectively "Defendants"), submit this letter seeking to compel certain outstanding discovery yet to be provided by the plaintiff, Maria Jose Pizarro ("Plaintiff") and third-party defendant Jose E. Castro ("Castro") and Eladio Castro Productions, Inc. ("Productions") (Castro and productions together the "Third-Party Defendants").

## **DEFENDANTS' POSITION**

  As the Court would recall, on March 24, 2022, the Court issued an order bifurcating the proceedings in this action. Doc. No. 130[1]. Consistent with that order and the pending motions to compel made by Plaintiff and Defendants, the Court ordered Defendants to produce certain information that Plaintiff claimed she lacked, while simultaneously staying all discovery related to Defendants' claims. *Id.* By letter motion dated May 18, 2022, Defendants advised the court that with respect to Plaintiff's claims they still needed the communications between Plaintiff and Castro in order to properly defend themselves at the trial of Plaintiff's case. Doc. No. 136. During the conference, the Plaintiff and Castro's counsel assured the Court that they had produced all communications in response to Defendants demands and thus the Court issued an order requiring that they submit affidavits to that effect. *See* Doc. No. 137.

---

[1] Citations to "Doc. No.___" refer to the documents as they appear in the docket for this case.

As a separate matter, and because the trial date for Plaintiff's case was so far extended, the Court asked for a joint submission with respect to the outstanding discovery claimed necessary by the Defendants in order to complete discovery with respect to their claims. *Id*.

Thus, Defendants' purpose for submitting this letter is: 1) to show the court that Plaintiff and Castro have submitted conflicting and likely perjurious statements under oath that the Defendants seek permission to confirm as this goes to the heart of Plaintiff's claims and Defendants' defenses, and 2) to compel the production of documents needed to prosecute Defendants' claims against Plaintiff and the Third-Party Defendants.

As to the first point, Defendants' request permission to subpoena Plaintiff and Castro's phone records and have access to their computers in order to verify that these parties have not perjured themselves with respect to the affidavits submitted in response to the aforementioned Court Order of May 20, 2022.

As to the second point, the Court is reminded that all documents being sought from the Plaintiff are the same as those requested in the Defendants' motion to Compel filed on August 13, 2021. Doc. Nos .97 – 100. The Court is equally reminded that while a motion to compel was not previously filed against the Third-Party Defendants, this was on express orders from the Court who in conference on September 10, 2021, instructed the parties not to submit additional discovery motions until the issue of subject matter jurisdiction had been decided. Doc. No. 108.

## I. The need to subpoena phone records and access to their computers

At the telephonic conference held on May 20, 2022, Plaintiff and Castro's attorneys represented that they had fully complied with the Defendants' discovery demands and that they had no additional documents in their possession. As a result, the Court ordered the Plaintiff and Castro, as well as their counsel, to submit affidavits "attesting that diligent search has been made for all responsive documents, that full production has been made, and that there are no further documents in [the Parties'] possession custody or control responsive the Defendants demand." Doc. No. 137 at 2.

In response to the order, on May 25, 2022, Plaintiff produced a total of 10 emails and no other communications to/from Mr. Castro. Ex. 1[2] (without attachments). Thereafter, Plaintiff sent the Defendants a Declaration saying, "I have searched all documents in my possession, custody, and control for all communications between plaintiff and Jose Eladio Castro during the relevant time period" and "[a]fter my review, I . . . provided all responsive documents within my possession, custody, or control as requested by my attorney." Ex.2, ¶¶ 3-4. In addition, Plaintiff's counsel also submitted a Declaration indicating that he had directed his client to search for all documents in her possession, that she had produced certain documents (the 10 emails) that where later conveyed to the Defendants, and that Plaintiff had informed him that those "constituted all of the responsive documents in her possession custody and control." Ex. 3.

---

[2] References to "Ex. __" refer to the exhibits annexed hereto. Defendants' exhibits are marked by numbers and Plaintiff's exhibits are indicated by letters.

For his part Mr. Castro and his attorney provided similar affidavits. Mr. Castro claims to have provided to his attorney "all communications between [himself] and Plaintiff Maria Pizarro", while his counsel asserts that he produced all of the communications provided by his client. Exs. 4 & 5.

Defendants believe that Plaintiff and Castro are not being truthful and would like to have access to their computers and phone records in order to prove it.

### a. Plaintiff Stated that there were WhatsApp messages but failed to produce them

During the deposition of Plaintiff, that took place on August 20, 2021, Plaintiff was specifically asked whether she communicated with Mr. Castro via WhatsApp[3], to which she responded "Yes," See Ex. 6, at 212:11-13. Thereafter, when counsel asked Plaintiff whether she had produced all of the email and WhatsApp communications between her and Mr. Castro, she testified that she had not. Ex. 6 at 212:14 – 213:7. When she was asked whether she even searched for all email and WhatsApp communications with Mr. Castro Plaintiff responded "no" to both. Ex. 6 at 212:17-24.

Lest the Court think this was a mishap, one month earlier, on July 27, 2021, when she was asked whether she had reviewed or searched for email communications Plaintiff testified that she did not remember. Ex. 7, 181:8 – 182:2. Thus, when responding to a similar question one month later, she was sure that she had not searched for any emails or communications.

First, it's worth noting that the deposition that was being conducted on August 20, 2021, was the second attempt to depose Plaintiff. Second, it came over four months since Plaintiff had been served with Defendants' document demands seeking this information, and at least two and half months after the close of paper discovery (April 9, 2021, and June 5, 2021, respectively). Finally, and even more disturbing, is the fact that Plaintiff testified under oath that she did communicate with Castro via email and WhatsApp and that to date she has failed to produce all of those communications.

So, at best she is lying and at worst, on counsel's watch, Plaintiff tampered with evidence and deleted her files.

### b. The other problem with Plaintiff and Castro's Declarations

Plaintiff and Castro's depositions are also inaccurate because from what both parties have produced, we know that the other one is not being forthcoming. Here, while Plaintiff produced email communications between herself and Castro, Castro failed to produce any emails. Conversely, Castro provided some of the communications between himself and Plaintiff that transpired via WhatsApp, but Plaintiff failed to produce any of those communications.

---

[3] WhatsApp is an application that allows individuals to send encrypted messages to each other.

Since the communications between them is a closed circuit, a communication from one to the other would be had by both. Hence, there is no excuse for why Plaintiff failed to produce messages while Castro failed to produce emails. And, to be sure, no excuses for this discrepancy have been provided.

### c. Castro's excuses for the missing communications do not make sense

During Mr. Castro's deposition Defendants' Counsel had the opportunity to ask regarding his failure to provide WhatsApp messages with the Plaintiff for the period prior to April 2021. In one brief stretch of interrogation Mr. Castro testified to: 1) possibly having reset his phone, 2) not remembering whether he actually searched for the messages, or 3) perhaps deleting the messages because his phone's memory was full. Ex. 8, 176:8 – 178:15. Indeed, all possible scenarios, but no actual definitive answer was provided. In short, Castro has no real excuse for failing to provide these messages.

### d. The number of the emails produced seems suspicious given their communication pattern

With respect to the emails produced by Plaintiff, it is interesting to note that she provided only 10 emails generated in a span of 5 years (2 from 2015, 5 from 2016, 1 from 2017, and 2 from 2020). This seems quite infrequent given that the email communications that we already had indicate that the parties communicated frequently via email and WhatsApp.

To be sure, the emails retrieved from the Defendants' office computer show that Plaintiff and Castro exchanged emails at the rate of at least 2 per day. Equally, the text messages produced by Castro show that they communicated multiple times per week with each session containing several interactions from each party. And, so, the production of a total of 10 emails over the span of 5 years seems dubious, to say the least.

### e. The only way to discern whether Plaintiff and Castro are withholding documents is to review their phone records and to inspect their computer

It is important to note that since Plaintiff and Mr. Castro did not produce the same documents, we have overlap, which clearly indicates that there are at least some communications between the two of them that the other did not turn over. More importantly, however, we assume that since both the parties and their attorneys claim that no such records exist, they would have no problem allowing us to verify those claims.

#### i. Plaintiff And Castro Can Give Us Authority To Obtain Their Email And Phone Records Or We Can Subpoena Their Phone Records

The Stored Communications Act (SCA), 18 U.S.C. §§ 2701 *et. seq*., regulates what information can be requested from email and telephone service providers and by whom. The SCA makes it clear that these services providers may divulge the contents to communications transmitted via their services to "an addressee or intended recipient of such communication" or "with the lawful consent of the originator or an addressee or intended recipient of such

communication." 18 U.S.C. § 2702(b)(1) and (b)(3). Thus, here, Plaintiff and Mr. Castro could simply provide us with a signed and notarized authorization to obtain the remaining records that they did not provide, and we could easily retrieve these for them and resolve the outstanding discovery issues.

In the alternative, the parties could voluntarily, or by instruction of the Court, provide us the name of their cell phone service provider and we could subpoena those records on our own. While under this scenario it is true that the SCA would prohibit the service providers from disclosing to us the "contents of a communication", we would still be able obtain other information such as the identity of a particular account holder, IP address information, the date, time, and originating phone number of a text message, and other non-content information. 18 U.S.C. 2702(a)(1). Such information would be useful to determine the extent of the communications between the parties during the Relevant period and indicate what percentage of those communications have turned over and what percentage was not.

### ii. Plaintiff and Castro should turn over their devices to prove that no evidence has been tampered with

Equally important, Defendants demand access to Plaintiff's and Castro's computers and cell phones so that we can have an expert determine whether and to what extent any evidence has been tampered with. Let the court be reminded that the evidence that formed that basis of Defendants' counter claims against these parties came from deleted files found on the computer located in the office of Defendants' establishment. It would not require a stretch of the imagination to believe that similar files can be recovered from Plaintiff's and Castro's devices.

It is not uncommon in this District for courts to permit the inspection of computers or cellular phones by experts in order to determine whether any evidence has been tampered with. Here, given the clear disparity of evidence exchanged by the parties and also the lack of information during certain key periods of time which would be pertinent to Plaintiff's and Defendants' claims, it would behoove the Court to allow the Defendants, via an expert, to inspect Plaintiff's and Mr. Castro's computer and cell phone, to determine whether any evidence has been tampered with.

And, again, to the extent that Plaintiff and Mr. Castro claim that no such evidence ever existed, it should be no burden to them.

### f. Permitting said discovery will not cause undue delay or prejudice to the parties

Finally, we point out that since the trial date for this action is already set for March 2023, the proposed discovery can be completed sufficiently in advance so as to neither delay the proceedings nor prejudice the parties.

Moreover, since the proposed discovery has the potential to reveal dispositive information (i.e. that Plaintiff and Castro regularly discussed the sexual harassment alleged or, in the alternative, that Plaintiff and Castro have perjured themselves) it may significantly reduce the time

required for a trial and/or the issues to be tried. With all information on hand, it may also have the added benefit of motivating the parties to settle this case rather than proceed to trial.

## II. The need to produce records associated with Defendants Counterclaims

On January 1, 2021, Defendants filed their First Amended Answer to Plaintiff's Complaint along with Counterclaims against Plaintiff and Cross Claims against Third Party Defendants Castro and Productions, among others. Doc. No. 39. In that pleading Defendants alleged several causes of action against the Plaintiff and the Third-Party Defendants, including: 1) Conspiracy, 2) Racketeering, 3) Fraud, 4) Conversion, 5) Aiding and Abetting Conversion, and 6) Unjust enrichment.

### a. Plaintiff has failed to produce the following items demanded of her during the discovery process

During the discovery process, Defendants served the Plaintiff with a set of document demands. As detailed in Defendants' Motion to Compel, filed on August 13, 2021, Plaintiff completely stonewalled Defendants attempted discovery. See Docs No. 97-100[4]. During the process of trying to obtain response to their document demands, Defendants expressed the need for those documents as follows:

As to Document Demand:

**Number 6**. Plaintiff failed to provide any requested communications with any of the eight (8) third party defendants relating to the transmission of monies or goods and services during the relevant period, claiming she does not have documents responsive to our request, when defendants have provided pictures of hundreds of receipts and pictures that were recovered from Plaintiff's work computer and belonging to her.

**Number 8**. Plaintiff failed to provide documents relating to payments made by any of the Third-Party Defendants, including Jose E. Castro Productions, Inc. during the relevant time period, claiming, *inter alia*, that this request is irrelevant and meant to harass. This request is relevant to the extent that it is directly related to the claims of fraud, racketeering, conversion, and unjust enrichment. Further, the request is intended to clarify the connection, if any, between Plaintiff and Third-Party Defendants.

**Number 9**. Plaintiff failed to provide documents relating to payments she made to any of the Third-Party Defendants during the relevant time period. Plaintiff objects claiming, *inter alias,*

---

[4] Rather than rehash all of the parties' communications and disputes with the respect to these matters, the Court is directed to the Defendants' Memorandum of Law in Support of Their Motion to Compel (Doc. No.100) which provides a detailed history of the many times this information was sought from the Plaintiff and Defendants documents Defendants compliance with the Court's Individual Rules.

that this request is irrelevant and meant to harass. This request is relevant to the extent that it is directly related to the claims of fraud, racketeering, conversion, and unjust enrichment. Further, the request is intended to clarify the connection, if any, between Plaintiff and Third-Party Defendants.

**Number 11.** Plaintiff failed to provide all documents concerning her bank accounts during the relevant period, claiming the request is, *inter alias*, unlimited in scope and overly burdensome. This request is not unlimited in scope to the extent that it requires "the relevant period," meaning the years the Plaintiff was employed by Defendant. During testimony on July 27, 2021, Plaintiff indicated that she did have a Chase bank account during the relevant period but did not provide those statements.

**Number 12.** Plaintiff failed to provide all documents relating to income producing activity, claiming irrelevancy. Defendant is entitled to such information to the extent that it is relevant to the claims of fraud, racketeering, conversion, and unjust enrichment.

**Number 13.** Plaintiff failed to provide all documents relating to income tax filings during the relevant time period. This information is relevant to the claims of fraud, racketeering, conversion, and unjust enrichment.

**Number 14.** Plaintiff failed to provide all documents relating to the receipt of any non-employment related sums of money, claiming irrelevancy and miscalculation of scope. Plaintiff's additional incomes are relevant to the claims of fraud, racketeering, conversion, and unjust enrichment.

**Number 15.** Plaintiff failed to provide all communications with a list of 16 individual, claiming irrelevancy. Plaintiff's communication with such individuals is directly related to and relevant to the claims of fraud, racketeering, conversion, and unjust enrichment.

**Number 16.** Plaintiff failed to provide all communications with a Christian Darren, claiming the request is irrelevant and not reasonably calculated to lead to discoverable evidence. Communication with C. Darren is related and relevant to the claims of fraud, racketeering, conversion, and unjust enrichment to the extent that Plaintiff had a sizeable amount of communication with C. Darren in her work computer at Euros.

**Number 17.** Plaintiff failed to provide all documents in her possession and control relating to money transfers inside or outside the United States, claiming the request is irrelevant and not reasonably calculated to lead to discoverable evidence. This information is relevant and crucial to the claims of fraud, racketeering, conversion, and unjust enrichment to the extent that Plaintiff had a substantial amount of documents in her work computer at Euros.

**Number 18.** Plaintiff failed to provide all documents in her possession and control relating to money transfers by any of the Third-Party Defendants to individuals inside or outside the United States, claiming the request is irrelevant and not reasonably calculated to lead to discoverable evidence. This information is relevant and crucial to the claims of fraud,

racketeering, conversion, and unjust enrichment to the extent that Plaintiff had a substantial amount of documents in her work computer at Euros.

**Number 19.** Plaintiff failed to provide all documents and complaints by her to any government agency, including the FBI, claiming the request is irrelevant and not reasonably calculated to lead to discoverable evidence. This information is relevant and crucial to the claims of fraud, racketeering, conversion, and unjust enrichment to the extent that Plaintiff communicated via email with the FBI from her work computer at Euros.

**Number 20.** Plaintiff failed to provide all documents and communications with any government agents with respect to the claims alleged in this action, claiming irrelevancy and absence of documents. This information is relevant and crucial to the extent that Plaintiff communicated via email with the FBI from her work computer at Euros.

See Ex. 9.

To date none of these documents have been produced.

### b. The Third-Party Defendants have failed to produce the following items demanded during the discovery process

During the discovery process, Castro and Productions were served with discovery demands. Exs. 10-11. Upon failing to produce the necessary documents, on August 16, 2021, Defendants served the Third-Party Defendants with a letter of deficiency indicating what was missing and why it was required. Ex. 12. Thereafter, after a series of email communications between the Defendants' Counsel and Counsel for the Third-Party Defendants, on the afternoon of August 31, 2021, the parties engaged in a discussion over the missing information. See Ex. 13. Nevertheless, to date the following requested information has not been produced in this case:

- Bank statements as requested at Document Request 8 and 12 for Mr. Castro and Document Request 9 for Productions. As you know bank transactions are at the center of this case. Moreover, since the Castro produced loan documents claiming that the money that was sent on behalf of Ms. Pizarro was done pursuant to loans made to Plaintiff by Productions. We are entitled to explore whether Plaintiff paid those loans or provided the money ahead of time as she did so with other parties in this action.

- Documents related to income producing activities engaged in during the Relevant Period, as requested at Document Request 13 for Mr. Castro and Document Request 11 for Productions. As you know, one of the defenses your client is likely to raise is that the money that he transferred for the benefit of Ms. Pizarro was his (hence the loan documents), thus we need to verify that that was in fact the case. In addition, you also know, by the testimony of my clients which is corroborated by Plaintiff's documents, it is alleged that your client and the Plaintiff were engaged in scheme to sell tickets at the door without the knowledge and consent of the

> Defendants. See Motion to Compel and the allegations with respect to Boletos Express and Tikeri LLC. As you know, your client as the promoter of the business was the person most responsible for ticket sales. Given these facts, we ask that these documents be produced immediately.[5]
>
> - Documents related to the receipt of any non-employment sums of money, inclusive loans, sales of assets, etc. (Castro Document Request 14, Productions Document Request 13). As we know Mr. Castro did issue at least two loans to the Plaintiff. As with the income questions discussed above, we would like to corroborate the payment of these loans and any other indicia of your client's income.
>
> - Documents relating to any corporations that Castro was a party to during the Relevant Time Period. As you know this is important and relevant given that Mr. Castro provided personal loan agreements between himself and the Plaintiff, and yet the checks that account for the money loaned were issued by Eladio Castro Productions, Inc. Thus, we demand that these documents and all other responsive ones be produced.
>
> - Provide any and all agreements entered into between Productions and Plaintiff as requested in Document Request 10. This information is required to sort out the issues outlined above, where Mr. Castro issued a loan, but the money was sent by Productions. Moreover, Productions did not say there was no agreement. Thus, please provide these documents.
>
> - Provide all receipts for the transmissions of money by either Castro or Productions on behalf of the Plaintiff.

See Ex. 12.

### III.   Defendants' Conclusion

Thus for the foregoing reasons, Defendants respectfully request that: 1) Defendants be provided with notarized consents form Plaintiff and Castro so that Defendants may contact their service providers and obtain copies of all communications between them, or in the alternative for the Court to require Plaintiff and Castro to disclose the names of their cell phone service providers so that we can subpoena their SCA compliant records; 2) requiring Plaintiff and Castro to hand over their computers and cell phones so that a third party expert could determine whether they have tampered with evidence; and 3) compelling Plaintiff and the Third-Party Defendants to produce all documents requested in Defendants' document demands, as outlined above.

---

[5] Please note we do intent to amend the complaint to add this allegation prior to moving forward to trial.

## **PLAINTIFF'S POSITION**

I. BACKGROUND.

By way of background, the Court granted Defendants' fourth request for an extension of discovery until July 30, 2021. Then, on July 30, 2021, Defendants again sought an extension of discovery so that it could make a motion to compel and re-depose Plaintiff and Mr. Castro as well as Mr. Fernandez for the first time. On August 3, 2021, the Court denied Defendants' motion but granted Defendants permission to depose the three parties for four hours each.

II. NO GOOD CAUSE SHOWN FOR THE REQUESTED DISCOVERY.

"[A] party seeking to file a motion to compel after discovery has closed must similarly establish good cause." *Gucci America, Inc. v. Guess?, Inc.*, 790 F.Supp.2d 136, 139-40 (2011) (*citing Eng-Hatcher v. Sprint Nextel Corp.*, 2008 WL 4104015, at *3 (S.D.N.Y. Aug. 28, 2008)). One of the factors in establishing good cause is giving a satisfactory reason for the delay and the opportunity available to make the motion. *See Gucci*, 790 F.Supp.2d at 140 On August 13, 2021, two weeks after discovery had closed and more than ten days after the Court had denied their motion for an extension of discovery to make a motion to compel, Defendants filed a motion to compel discovery. In their motion to compel discovery, Defendants provided no good cause for their delay in filing the motion to compel after the close of discovery. Now Defendants not only seek

III. FAILURE TO COMPLY WITH THE COURT'S INDIVIDUAL RULES

Defendants have also failed to comply with the Court's Individual Rules, specifically Rule 2E, which states that "strict adherence to the meet and confer rule us required and should be described in the joint submission as to time, place, and duration, naming counsel involved in the discussion." Notably Defendants never met and conferred with Plaintiff during discovery, nor have they attempted to do so since discovery closed. Defendants have not offered a good faith basis for excusing this requirement. Defendants' only reference to discussing issues with discovery was to say, ", in follow up letters and conversations, the Defendants expressed the need for those documents…" Not surprisingly, Defendants fail to advise the Court that after those conversations, Plaintiff responded substantively during discovery and produced additional documents, which are not at issue.

"[T]he failure to meet and confer in good faith with opposing counsel is 'sufficient reason by itself to deny [a party's] motion to compel.'" *Kaye v. New York City Health & Hosps. Corp.*, 2020 WL 7237901, at *10 (S.D.N.Y. Dec. 9, 2020) (*quoting Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016)); *Azzarmi v. Key Food Stores Co-Operative, Inc.*, No. 20-CV-6835 (GBD) (BCM) (S.D.N.Y. May 3, 2021) (motion to compel dismissed for failure to meet and confer); *Avent v. Solfaro*, 210 F.R.D. 91, 95 (S.D.N.Y. 2002) (same); *see Duran v. ELG Parking, Inc.*, No. 18 Civ. 6685 (GBD) (SLC) (S.D.N.Y. Apr. 29, 2021) (application for protective order rejected where moving party failed to comply with the meet and confer requirement); *see Olin Corp. v. Lamorak Ins. Co.*, 2021 WL 396781, at *10 (S.D.N.Y. Feb. 4,

2021) (finding that a party's failure to comply with procedural requirements to raise a discovery dispute, including Local Rule 37.2, "dooms" the application). Thus, the Court should deny Defendants request for leave to file a motion to compel discovery.

IV. RULE 11 IS IN PLAY FOR MR. RESTITUYO'S MISCONDUCT.

The representations made by Defense Counsel Martin Restituyo, Esq., continue to violate Rule 11.[6] Despite clear evidence to the contrary, Mr. Restituyo repeatedly has made misrepresentations to this Court regarding the discovery in this matter. Plaintiff will not address each falsehood individually, but to highlight the baselessness of Defendants' assertions, Plaintiff refers the Court to the following line from Defendants' portion of the joint letter, "Finally, on Tuesday, June 1, 2021, mere days before the discovery deadline, Plaintiff signed off on the discovery responses to Defendants demands, and in this era of covid and remote work, sent them via regular mail to Defendants' Counsels' New York City office." As seen by the email exchange, dated June 1, 2021, Plaintiff's counsel sent the discovery responses by email to Mr. Restituyo on June 1, 2021, and Mr. Restituyo responded to that email on that same day. *See* Email Exchange, dated June 1, 2021, attached herein as Exhibit A. Mr. Restituyo not only was aware of this fact back on June 1, 2021, as evidenced by the attached email, but he tried to mislead the Court in this same manner back on July 30, 2021. See Civil Docket Sheet, at Document No. 95, *2. Notably, Plaintiff addressed this very misrepresentation in that same joint letter, writing "In fact, on June 1, 2021, the undersigned emailed Mr. Restituyo courtesy copies of Plaintiff's discovery responses and indicated that hard copies had ALSO been placed in the mail." Id., at *5. Most of Mr. Restituyo's other misrepresentations regarding discovery are addressed in that same July 30, 2021 joint letter to the Court in the section titled "Plaintiff's Position." See id., at * 4 – 7.

V. THE CURRENT FISHING EXPEDITION.

Even though Mr. Restituyo admitted during the May 20, 2022 conference that he was not intending to seek additional discovery from Plaintiff beyond the Declarations agreed to by Plaintiff, Defendants now claim to need all of this additional discovery. As sworn to in the declarations provided to Defendants, Plaintiff's counsel asked Plaintiff for the responsive documents and she produced them. While Mr. Restituyo represented to the Court during the May 20, 2022 conference that the declarations would resolve the outstanding discovery issue, he now claims that he needs to search phone records, computers, and additional discovery. Notably, no subpoenas for phone records or access to computers was requested during discovery. Mr. Restituyo and Defendants now seek a fishing expedition to further harass Plaintiff. Plaintiff respectfully requests that the Court deny Defendants' request for permission to file another motion to compel discovery. Plaintiff also respectfully requests that the Court sanction Mr. Restituyo for his repeated misrepresentations to the Court as made crystal clear by the email exchange dated June 1, 2021.

---

[6] Plaintiff intends to file a Rule 11 Motion for sanctions.

**THIRD-PARTY DEFENDANTS' POSITION**

Third Party Defendants Jose Castro and Eladio Castro Productions responds to the completely frivolous arguments made herein by first stating that no good faith effort has been made to obtain the documents and information sought. While Defendants seek a release for cell phone records, they have either requested one in discovery n
or served a notice of inspection for Mr. Castro's cell phone or computer. Further, no meet and confer aside from this letter and the brief conversation with the Court which led to this letter was ever had relating to any of the items sought by Defendants. This requires the denial of the motion on its own. Prescient Partners, L.P. v. Fieldcrest Cannon, 96 Civ. 7590 (DAB)(JCF), 1998 U.S. Dist. LEXIS 1826, at *10-11 (S.D.N.Y. Feb. 18, 1998) (denying motion to compel due to failure to meet and confer) (citing FRCP Rule 37(a)(2)(B); Tri-Star Pictures, Inc. v. Unger, 171 F.R.D. 94, 99 (S.D.N.Y. 1997).

For context, the claims asserted in this matter against Mr. Castro and Eladio Castro Productions are for involvement in a scheme wherein they claim that the Plaintiff stole money from the Defendants. Mr. Castro loaned Plaintiff $29,200 in the summer of 2018 and another $23,000 in the fall of 2019. Contracts for these loans were produced, as well as records showing how the money was paid and how it was repaid. Defendants claim, without any basis, that the source of the money was somehow stolen from Defendants. Now, they are seeking to review every electronic record maintained by all opposing parties in what would be an incredibly invasive violation of privacy without any basis. Defendants' letter fails to connect any elements of claims to the information sought and should be denied.

Defendants argue that Mr. Castro must be withholding documents due to his production and Plaintiff's not being identical. However, Mr. Castro explained that over time he lost some of these communications either because his phone was reset or he deleted them. Further, Defendants falsely claim that Mr. Castro did not produce emails, yet within his production he did produce all emails he had as attested to in his affidavit.[7]

The six (6) bulleted issues described in Defendants' letter are responded to below in corresponding paragraphs to the bullets in Defendants' letter:

- Mr. Castro and his defunct company's bank records are entirely immaterial to this case and have nothing to add, as opposing counsel is aware due to the same issues being concurrently litigated in the matter titled Castro v. Quezada et al., Index No. 701594/2020 (Queens Cty Sup. Ct.) ("State Court Case"). My client is willing to permit Defendants to review and use the bank records already produced in the State Court Case in this action in order to resolve this dispute.

- Defendants' request for "income producing activities" is so broad as to be entirely undecipherable. To the extent that the Defendants have clarified to state that they want to know every dollar that Mr. Castro earned at any time during the period when Defendants claim he stole from them, we believe the production of his bank account records as well as

---

[7] Mr. Castro's email production was bates stamped 32-45.

his testimony wherein he described all of his business and employment experience during the period in question is more than sufficient, and exceeds what any reasonable inquiry should look for in respect to this case. To the extent that the Defendants are referring solely to this alleged, but unpled, claim that tickets were sold we will permit Defendants to use what documents were produced in relation to these claims in the State Court Case, wherein the matter is also being concurrently litigated under a counter-claim.

- Defendants' request to corroborate "non-employment sums of money, inclusive loans, sales of assets, etc." is so broad and vague that it should not be permitted. I am frankly unaware of what they are seeking. Mr. Castro responded truthfully to all inquiries during his deposition and if they cannot identify the documents, they are seeking with more specificity then I would be unable to instruct my client on how to respond. This request should be denied.

- "Documents relating to any corporations that Mr. Castro was a party to", which is sought in the fourth bullet point, is nonsensical and lacks any information from which I could even determine what Defendants are trying to find and how it would be relevant to this case. This request was further not made prior to this letter or identified in a discovery demand. Mr. Castro was further questioned about the same during his deposition.

- All agreements between Plaintiff and Mr. Castro have been produced. No other agreements exist to our knowledge, and none were identified during discovery.

- All receipts which were in my client's possession were already produced.

Mr. Castro and Eladio Castro Productions respectfully requests that this motion be denied as wholly unmerited and that a schedule be entered permitting the filing of their summary judgment motion and Rule 11 motion for sanctions. Defendants, both the individual and the corporation's representative, testified that there was no basis to include Mr. Castro in this lawsuit. They both testified that he was included solely because he was friends with the Plaintiff. There is not a scintilla of evidence to conclude that Mr. Castro stole anything from the Defendants or that he engaged in a fraudulent scheme, and nothing sought in this motion, to the extent it is even understandable what Defendants are seeking, will change that.

### **DEFENDANTS' BRIEF REBUTTAL**

**Rebuttal to Plaintiff's statements:**

- The Court is instructed to view the Defendants' motion to compel wherein in the Defendants addressed both the issue of Good Cause and Compliance with the Court's individual rules. In sum, this issue has been litigated and already been decided upon by this court. See Doc. No.100.

- Plaintiff's Rule 11 saber rattling is both misguided and unbecoming. By way of example Plaintiff points to an alleged falsehood on my part with respect to when Plaintiff provided her discovery responses. In response I simply direct the Court to its Order dated May 4,

2021, that established June 5, 2021, as the deadline for completing discovery. Doc. No. 71. In short, notwithstanding that Plaintiff was served discovery demands in April she waited until June 1, 2021, to send her unresponsive responses. Moreover, notwithstanding Counsel's alleged claim that he provided "courtesy copies" of the responses, he conveniently fails to inform the court that none of the documents alluded to in his response to Defendants' document demands were attached to the email that he sent. *See* Ex. 14, (Plaintiff's email in its entirety). This was clearly done to obstruct discovery and Defendants stand by their previous statement. Moreover, as with all of Plaintiff's allegations in this case, they are meant to detract from the real issues before the Court.

- With respect to why what is being sought is necessary, note that Defendants outline their issues clearly, but Plaintiff provides no substantive response.

**Rebuttal with respect to the Third-Party Defendants**

- With respect to the alleged lack of a meet and confer, the Defendants refer the court to its more extensive explanation as outlined above.

- With respect to the documents requested, Defendants have already explained the reasons why they need the documents.

- With respect to references to the state case, the court is informed that Productions has not produced any bank records in that case. Thus, counsel's offer to allow Defendants to use documents that were not produced is really no offer at all.

- Notwithstanding Castro's attempts to minimize the need for knowing his income, to the extent that he was allegedly lending Plaintiff money we are entitled to know what that was and how it was derived.

  We thank the Court for its attention to this matter.

Dated: New York, New York
       June 10, 2022