**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

MARIA JOSE PIZARRO,                                              No: 20-CV-5783 (AKH)

                                       Plaintiff,

            - against-                                           **[PROPOSED]**
                                                                **JURY INSTRUCTIONS**

EUROS EL TINA RESTAURANT LOUNGE AND
BILLIARDS CORP., SANTIAGO QUEZADA, AND
SANTIAGO QUEZADA, JR.,

                                       Defendants.
------------------------------------------------------------------------x

PLEASE TAKE NOTICE that Plaintiff Maria Pizarro, by and through her attorneys,

Brustein Law PLLC, pursuant to Rule 51 of the Federal Rules of Civil Procedure, respectfully

requests that the Court give the following instructions to the jury, and such other instructions as

may be submitted hereafter in accordance with later proceedings in this action. With the Court's

permission, the parties wish to respectfully reserve the right to supplement these instructions at

the close of the evidence if unanticipated factual issues have arisen during the course of trial.

<u>PROPOSED JURY INSTRUCTION NO. 1</u>
INTRODUCTORY REMARKS

Ladies and gentlemen of the jury, I am now about to instruct you on the law that you will

apply to the facts in this case. You will then perform your most important function. You will

determine the facts in accordance with my instructions on the law. Before I begin, I repeat my

thanks and that of the parties for your patience and attention. We recognize the personal

inconvenience you undergo to serve and extend, again, our appreciation for the important service

you render to the administration of justice.

You have now heard all of the evidence in this case as well as the final arguments of the lawyers for the parties. We have reached the point where you will undertake your final function as jurors. You have paid careful attention to the evidence, and I am confident that you will approach your deliberations with the same patience you have displayed thus far and that you will act with fairness and impartiality to reach a just verdict.

My duty is to now instruct you as to the law, and your duty is to accept my instructions and apply them to the facts as you determine them. You should not single out any instruction as alone stating the law. All of my instructions are equally important and you should consider them as a whole when you deliberate. You also should not be concerned about the wisdom of any rule that I state.

Regardless of any opinion that you may have as to what the law may be – or ought to be – it would violate your sworn duty to base a verdict upon any other view of the law than that which I give you. If any attorney has stated a legal principle different from any that I state to you in these instructions, it is my instructions that you must follow. You must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you and according to the law, as you gave your oath to do at the beginning of the case. The result of your work will be the verdict that you return. If we both perform our functions properly, then justice will have been served no matter what verdict you return.[1]

As members of the jury, you are the sole and exclusive judges of the facts. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You

---

[1] 3 Sand, Siffert, Reiss, Sexton & Thrope, Modern Federal Jury Instructions (1990), Instruction 71-2, Modified [hereinafter "Sand"]; *The Patapsco Ins. Co. v. Southgate*, 30 U.S. 604, 621, 8 L.Ed. 243 (1831); *Franks v. United States Lines Co*., 324 F.2d 126 (2d Cir. 1963); Sand Instruction 71.01.

draw the reasonable inferences to be drawn from the evidence, or lack of evidence. In determining these issues, no one may invade your functions as jurors.

Because you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. During the trial I have been called upon to make rulings on various questions. There may have been objections, or motions may have been made to strike answers. You are to disregard the reason for these matters. You are to disregard the fact that an objection was made and sustained or overruled or that conferences took place. The rulings I have made during the trial are not any indication of my views of what your decision should be. These are matters of law and, although you may have been curious about them, you should not consider them. Of course, if at any time I instructed you to disregard anything that was said, then you must follow that instruction and pay no attention to that question or answer in your deliberations.

I also ask you to draw no inference from the fact that upon occasion I made comments, asked questions of certain witnesses, or said something to one or both of the attorneys. These comments, questions and statements were only intended for clarification or to expedite matters, and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. From time to time, the attorneys and I may also have had sidebar conferences and other conferences out of your hearing. None of these conferences should enter into your deliberations at all. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.[2]

---

[2] Sand Instruction 71-3 (Modified); Sand Instruction 71.01.

With regard to any factual matter, your recollection and your recollection alone governs. Anything that counsel for either Ms. Pizarro or the Defendants may have said with respect to matters in evidence, whether while questioning witnesses or in argument, is not to be substituted for your own recollection or evaluation of the evidence. So, too, anything that I may have said during the trial or may say during these instructions as to any factual matter is not to be taken in place of your own recollection or judgment.[3]

PROPOSED JURY INSTRUCTION NO. 2
BURDEN OF PROOF

I will now describe to you what is called the "burden of proof." From television, books, or movies you may have heard of something called proof beyond a reasonable doubt. That is the standard, or burden, of proof in a criminal trial. Since this is a civil trial, that requirement does not apply. You should therefore put it entirely out of your mind. The burden of proof in this case is called a preponderance of the evidence.

A "preponderance of the evidence" simply means the greater weight of the evidence. The weight of evidence refers to the quality of the evidence, not to the number of witnesses, the number of documents, or the amount of time a particular side spent presenting its case. It is the weight the evidence carries in your mind. Put another way, to prove something by a "preponderance of the evidence" simply means to prove that it is more likely so than not so.[4]

To say that a party has the burden of proof on a particular issue means that, considering all the evidence in the case, the party's claim on that issue must be established by a preponderance of the evidence – the testimony, stipulations of fact, and documents – that you

---

[3] Sand Instruction 71.0.
[4] Sand Instruction 73-2 (Modified); 3 Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions, §§ 72.02 (1987 & Supp. 1993) (hereinafter, "Devitt"); New York Pattern Jury Instructions, Second Edition ("PJI") 1:23.

find worthy of belief. In order for a party to prevail on an issue on which it has the burden of proof, the evidence that supports its position on that issue must appeal to you as more nearly representing what happened than the evidence opposed to it.

When I say in these instructions that a party has the burden of proof on any proposition, or use expressions like "if you find," or "if you decide," I mean you must be persuaded, considering all the evidence in the case, that the proposition is more probably true than not true. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of witnesses, regardless of who may have called them, the relevant exhibits received in evidence, regardless of which side may have produced them, and any stipulated facts, as I may have identified them to you.

You should also attach no significance to the fact that certain witnesses were called to testify by Ms. Pizarro or by the defendants. Nor should you attach any meaning to the fact that a document or other exhibit was introduced by one party rather than another. Every party is entitled to the benefit of any evidence tending to support its arguments, even if such evidence came from witnesses or documents introduced by the other party. This is true with respect to any contested issue of fact in the case.[5]

The law does not require any party to call as witnesses each and every person who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matters in issue at this trial. You should not draw any negative inference against any party with respect to any issue in dispute based on their failure to produce a witness over whom the party has no control.[6]

PROPOSED JURY INSTRUCTION NO. 3
WHAT IS, AND IS NOT, EVIDENCE GENERALLY

---

[5] *Larson v. JoAnn Cab Corp.*, 209 F.2d 929 (2d Cir. 1954); Sand Instruction 73-2.
[6] Federal Jury Practice and Instructions, § 73.11 (as modified).

The evidence in this case is the sworn testimony of the witnesses, the documents, and other exhibits which have been received in evidence.

The questions asked by the attorneys are not evidence, nor are the statements the attorneys made in their openings and summations. Objections, my rulings on those objections, and the various other arguments and statements made by the attorneys, or by me, during the trial are also not evidence. Finally, testimony that has been stricken or excluded, and documents or other exhibits which have not been admitted into evidence are also not evidence, and are not to be considered by you in your deliberations or in reaching your verdict in this case.

The attorneys, on cross-examination, may have incorporated into a question a statement which assumed certain facts to be true. If the witness denied the truth of a statement, and if there is no direct evidence in the record proving that assumed fact to be true, then you may not consider it to be true simply because it was contained in the attorney's question.

Also, if certain testimony was received for a limited purpose – such as for the purpose of showing a witness's state of mind – you must follow the limiting instructions I gave at the time that evidence was received.

What the attorneys said to you in their opening statements and in their summations was intended simply to help you understand the evidence, but was not evidence itself. If your recollection of the facts differs from what the attorneys said, you should rely upon your recollection, and not the attorney's statements.

Exhibits which were marked for identification, but were not actually admitted into evidence, also may not be considered nor may materials which were used solely to refresh a witness' recollection.

Finally, statements which I may have made concerning the quality of particular evidence do not constitute evidence. It is for you alone to decide the weight, if any, to be given to the testimony you have heard and the exhibits you have seen.[7]

PROPOSED JURY INSTRUCTION NO. 4
DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence which you may properly use in reaching your verdict. One type of evidence is direct evidence. Direct evidence is testimony by a witness about something he knows by virtue of his own senses something he himself has seen, felt, touched, or heard. Direct evidence may also be an exhibit where the fact to be proved is its present existence or condition.

Circumstantial evidence is evidence which tends to prove a disputed fact by proof of other facts. A simple example of circumstantial evidence which is often used in this courthouse goes like this: Assume that when you came into the courthouse this morning the sun was shining and it was a nice day. Now assume that the courtroom blinds were drawn during the trial, so you could not see outside. As the trial proceeded, someone walked into the courtroom with a dripping wet umbrella. Then, a few minutes later, another person also entered with a wet umbrella. Now remember, the blinds on the windows are drawn, so you can't see whether or not it is raining outside. So you have no direct evidence of that fact. But because you saw two people walk into the courtroom with wet umbrellas, it would be reasonable and logical to conclude that it had indeed been raining outside. Those wet umbrellas are circumstantial evidence of the fact that it is, or was, raining outside. You infer on the basis of reason, your own experience, and common sense, from one established fact – that two people walked into the courtroom with wet umbrellas – the existence of another fact – that it is, or was, raining outside.

---

[7] Sand Instruction 74-1 (Modified).

Circumstantial evidence is of equal value to direct evidence. The law generally makes no distinction between direct evidence and circumstantial evidence. It simply requires that your verdict be based upon a preponderance of all the evidence, both direct and circumstantial, that has been presented.[8]

### PROPOSED JURY INSTRUCTION NO. 5
### INFERENCES

During the trial, you may have heard the attorneys use the word "inference" in their opening statements or summations, or you may have heard them ask you to infer, on the basis of your own experience and common sense, one or more facts, with the assistance of some other fact.

An inference is not a suspicion or a guess. It is a reasonable, logical decision to conclude that a disputed fact exists based upon another fact which you know to exist. There are times when different inferences may be drawn from the same facts. Not all such inferences, though, would be equally fair or reasonable. It is for you, and you alone, to decide whether to draw any inferences from the evidence you have heard and seen during the trial, and if so, what inferences may reasonably be drawn from that evidence. You may not use your experience and common sense to fill in or create evidence that does not exist, but you may use them to draw reasonable inferences from proven facts, or to weigh and evaluate the evidence, or lack of evidence, provided during the trial.[9]

### PROPOSED JURY INSTRUCTION NO. 6
### WITNESS CREDIBILITY

You have now had the opportunity to observe all the witnesses, and it is time for you to decide how believable each witness was in his or her testimony. Since you are the sole judges of

---

[8] Sand Instruction 74-2 (Modified).
[9] Sand Instruction 74-1.

the facts in this case, you must judge the credibility of each witness, and the importance of his or her testimony in this case. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and importance of each witness's testimony.

How are you to appraise or weigh their testimony? There is no magic formula. When you walked into this courtroom as jurors, however, you did not leave your common sense, your good judgment, or your experiences in life behind you. You carried those experiences and common sense with you into the jury box, and you will carry them into the jury room during your deliberations, as well. Your determination of the credibility – by which I mean the believability – of a witness very largely depends upon the impression that witness made upon you. Did the witness's version appear straightforward and candid, or did the witness try to hide some of the facts? Is there a motive of any kind to testify falsely or to shade the testimony offered?

Everything a witness said or did on the witness stand counts in your determination. Indeed, often it is not what a person says but how he or she says it that moves us. What you should try to do, in other words, is to "size the person up," just as you would do in any important matter when you are undertaking to determine whether or not a person is being truthful, candid and straightforward.

You should consider the opportunity the witness had to see, hear, and know the things about which he testified, the accuracy of his memory, his candor or lack of candor, his intelligence, the reasonableness of his testimony and its consistency. You should also consider the probability or improbability of the witness's testimony when viewed in the light of all of the other evidence in the case. The witness's demeanor, his or her relationship, if any, to the dispute

or to one or the other of the parties, and any other potential bias or partiality, are also all factors in determining the witness's credibility. There may be yet additional factors, and you may consider any that you believe bear on the witness's credibility.

If it appears that there is a discrepancy in the evidence, you will have to consider whether the apparent discrepancy may be reconciled by fitting the two stories together. If that is not possible, you will then have to determine which of the conflicting versions you will accept. Use common sense and rely on your human experience.

PROPOSED JURY INSTRUCTION NO. 7
IMPEACHMENT

A witness may be discredited, or "impeached," by a showing that at some earlier time the witness said or did something which is inconsistent with the witness's testimony here at trial. It is for you to determine, first, whether the prior statement or act was indeed inconsistent with the witness's trial testimony, and if so, whether the inconsistency is significant or inconsequential.

If you believe that a witness has been impeached, it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves. If you find that the witness made an earlier statement that now conflicts with the testimony that witness gave here at trial, you may accept, in part or in whole, the earlier testimony; you may accept, in part or in whole, the witness's testimony here at trial; or you may reject, in whole or part, both the prior and trial testimony.

In making this determination, you may consider whether the witness purposefully made a false statement now, or previously, or whether it was an innocent mistake; whether the inconsistency concerns an important fact or a small detail; and whether the witness had a credible explanation for the inconsistency.[10]

---

[10] Sand Instruction 76-5.

Evidence of the prior inconsistent statement – or a past criminal history for perjury – was presented to you to help you decide whether to believe the trial testimony of that witness. It is not to be considered by you as affirmative evidence in determining liability.[11]

PROPOSED JURY INSTRUCTION NO. 8
DISCREPANCIES IN TESTIMONY, AND THE DOCTRINE OF *FALSUS IN UNO*

In considering the evidence presented to you at trial, you may find that there were discrepancies in a witness's testimony. If you do, that is a proper basis for you to disbelieve that witness. Such discrepancies, though, or differences between one witness's testimony and another's do not necessarily mean that that witness should be disbelieved completely.

Witnesses sometimes forget things, and even witnesses who are trying to be scrupulously truthful may be nervous or anxious when they testify, and contradict themselves or misspeak unintentionally. Two people witnessing the same event may also see or hear it quite differently. That is where your role as the jury comes in; it is your job to judge from both what a witness says, and how he or he appears, his or her testimony should be believed, and how much weight it should be given.

In weighing the significance of a discrepancy in testimony, you may wish to consider whether it relates to an important fact or merely to a trivial detail. You should always remember, though, that a willful falsehood of any kind is a matter of importance, and should be considered seriously.

If you find that, during the trial, a witness has willfully testified falsely as to a material fact, the law permits you to disregard not only the testimony regarding that fact, but the testimony of that witness in its entirety. The law allows this on the principle that a person who testifies falsely about one material fact is likely to testify falsely about other facts, and possibly

---

[11] Sand Instructions 76-4, 76-5 (Modified).

even about everything. You are not, however, required to disregard all of that witness's

testimony. You may accept as much of the witness's testimony as you feel is true, and disregard

as much of it as you feel is false.

PROPOSED JURY INSTRUCTION NO. 9<br>INTEREST IN THE OUTCOME AND OTHER BIAS

In evaluating a witness's testimony, you should consider whether he or he has an interest,

or lack of interest, in the outcome of the case. Ms. Pizarro, Defendant Santiago Quezeda, Senior,

and Defendant Santiago Quezeda, Junior all have interests in how this case is decided. As parties,

they are all interested witnesses.

An interested witness is not necessarily less believable than a disinterested witness, and

having an interest does not mean that the witness has not told the truth. It is for you to decide

from the demeanor and testimony of each interested witness on the stand and such other tests as

your experience dictates whether or not the testimony has been influenced, intentionally or

unintentionally, by his or her interest.

You may, if you consider it proper under all of the circumstances, choose not to believe

the testimony of an interested witness, even though it is not otherwise challenged or contradicted.

However, you are not required to reject the testimony of such a witness, and you may accept all,

or as much, of his or her testimony as you find reliable, and reject as much as you find unworthy

of belief.[12]

For example, you may consider an employment or other business relationship with Euros

El Tina Restaurant Lounge and Billiards Corp., as well as any other interest a party or witness

may have, in determining whether that witness's testimony was in any way influenced by that

relationship or interest. In this case, there has been testimony from witnesses who own Euros and

---

[12] Sand Instruction 76-2 (Modified).

are father and son. The relationship of these witnesses to Euros, and the testimony you have

heard regarding those relationships, may be considered by you in deciding whether their

testimony has in any way been influenced by those relationships.[13]

PROPOSED JURY INSTRUCTION NO. 10
SUMMARY OF CLAIMS

Members of the jury, I am now going to instruct you on the substantive law to be applied

to Ms. Pizarro's claims.

Ms. Pizarro began working at Euros, a restaurant and bar, in September 2010. Between

that time and her termination in November 2019, Ms. Pizarro was subject to a continuous pattern

of sexual harassment/hostile work environment by her boss, Defendant Santiago Quesada,

Senior. He grabbed Ms. Pizarro's breasts from behind against her will; pressed his penis against

her buttocks as he grabbed Ms. Pizarro; discussed performing sexual acts on the female staff in

front of Ms. Pizarro; and left the bathroom door open as he urinated, just feet away from Ms.

Pizarro's desk, thus exposing his penis to her. Each time, Ms. Pizarro objected and told him not

to touch her. She struggled with him many times. Finally, Ms. Pizarro told him that she was

going to make a complaint. Each time, Defendant Santiago Quesada, Senior would laugh it off

and say something to the effect of: "You know that's just me. I'm crazy."

Specific instances include October 20, 2014, when Defendant Quesada, Senior fondled

her breasts, put his hands all over her, and hiked up her skirt to the point where her buttocks were

visible to the entire bar; Ms. Pizarro ran out of the bar crying. Further, in early- to mid-2019, he

entered the bathroom and, with the door open, began masturbating just feet from Ms. Pizarro.

Additionally, on October 18, 2019, Defendant Quesada, Senior grabbed Ms. Pizarro from

behind, grabbed her breasts, and pressed his penis against her buttocks.  The next day, Ms.

---

[13] PJI 1:92.

Pizarro told Mr. Quezada Sr. that she was going to get a lawyer to do something about what he had done to her.  A few weeks later Defendants shut down Euros without giving a reason and terminated Ms. Pizarro's employment.

Throughout Ms. Pizarro's employment at Euros, Defendant Santiago Quesada, Senior would also place inappropriate gifts on Ms. Pizarro's desk, including perfume and underwear. Each time Defendant Quezada, Senior gave Ms. Pizarro a gift, she told him that she did not want him to buy things for her and she just wanted to do her job.

Ms. Pizarro has been left emotionally devastated by the sexual harassment and hostile work environment to which she was exposed and brings this action to vindicate her rights. On April 18, 2020, shortly after Ms. Pizarro retained an attorney who contacted Defendant Quesada, Senior about the sexual harassment and hostile work environment, Defendants responded/retaliated by filing a completely baseless lawsuit against Ms. Pizarro. She has incurred damages as a result of Defendants' frivolous lawsuit.

<u>PROPOSED JURY INSTRUCTION NO. 11</u>
ELEMENTS OF SEX/GENDER DISCRIMINATION
UNDER THE NEW YORK CITY HUMAN RIGHTS LAW[14]

Under the New York City Human Rights Law, Ms. Pizarro must show that she was treated "***less well***" than others because of her sex or gender. If you determine that Ms. Pizarro was treated less well because of her sex or gender, you must then determine whether the Defendants may be held liable for the harassment she suffered.[15]

Under the New York City Human Rights Law, an employer may be held liable for the

---

[14] Please note that, based on the pretrial conference, Ms. Pizarro has abandoned her Title VII and NYSHRL employment discrimination claims yet keeps the NYCHRL claim.

[15] Authority:  *Emamian v. Rockefeller University*, 971 F. 3d 380, 389 (2nd Cir. 2020); *Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (2010); *citing* N.Y.C. Admin Code §8-107(13)(b); *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009) (Rejecting "severe or pervasive" standard for NYCHRL and adopting standard of "treated less well.")

discriminatory actions of employees where: (1) the offending employee exercised managerial or supervisory responsibility; and either (2) the employer knew of the offending employee's discriminatory conduct and acquiesced in it or failed to take immediate and appropriate corrective action or (3) the employer should have known of the offending employee's unlawful discriminatory conduct but failed to exercise reasonable diligence to prevent it. If Ms. Pizarro has proven these elements, then she has established a claim of discrimination under the New York City Human Rights Law.

The New York City Human Rights law expressly provides for damages against the individual defendants, Defendant Quezada, Senior and Defendant Quezada, Junior via "Supervisory Liability."[16] Ms. Pizarro seeks to hold all of the Defendants liable for Defendant Quezada, Senior's behavior under the New York City Human Rights Law.

PROPOSED JURY INSTRUCTION NO. 12
HOSTILE WORK ENVIRONMENT STANDARDS

The Federal, State, and Local Civil Rights law prohibits the creation of a hostile work environment caused by harassment because of an employee's protected characteristics. These laws have different definition of what a hostile work environment is and different standards for apply liability.

PROPOSED JURY INSTRUCTION NO. 13
FEDERAL LAW HOSTILE WORK ENVIRONMENT

To succeed in her Federal claims against the Defendants for hostile work environment, Ms. Pizarro must prove each other following facts by preponderance of the evidence:

a.    Ms. Pizarro was subjected to offensive statements and/or actions because of her sex/gender;

---

[16] 4 New York City Administrative Code Title 8-107(13)(b).

b.      Ms. Pizarro did not welcome the offensive statements and/or actions; and

c.      The conduct was sufficiently "severe or pervasive" that a reasonable person in Ms. Pizarro's position would find that the conduct materially altered the terms and conditions of her employment.

Note that the Federal standard is "severe *or* pervasive" rather than severe ***and*** pervasive.[17] To determine whether the conduct in this case was so "severe or pervasive" that it materially altered the terms and conditions of Ms. Pizarro's employment, you should consider all the circumstances, including:

a.      How often the discriminatory conduct occurred;

b.      Its severity;

c.      Whether it was humiliating; and

d.      Whether it unreasonably interfered with Ms. Pizarro's work performance.[18]

Proving the existence of a hostile work environment involves showing both "objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive."[19]

Euros can be held liable for Defendant Quezada, Senior's conduct. When a harasser is in a supervisory position over an employee, the objectionable conduct is automatically imputed to

---

[17] *Pa. State Police v. Suders*, 542 U.S. 129, 133, 124 S.Ct. 242, 159 L.Ed. 204 (2004); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *see also Jensen v. Jack E. Potter, U.S. Postal Service*, 435 F.3d 444 at 449 (3rd Cir. 2006) ("The disjunctive phrasing means that 'severity' and 'pervasiveness' are alternative possibilities . . .").

[18] *Finnerty v. William H. Sadlier, Inc*., 176 Fed. Appx. 158, 160 2006 WL 910399, 1 (2d Cir. 2006) (*quoting Mack v. Otis Elevator Co*., 326 F.3d 116 (2d Cir. 2003)).

[19] *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (*quoting Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993)).

the employer for purposes of asserting a hostile work environment claim.[20] You should apply this "severe or pervasive" standard to Ms. Pizarro's claims under the Federal law and New York State Law only.

PROPOSED JURY INSTRUCTION NO. 14
NEW YORK STATE & CITY HOSTILE WORK ENVIRONMENT

The New York State and City Laws, which offer more protection for employees like Ms. Pizarro, require you to apply a slightly different standard in determining whether Defendants subjected Ms. Pizarro to a hostile work environment.

Under the State and City Law standards, Ms. Pizarro must only prove that the Defendants subjected her to unwelcomed discriminatory conduct that a reasonable person would find was more than "petty slights and trivial inconveniences." Thus, a single act or comment related to Ms. Pizarro's sex/gender may be sufficient for her to prove her case for hostile work environment under the State and City law as long as the comment or comments are more than petty slights or trivial inconveniences.[21]

Under the New York State and City Human Rights Laws, the Defendants are strictly liable for the harassing and hostile acts of any supervisors. Strictly liable means that if you believe that Defendant Quezada, Senior, as Ms. Pizarro's supervisor, subjected her to conduct

---

[20] *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010).

[21] N.Y.C. Admin Code §8-107(1)(a); *Farrugia v. North Shore Univ. Hosp.*, 13 Misc. 3d 740, 820 N.Y.S.2d 718 (Sup. Ct. N.Y. Cty. 2006); *Williams v. New York City Housing Authority*, 61 A.D.3d 62 (1st Dep't January 27, 2009) ("It shall be an affirmative defense to liability under this subdivision that the harassing conduct does not rise above the level of what a reasonable victim of discrimination with the same protected characteristic or characteristics would consider petty slights or trivial inconveniences."); N.Y. Exec. Law § 296.

that is more than a petty slight or trivial inconvenience, then you must find in Ms. Pizarro's favor

against the Defendants.[22]

    A single physical act – such as a physical assault – can create a hostile work

environment.[23] Remember, Ms. Pizarro alleges that Defendant Quezada, Senior fondled her

breasts, put his hands all over her, and hiked up her skirt to the point where her buttocks were

visible to the entire bar, and on another occasion, grabbed Ms. Pizarro from behind, grabbed her

breasts, and pressed his penis against her buttocks.

PROPOSED JURY INSTRUCTION NO. 15
AIDING & ABETTING – CLAIMS UNDER NYSHRL AND NYCHRL

    The New York State and City Human Rights Laws also makes it unlawful for a person to

"aid, abet, incite, compel or coerce," any conduct that the law prohibits, or to attempt to do so.[24]

Thus, any employee or officer who was directly involved in any discriminatory or retaliatory acts

against Ms. Pizarro can be held personally liable under the New York State and City Human

Rights Laws. This includes anyone who had the power "to hire, fire, demote, promote, transfer,

or discipline" Ms. Pizarro, anyone who had "authority to affect [her] day-to-day work activities,"

and anyone who had the ability to "recommend tangible employment decisions" that would

---

[22] New York City Human Rights Law §8-107(13)(b)(1); Legislative Annual, at 187 (N.Y.S. Legislative Svc., Inc. 1991) ("[s]trict liability in employment context for acts of managers and supervisors…"); *see also Zakrzewska v. The New School*, 2009 U.S. Dist. LEXIS 5183, *21-*22 (S.D.N.Y. Jan. 26, 2009).

[23] *See, e.g., Turnbull v. Topeka State Hospital*, 255 F.3d 1238, 1243 (10th Cir. 2001) (case concerning sexual assault where court stated: "Because frequency is merely one factor in the analysis, an isolated incident may suffice if the conduct is severe and threatening."); *Smith v. Sheahan*, 189 F.3d 529, 534 (7th Cir. 1999) ("'extremely serious' acts of harassment" like physical assault may be severe and need not also be pervasive) (*quoting Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)); *Tomka v. Seiler Corp*., 66 F.3d 1295, 1305 (2d Cir. 1995) ("even a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment"), abrogated on other grounds by *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013).

[24] Executive Law § 296 [6]; Administrative Code § 8-107 [6].

affect her, such as a negative performance evaluation, denial of a raise, reduction of a bonus, or

termination may be held liable individually.

You must determine whether Defendants Quezada, Senior and Quezada, Junior are

personally liable for the conduct described. You may find that Defendants Quezada, Senior and

Quezada, Junior are ***personally*** liable if, by a preponderance of the evidence, you find that they

participated in the conduct giving rising to discrimination, or attempted to aid or abet or did aid

or abet such conduct.[25]

PROPOSED JURY INSTRUCTION NO. 16
RETALIATION GENERALLY

Ms. Pizarro claims that Defendants retaliated against her because she took steps to

enforce her lawful rights under Title VII of the Civil Rights Act of 1964, Section 296 of the New

York Executive Law, and Section § 8-107 of the New York City Administrative Code.

Laws that prohibit discrimination in the workplace also prohibit an employer from taking

any retaliatory action against an employee because the employee has asserted rights or made

complaints under those laws.

---

[25] 11 N.Y.C. Admin. Code § 8-107(1), (6), (13)(a)(b); *Harrison v. Banque Indosuez*, 6 F. Supp. 2d 224, 233-34 (S.D.N.Y. 1998); *Mack v. Otis Elevator Co.*, 326 F.3d 116, 126-127 (2d Cir.), cert. denied, 540 U.S.1016, 124 S.Ct. 562 (2003); PJI 9:1,; *Patrowich v. Chemical Bank*, 63 N.Y.2d 541 (1984); *Priore v. New York Yankees*, 307 A.D.2d 67, 761 N.Y.S.2d 608(1st Dep't 2003); *Murphy v. ERA United Realty*, 251 A.D.2d 469, 471, 674 N.Y.S.2d 415, 417 (2d Dept. 1998); *Farrugia v. North Shore Univ. Hosp.*, 13 Misc.3d 740, 749, 820 N.Y.S.2d 718, 725 (Sup. Ct. N.Y.Cty. 2006); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311-12, 819 N.E.2d 998, 1011 (2004); *Kent v. Papert Companies, Inc.*, 309 A.D.2d 234, 247-248, 764 N.Y.S.2d 675, 685 (1st Dep't 2003); *Murphy v. ERA United Realty*, 251 A.D.2d 469, 472, 674 N.Y.S.2d 415, 417 (2d Dep't 1998); *Pace v. Ogden Svcs. Corp.*, 257 A.D.2d 101, 103 (3d Dep't 1999) (noting that plaintiff could establish employer liability by showing that employer knew or should have known of harassing conduct); *Town of Lumberland v. New York State Div. of Human Rights*, 229 A.D.2d 631, 636 (3d Dep't 1996) (same); *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293-94 (S.D.N.Y. 1999); *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 380-81 (S.D.N.Y. 1999); *Bennett v. The Progressive Corp.*, 225 F. Supp. 2d 190, 213-15 (S.D.N.Y. 2002); *Hayut v. State Univ. of N.Y.*, 127 F. Supp. 2d 333, 340-41 (N.D.N.Y. 2000); *Beattie v. Guilderland Central Sch. Dist.*, 124 F.Supp.2d 802, 806 (N.D.N.Y. 2000); *Ahmed v. Compass Group*, 2000 U.S. Dist.LEXIS 10789 (S.D.N.Y. Aug. 3, 2000); Hicks v. IBM, 44 F. Supp. 2d 593, 600 (S.D.N.Y. 1999).

Plaintiff claims that Defendants filed a frivolous lawsuit against her because her lawyer got in touch with Defendants and voiced concerns about sexual harassment and her termination.[26]

## PROPOSED JURY INSTRUCTION NO. 17
### ELEMENTS OF A RELALIATION CLAIM

To succeed on her federal, state, and local retaliation claims, Ms. Pizarro must prove each of the following facts by a preponderance of the evidence:

First: Ms. Pizarro engaged in a protected activity by complaining to Defendants;

Second: Defendants then took an "adverse employment action" by filing a lawsuit with no basis in law or fact;

Third: Defendants took the "adverse employment action," at least in part, because of Ms. Pizarro's protected activity;[27] and

Fourth: Ms. Pizarro suffered damages because of the "adverse employment action."

For the first element, Ms. Pizarro claims that she engaged in protected activity when she complained about Defendants' sexual harassment/hostile work environment.[28]

For the second element, Ms. Pizarro claims that Defendants took an adverse employment action against her when they filed a retaliatory lawsuit against her. A retaliatory lawsuit is an adverse employment action. To sustain a claim of retaliation based on the filing of a lawsuit or a counterclaim, Ms. Pizarro must show that the lawsuit was filed both "with a retaliatory motive" and that it was filed "without a reasonable basis in fact or law."[29] I have already determined that

---

[26] Source: Adapted from Model Jury Instructions (Civil) Eleventh Circuit § 4.22 (2013)

[27] *Nieblas-Love v. New York City Housing Authority*, 165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016) ("causation does not, however, require proof that retaliation was the only cause of the employer's action").

[28] CITE (lodging a complaint of discriminatory conduct is protected activity).

[29] *Kim v. Lee*, 576 F. Supp. 3d 14, 31 (S.D.N.Y. 2021) (*citing Darveau v. Detecon, Inc.*, 515 F.3d 334, 343 (4th Cir. 2008)).

the lawsuit in question was without a reasonable basis in fact or law. You only have to determine whether Defendants filed the lawsuit with a retaliatory motive.

For the third element, if you find that Ms. Pizarro engaged in protected activity and that Defendants took an adverse employment action against her, you must decide whether they took that action because of Ms. Pizarro's protected activity. That casual connection may be shown in many ways. For example, you may find that there is a sufficient connection through timing; that is, Defendants' action followed shortly after they became aware of Ms. Pizarro's complaint. To determine that Defendants took an adverse employment action because of Ms. Pizarro's protected activity, you must decide that Defendants would not have taken the action had not engaged in the protected activity but everything else had been the same.

For the fourth element, you must decide whether Defendants' acts were the proximate cause of damages that Ms. Pizarro sustained. Put another way, you must decide, if Defendant had not filed a lawsuit, would these damages have occurred?

If you find that Defendants' acts were the proximate cause of damages that Ms. Pizarro sustained, you must determine the amount of damages.[30]

<u>PROPOSED JURY INSTRUCTION NO. 18</u>
DAMAGES – INTRODUCTION

If you find that Ms. Pizarro has met her burden of proof with respect to her employment discrimination claim, her hostile work environment claim, her aiding and abetting claim, or her retaliation claim under the federal, state, or city law – that is, that she has proven her claims by a preponderance of the evidence – then you must consider the issue of damages.

---

[30] Model Jury Instructions (Civil) Eleventh Circuit § 4.22 (2013); Model Jury Instructions (Civil) Third Circuit § 5.1.7 (2013).

You should not reach the issue of damages unless you find that Ms. Pizarro has established liability on at least one of her claims. You should note that for liability purposes, Ms. Pizarro does not need to establish any specific loss of salary, wages or other benefits in order to establish a claim for discrimination.[31]

If you do find that Ms. Pizarro is entitled to recover from the Defendants, you must render a verdict in a sum of money that will justly and fairly compensate, or make her whole, for all the losses resulting from the injuries she sustained.

### PROPOSED JURY INSTRUCTION NO. 19
### COMPENSATORY DAMAGES

The purpose of the law of damages is to award, as far as possible, just and fair compensation for any loss that resulted from the Defendants' violation of Ms. Pizarro's rights. If you find that the Defendants are liable on any of Ms. Pizarro's claims, as I have explained them, then you must award her sufficient damages to compensate for any injury she suffered as a result of the Defendants' wrongdoing.

Compensatory damages can be inferred from the circumstances presented to you by the evidence, or they can be proven by testimony going solely to the issue of damages. They are not limited merely to expenses that Ms. Pizarro may have incurred, although if you find that such expenses have been incurred, your award of compensatory damages should include them.

For example, if you find that Ms. Pizarro incurred any costs and expenses for healthcare providers or medication, or is more likely than not to incur expenses for them in the future, you may include such amounts in your award, so long as you find those expenses were, or will have

---

[31] *Burlington Industries v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257 (1998).

been, proximately caused by the Defendant's unlawful acts.[32] An award of compensatory damages for mental anguish may be based solely on the complainant's testimony.[33]

Compensatory damages include damages for emotional pain and suffering, mental anguish, humiliation, indignity, embarrassment, emotional distress, shock, discomfort, inconvenience and loss of enjoyment of life that you may find he has suffered as a result of the Defendants' unlawful conduct. The words "embarrassment" and "humiliation" are used in their everyday meaning.

If you decide to award compensatory damages, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require Ms. Pizarro to prove any expense, lost earnings or other measurable damages in order for her to receive compensation for mental suffering, although you may find that she has in fact done so. The law also does not require her to prove the amount of any such losses with mathematical precision. She only needs to do so with as much definiteness and accuracy as the circumstances permit.

There is also no requirement that a claim of emotional distress be supported by evidence from a medical or mental health professional who treated Ms. Pizarro, or indeed, by the testimony of any witness. The damages that you award must simply be fair and reasonable.[34]

---

[32] Devitt, Blackmar and Wolff, Federal Jury Practice and Instructions, §§ 104.05, 104.06, 104A.11 (1987 & Supp. 1993).

[33] *Argyle Realty Associates v. State Div. of Human Rights*, 65 AD3d 273, 882 NYS2d 458; *State v. State Div. of Human Rights*, 284 AD2d 882, 727 NYS2d 499; *Father Belle Community Center v. State Div. of Human Rights on Complaint of King*, 221 AD2d 44, 642 NYS2d 739; *Marcus Garvey Nursing Home, Inc. v. State Div. of Human Rights*, 209 AD2d 619, 619 NYS2d 106; *Gleason v. Callanan Industries Inc.*, 203 AD2d 750, 610 NYS2d 671.

[34] *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Black's Law Dictionary 1103 (5th ed. 1979); *New York City Transit Auth. v. State Div. of Human Rights*, 78 N.Y.2d 207, 216, 577 N.E.2d 40, 573 N.Y.S.2d 49, 54 (1991), on remand, 181 A.D.2d 891, 581 N.Y.S.2d 426 (2d Dep't 1992); *Schulman v. Group Health Inc.*, 39 A.D.3d 223, 225, 833 N.Y.S.2d 62, 64 (1st Dep't 2007); *Sogg v. American Airlines, Inc.*, 193 A.D.2d 153, 163, 603 N.Y.S.2d 21, 27 (1st Dep't 1993), app. denied, 83 N.Y.2d 754, 612 N.Y.S.2d 109 (1994); *McIntyre v. Manhattan Ford*, 256 A.D.2d

Even if you believe that Ms. Pizarro is unusually emotionally sensitive and incurred greater emotional harm from the Defendants' discriminatory conduct than the harm that would have been suffered by an average person, the Defendants are responsible for this additional harm.[35] The fact that Ms. Pizarro may have a physical or mental condition that make her more susceptible to injury than a normal healthy person does not relieve Defendants of liability for all injuries sustained as a result of its harassment and/or negligence. Defendants are liable even though those injuries are greater than those that would have been sustained by a normal healthy person under the same circumstances.

<u>PROPOSED JURY INSTRUCTION NO. 20</u>
LOST WAGES

You can award Ms. Pizarro monetary damages in the form of back-pay, front-pay, out of pocket expenses, and other economic loss that came about as a result of the Defendants' violations of law.

If you find that the Defendants subjected Ms. Pizarro to a hostile work environment because of her sex/gender then you must award as actual damages an amount that reasonably compensates Ms. Pizarro for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that she would have received from Defendants had she not been the subject of their discrimination.

Back pay damages, if any, apply from the time Ms. Pizarro was terminated until the date of your verdict. If you award back pay, you are instructed to deduct from the back pay figure

---

269, 682 N.Y.S.2d 167 (1st Dep't 1998); *Walsh v. Covenant Hse.*, 244 A.D.2d 214, 664 N.Y.S.2d 282 (1st Dep't 1997); *Bracker v. Cohen*, 204 A.D.2d 115, 612 N.Y.S.2d 113 (1st Dep't 1994); *Boodram v. Brooklyn Dev. Ctr.*, 2003 N.Y. Misc. LEXIS 1582 (Civ. Ct. N.Y. Cty. 2003) (collecting cases and recognizing award for future lost earnings and future emotional distress).
[35] *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1294 (7th Cir. 1987).

whatever wages she has obtained from other employment during this period.[36] Front pay

damages, if any, represent a plaintiff's lost salary and benefits, caused by an unlawful discharge

or other adverse action, accruing from the time of trial through some point in the future. Factors

to be considered in determining front pay include the age of the plaintiff and her reasonable

prospects of obtaining comparable employment.[37]

PROPOSED JURY INSTRUCTION NO. 21
PROXIMATE CAUSE

You may award compensatory damages for all of the injuries that Ms. Pizarro proves

were proximately caused by the Defendants' unlawful conduct. Injuries are proximately caused

by an act, or a failure to act, whenever it appears from a preponderance of the evidence in the

case that the act or omission played a substantial part in bringing about or actually causing the

injury or damage; and that the injury or damage was either a direct result or a reasonably

probable consequence to the act or omission.

PROPOSED JURY INSTRUCTION NO. 22
PUNITIVE DAMAGES[38]

If you find in favor of Ms. Pizarro under the Federal and State law, those laws also allows

you to award punitive damages to her, and against the Defendants.

The purpose of an award of punitive damages is to ***punish*** a wrongdoer for misconduct

and to ***warn others*** against doing the same. You may, but do not have to award these damages, if

---

[36] Model Civ. Jury Instr. 3rd Cir. § 8.4.2 (2019) (modified).

[37] Any form of money damages is a legal remedy to be decided by the jury under the New York State Human Rights Law. *Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.*, 824 F. Supp. 2d 573 (S.D.N.Y. 2011).

[38] *Levitant v. New York Human Res. Admin.*, Index No. 1:05-cv-00230-KAM-JO, Dkt. No. 141 (E.D.N.Y Apr. 24, 2012) (Matsumoto, J.); Sand Instruction 77.03.

(2017); 42 U.S.C. §1981a(a)(1), (b)(2) and (b)(3); *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264-65 (1946); *Patrolmen's Benevolent Ass'n of New York, Inc. v. City of New York*, 310 F.3d 43, 56 (2d Cir. 2002); Walz v. Town of Smithtown, 46 F.3d 162, 170 (2d Cir. 1995); *Miner v. City of Glens Falls*, 999 F.2d 655, 663 (2d Cir. 1993); *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992).

you find that the Defendants willfully violated Ms. Pizarro's rights, or acted wantonly, recklessly or maliciously in doing so.

To willfully violate the law is nothing more, nor less, than to do so intentionally. To act maliciously is to act deliberately, with knowledge of Ms. Pizarro's rights, and the intention of interfering with those rights. To act wantonly and recklessly is to act in such a way and under such circumstances as to show conscious indifference and utter disregard for the effect of your acts upon the rights of others. You may consider outrageous or egregious conduct as evidence of a motive warranting the award of punitive damages. You may award punitive damages if you find either that Defendants actually derived satisfaction from hurting Ms. Pizarro or, if Euro's management, while not having any particular desire to hurt Ms. Pizarro, nevertheless trampled on her rights in a fashion that fairly can be called reckless.[39]

If you decide to award punitive damages, it is up to you to determine a fair, just and reasonable amount which would be sufficient to deter the Defendants, and others like them, from engaging in similar wrongful conduct in the future.[40]

Ms. Pizarro does not need to demonstrate that the Defendants' conduct was egregious or outrageous in order to be entitled to punitive damages; instead, she needs only to have shown

---

[39] *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625(1983); *Keenan v. City of Philadelphia*, 983 F.2d 459, 471 (3d Cir. 1992); *Soderbeck v. Burnett Cty.*, 752 F.2d 285,289 (7th Cir. 1985) cert denied, 471 U.S. 1117, 105 S.Ct. 2360 (1985); *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 538-39, 119 S.Ct. 2118, 2126 (1999); N.Y.C. Admin Code § 8-502(a).

[40] Sand Instruction 77-5; *Franklin v. Gwinnett Country Pub. Sch.*, 503 U.S. 60, 112 S.Ct. 1028 (1992); *Luciano v. Olsten Corp.*, 109 F.3d 111 (2d Cir. 1997); *Benjamin v. United Merchants and Manufacturers, Inc.*, 873 F.2d 41 (2d Cir. 1989); *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914, 924 n.7 (2d Cir. 1981); Manual of Model Civil Jury Instructions for the District Courts of the 8th Cir., §§ 5.04, 5.24 (1995); Devitt §§ 7104.07, 104A.12 (1994 Supp.); *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534, 119 S.Ct. 2118, 2124 (1999); *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625 (1983); *Adickes v. S.H. Kress & Co.*, 398 U. S. 144, 233-34, 90 S.Ct. 1598, 1642-43 (1970); *Cochetti v. Desmond*, 572 F.2d 102, 105-06 (3d Cir. 1978); *Guzman v. Western State Bk.*, 540 F.2d 948 (8th Cir. 1976).

that the Defendants either knew or perceived that there might be a risk that they were violating his rights, or that the Defendants acted maliciously toward her.[41]

It is also not necessary for Ms. Pizarro to present direct evidence of malicious intent, or reckless indifference, on the part of a Defendant in order to justify an award of punitive damages against them. Such intent may be inferred by you from the nature of the acts committed by the Defendants, and from the facts and circumstances surrounding such acts.[42]

There is also no requirement that Ms. Pizarro show a pattern of wrongdoing for punitive damages to be awarded; a single act, which is either malicious or recklessly indifferent to his statutorily protected rights will suffice.[43]

The amount you assess as punitive damages need not bear any relationship to the amount you choose to award as compensatory damages and it is not necessary that you award compensatory damages to Ms. Pizarro in order to assess punitive damages against Defendant, so long as you find in favor of Ms. Pizarro and against Defendant on the question of liability.[44] Punitive damages under the Ms. Pizarro's New York City claims, shall be assessed differently and separately from the related Federal and State claims.

Under the New York City claim, Ms. Pizarro is entitled to punitive damages if you find the Defendants' actions amount to willful or wanton ***negligence***, or recklessness, or where there

---

[41] *Kolstad v. American Dental Ass'n.*, 527 U.S. 526, 534-35, 119 S.Ct. 2118 (1999); *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 384-385 (2d Cir. 2001); *Luciano v. Olsten Corp.*, 110 F.3d 210, 219-20 (2d Cir. 1997).

[42] 42 U.S.C. § 1981a(b)(1); *Perry v. Larson*, 794 F.2d 279 (7th Cir. 1986); *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 543-44, 119 S.Ct. 2118, 2128 (1999); *United States v. H.M. Branson Distributing Co.*, 398 F.2d 929 (6th Cir. 1968); *Zilig v. Prentice-Hall, Inc.*, 515 F. Supp 716 (S.D.N.Y. 1981).

[43] *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536-39, 119 S.Ct. 2118, 2125-26(1999); *Rowlett v. AnheuserBusch*, 832 F.2d 194, 206 (1st Cir. 1987).

[44] *Hennessy v. Penril DataComm Networks*, 69 F.3d 1344, 1351-52 (7th Cir. 1995); *Edwards v. Jewish Hosp.*, 855 F.2d 1345, 1352 (8th Cir. 1988); *Hicks v. Brown Group Inc.*, 902 F.2d 630, 653 (8th Cir. 1990); *Goodwin v. Circuit Court*, 729 F.2d 541, 542-43 (8th Cir.), cert denied, 469 U.S. 828, 105 S.Ct. 112 (1984); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270, 101 S.Ct. 2748, 2761 (1981).

is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.[45] Therefore, the "intent" requirement, as is required to award punitive damages under the Federal and State law, is not required under the New York City law.

<u>PROPOSED JURY INSTRUCTION NO. 2</u>
FINAL GENERAL CHARGES
RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY; COMMUNICATIONS WITH COURT

Ladies and gentlemen of the jury, that about concludes my instructions to you. You are about to go into the jury room to begin your deliberations. If during those deliberations you want to see any of the exhibits, you may request that they be brought into the jury room. If you want any of the testimony read, please send out a note specifying what you want to hear and we will bring you back to the Courtroom to read it back for you. Please be as specific as you possibly can in requesting exhibits or portions of the testimony. If you want any further explanation of the law as I have explained it to you, you may also request that.

Your requests for exhibits or testimony – in fact any communications with the Court – should be made to me in writing, signed by your foreperson, and given to the Courtroom Deputy. In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

<u>PROPOSED JURY INSTRUCTION NO. 24</u>
NOTES

Many of you have taken notes periodically throughout this trial. I want to emphasize to you, as you are about to begin your deliberations, that notes are simply an aid to memory. Notes that any of you may have made may not be given any greater weight or influence in determination of the case than the recollections or impressions of other jurors, whether from notes or memory, with respect to the evidence presented or what conclusions, if any, should be

---

[45] *Chauca v. Abraham*, 30 N.Y.3d 325, 329, 89 N.E.3d 475, 477 (2017).

drawn from such evidence. Any difference between a juror's recollection and another juror's notes should be settled by asking to have the court reporter read back the transcript, for it is the court record rather than any juror's notes upon which the jury must base its determination of the facts and its verdict.

<u>PROPOSED JURY INSTRUCTION NO. 25</u>
USE OF PROFESSIONAL EXPERTISE

Although as jurors you are encouraged to use all of your life experiences in analyzing testimony in reaching a fair verdict, you may not communicate any personal professional expertise you might have, or other facts not in evidence, to the other jurors during the deliberations. You may not consider or speculate on matters not in evidence or matters outside the case, but rather must base your discussions and decisions solely upon the evidence presented to you during the trial.

<u>PROPOSED JURY INSTRUCTION NO. 26</u>
JUROR OATH

In determining the facts in this case, I remind you that you took an oath to render judgment impartially and fairly, without prejudice or sympathy and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

<u>PROPOSED JURY INSTRUCTION NO. 27</u>
DUTY TO DELIBERATE / UNANIMOUS VERDICT

You will now retire to decide the case. For Ms. Pizarro to prevail on her claim, she must sustain her burden of proof as I have explained it to you with respect to each element of her claims. If you find that Ms. Pizarro has succeeded with respect to her claims, you must return a verdict in her favor. If you find that she has not, then your verdict must be for the Defendants. It is your duty as jurors to consult with one another and to deliberate with a view to reaching an

agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict solely because of the opinion of other jurors.

Again, each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors. No juror should surrender his or her conscientious beliefs solely for the purpose of returning a unanimous verdict.

<u>PROPOSED JURY INSTRUCTION NO. 28</u>
VERDICT FORM

I have prepared a verdict form for you to use in recording your decisions. Remember, each verdict must reflect the conscientious judgment of each juror. You should answer every question except where the verdict form indicates otherwise. You should also proceed through the questions in the order in which they are listed.

<u>PROPOSED JURY INSTRUCTION NO. 29</u>
DUTIES OF FOREPERSON

Finally, you should by your own vote select one of you to sit as your foreperson. The foreperson will send out any notes, and when the jury has reached a verdict, he or she will notify the Courtroom Deputy that the jury has reached a verdict, and you will come into open court and give the verdict.

<u>PROPOSED JURY INSTRUCTION NO. 30</u>
RETURN OF VERDICT

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the Courtroom Deputy outside your door that you are ready to return to the courtroom.

I will stress that each of you must be in agreement with the verdict that is announced in court. Once your verdict is announced by your foreperson in open court and officially recorded, it cannot ordinarily be revoked.

<u>PROPOSED JURY INSTRUCTION NO. 31</u>
EXCEPTIONS

Members of the jury, that concludes my instructions to you. I will ask you to remain seated while I confer with the attorneys to see if there are any additional instructions that they would like to have me give to you or anything I may not have covered in my previous statement. In this regard, I ask you not to discuss the case while seated in the box because the case has not yet been formally submitted to you.