NanWpizT1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x

MARIA JOSE PIZARRO,

    Plaintiff,

   v.        20 Civ. 5783 (AKH)

EUROS EL TINA RESTAURANT
LOUNGE AND BILLIARDS CORP., *et
al.*,

    Defendants.

             Trial

------------------------------x

             New York, N.Y.
             October 23, 2023
             10:00 a.m.

Before:

     HON. ALVIN K. HELLERSTEIN,

             District Judge
             –and a Jury–

        APPEARANCES

EVAN BRUSTEIN
MARK A. MARINO
  Attorneys for Plaintiff

MARTIN E. RESTITUYO
  Attorney for Defendants


Also Present:  Carlos Cruz, Interpreter (Spanish)

NanWpizT1

1          (Trial resumed)

2          THE COURT:  I propose to tell the jury the following:

3          "Since the close of evidence, the claims against

4     Quezada Jr. have been withdrawn.  He's no longer part of the

5     case.  You should give no significance to this withdrawal in

6     your deliberations.  The two remaining defendants are Euros El

7     Tina Restaurant and Santiago Quezada Sr."

8          Mr. Brustein.

9          MR. BRUSTEIN:  No objection, your Honor.

10         THE COURT:  Mr. Restituyo.

11         MR. RESTITUYO:  No objection, your Honor.

12         THE COURT:  Second, I note for the record that we sent

13    a substitute page in the charge dealing with the issue that we

14    discussed on Thursday; namely, the fact that Mr. Quezada Sr.

15    did not testify.  And we've marked those Court Exhibits 5A, B

16    and C.

17         I received no comment by 5 o'clock yesterday, so we'll

18    include that in what we give to the jury.

19         MR. BRUSTEIN:  Your Honor, there was one comment from

20    plaintiff with respect to the summary.

21         THE COURT:  I put the word "should" instead of "may."

22         MR. BRUSTEIN:  Thank you, your Honor.

23         THE COURT:  All right.  We're ready for the jury.

24         (Jury present)

25         THE COURT:  Good morning, members of the jury.  Please

1    be seated.

2          Since the close of evidence, the claims against

3    defendant Quezada Jr. have been withdrawn.  He's no longer part

4    of the case.  You should give no significance to this

5    withdrawal in your deliberations.  The two remaining defendants

6    are Euros El Tina Restaurant and Santiago Quezada Sr.

7          We've reached the summation stage.  Mr. Brustein will

8    go first, Mr. Restituyo will go second and there will be a

9    short rebuttal by Mr. Brustein.  Each side will have 40

10   minutes.

11         Mr. Brustein.

12         MR. BRUSTEIN:  Thank you, your Honor.

13         Good morning, ladies and gentlemen of the jury.

14         Today I'm going to speak to you from the head and not

15   the heart, and I'm going to talk to you about the facts and the

16   evidence.

17         Thank you for your attention throughout this trial.  I

18   know how hard it has been to listen to the disgusting and

19   disturbing testimony about what Quezada did to Maria; how hard

20   it has been to sit through this.  We're fortunate to have the

21   highly esteemed Judge Hellerstein guiding us through this

22   trial, but now it is your turn to be the judge.

23         Without the black robes, you still hold tremendous

24   power.  You have the power to decide credibility, to decide

25   what is fair, what is right.  You have the power to send Maria

NanWpizT1                    Summation - Mr. Brustein

1   out of here with nothing or to compensate her for everything

2   she has endured and what she will endure.  You have the power

3   to punish Quezada for what he did to Maria.

4            We're here in federal court because Maria has the

5   right to a trial by jury, and not just a jury, but a jury of

6   her peers.  Now, you may have heard the expression "don't make

7   a federal case out of it."  That's because it's a big deal to

8   be in federal court, and we're not here for something minor.

9   We're here because Maria's rights were violated.  Her federal

10  rights were violated by Quezada.

11           I told you in my opening statement that this case was

12  about one thing and one thing only: Quezada's sexual assaults

13  of Maria.  And that's true.  So we're not going to ask you to

14  decide anything about Junior -- not because he's innocent; he's

15  not.  But this case is about more than disturbing, vile and

16  disgusting conversations about sex with underage girls in front

17  of Maria.  What Junior did pales in comparison to the years of

18  sexual --

19           MR. RESTITUYO:  Objection, your Honor.

20           THE COURT:  Overruled.

21           MR. BRUSTEIN:  -- sexual assault and attempted rape of

22  Maria, so we've let him out of the case.

23           Let's go through the undisputed facts:

24           Maria and her ex-husband sold their bar to Quezada on

25  August 13, 2010.  Three days later, Quezada gave Maria a gift

of a $2 bill that he signed, drew hearts on and her name on.
You know it's undisputed not just because it wasn't disputed by
anyone, but we have a photograph of it in evidence.  You also
have the other unwanted gifts, the watch, the perfumes, even
the underwear.

Maria was hired by Quezada as a manager of Euros El
Tina to be his employee, where she worked in the back office of
the below-ground discotheque bar in Washington Heights.  The
first time Quezada touched Maria inappropriately was in 2011 at
a political event at the restaurant 809.  Quezada lifted up
Maria's dress and exposed her underwear to the people at that
event.  She was mortified and shamed and ran to the bathroom.
That is undisputed.  Quezada heard what was said about him, and
he chose not to deny it.

He has the right not to, but you now are left only
with what Maria told you.  She told you that after he did that,
she ran crying and shamed to the bathroom.  Maria told you that
after that night she stopped wearing dresses in front of
Quezada to protect herself, and she told him never to do that
again.  But it didn't end there.

No.  Quezada began sexually assaulting Maria in 2011
at work.  Maria told you how he'd come up from behind and grab
her breasts.  She showed you how he grabbed both of her breasts
from behind and how she would try to push him off; how when she
walked in the dark bar, he'd sneak up behind her and squeeze

NanWpizT1                    Summation - Mr. Brustein

1   her buttocks when no one could see.  That is undisputed.  This

2   didn't happen once or twice or ten times, but hundreds of

3   times, for years, eight years.  Quezada touched and grabbed and

4   squeezed Maria's body, her breasts, her buttocks, without her

5   permission.  That is undisputed.  No one testified that it

6   didn't happen, because it did happen.

7        When Maria would tell him to stop, he threatened her,

8   told her not to tell anyone, that she lived alone.  Maria was

9   all trapped inside in all sense of the word.  She drew the

10  diagram of her office -- it's a defendant's exhibit -- a

11  windowless room in a concrete bunker with a metal door and a

12  combination lock on it so no one else could get in.  Who worked

13  in that office?  Maria and Quezada.

14       Quezada owned Euros El Tina, and he treated everyone

15  in there like his property.  He treated Maria like his

16  property, like a sex slave in his dungeon.

17       Jose Eladio Castro testified that he saw Quezada pee

18  with the door open, pee from where Maria in her office saw his

19  penis, had to see his penis at her desk, and repeatedly asked

20  him to close the door.  It's undisputed that Quezada

21  masturbated feet from Maria's desk.  She described seeing his

22  hand moving up and down on his erect penis.  I know how vile

23  and disgusting the image of Quezada stroking his erect penis is

24  to hear.  Trust me.  I hate saying it as much as you hate

25  hearing it.  Now, imagine how she felt seeing it.  She will

1    have to live with that image for the rest of her life.

2            It's undisputed that Quezada did not just expose his

3    penis to Maria from the bathroom but that he walked towards her

4    with his penis out, slowly zipping his fly.  It's not

5    undisputed just because Quezada didn't deny it.  It's

6    undisputed because Mr. Dilone testified that he saw it too.

7    And defendants moved that statement into evidence.  You can

8    read it for yourselves:

9            "I, Christian Guzman Dilone, being duly sworn, deposed

10   and say that:"

11           Paragraph 3, "On one occasion I went into the office

12   as Santiago Quezada Sr. was exiting the bathroom in the office

13   with his penis out.  Mr. Quezada was acting as if this was

14   normal.  Mr. Quezada did not finish putting his penis away

15   until he was almost at Maria's desk, almost directly in front

16   of Maria Pizarro's desk.  Ms. Pizarro looked shocked."

17           Quezada did not stop there.  Now, before we talk about

18   the events of October 19, 2019, when he tried to rape her,

19   let's talk about the two claims we have proven here today:

20           First, a hostile work environment.

21           Maria has to prove that her work conditions were

22   altered because she was subjected to offensive statements or

23   actions because of her sex or gender.

24           Does anyone actually think that any of the things

25   Quezada did to Maria would have happened if she was a man?  Of

NanWpizT1                    Summation - Mr. Brustein

1   course not.  The reason he grabbed her breasts, squeezed her

2   buttocks, showed his penis to her and masturbated in front of

3   her, tried to rape her, is because of her sex and gender,

4   because she was a woman, a female.

5        Next, Maria has to prove that she did not welcome

6   these offensive statements or actions.  That's undisputed.

7   Maria testified.  She told you how she told him no, pushed him

8   off her, tried to stop him.  She struggled to protect herself

9   from Quezada.

10        Third, that the conduct was sufficiently severe or

11  pervasive.  "Pervasive" is just a fancy word for especially

12  unwelcome.  Ask yourselves this.  Were the years of sexual

13  assaults especially unwelcome?  Of course they were.

14        Finally, Maria needs to prove that she subjectively

15  perceived the work environment to be abusive.  You know she did

16  because she told you she did.

17        Now, Judge Hellerstein will explain to you that there

18  is a statute of limitations; that you cannot consider events

19  before May 17, 2019, unless -- and this is very important,

20  unless the events before May 17 were sufficiently similar to

21  the events after May 17.  And you know that they were.  Why?

22  Because Maria testified from 2011 until the business closed in

23  November 2019 that he did this to her repeatedly, grabbing her

24  breasts, squeezing her buttocks, that he peed with the door

25  open, masturbated in front of her, and that on October 2019, he

1    tried to rape her.  So yes, we have proven that they're

2    sufficiently related.

3              Talk about proof.

4              Our burden of proof is not beyond a reasonable doubt.

5    Our burden is by a preponderance of the evidence.  Picture a

6    scale, if you will, perfectly even.  All we need to show is

7    ever so slightly that it leans in Maria's favor.  What that

8    means is if you weigh the credible evidence of what Maria said

9    against what they said and you find what Maria said is more

10   credible, you must find for Maria.

11             But wait.  They didn't say anything at all.  It's not

12   their burden to, but they chose not to, and they chose not to

13   deny it.  So we're just left with what Maria says.  So if you

14   take just a slight feather and place it on Maria's side of the

15   scale, Maria wins.  If it's 51 to 49 in favor of Maria, Maria

16   wins.  If it's 50.00001 to 49.99999 in favor of Maria, Maria

17   wins.

18             Am I making that clear enough for you?

19             Judge Hellerstein will give you a verdict sheet much

20   like this one at the end of the case.  It's going to ask you,

21   question 1, as to defendant Euros El Tina, did plaintiff Maria

22   Jose Pizarro prove by a preponderance of the evidence that she

23   endured severe or pervasive conduct due to her gender amounting

24   to a hostile work environment?

25             You know the answer is yes, so you're going to check

1   yes.

2            Now, as to the second claim -- that Maria was treated

3   less well, at least in part, because of her sex or gender as a

4   female due to defendant's discriminatory intent -- even a

5   single comment in the right context can be enough.  A single

6   breast grab, a butt squeeze, masturbating with the door open

7   one time, walking towards Maria with his penis exposed just

8   once, or October 19, 2019, when he tried to rape her, any one

9   of those instances, taken by themselves, could be enough for

10  you to find by a preponderance of the evidence that we've met

11  our burden.

12           So for question 2, was she treated less well in the

13  workplace due to her gender by Euros El Tina, again, the answer

14  is yes, so you're going to check yes.

15           Moving down to question 2, as to defendant Santiago

16  Quezada Sr., did the plaintiff Maria Jose Pizarro prove, by a

17  preponderance of the evidence, that, as owner or her supervisor

18  he treated her less well in the workplace due to her gender?

19  You know the answer is yes.  Of course, check yes.

20           So let's return to October 19, 2019, the night Quezada

21  tried to rape Maria.  That night is undisputed.  Maria told you

22  how Quezada grabbed her from behind, pinned her arms in front

23  of her, pulled up her shirt, with his other hand yanked down

24  her pants and underwear, unzipped his fly and placed his erect

25  penis against her bare buttock.  Quezada heard everything that

1    was said against him, about him, just like you all did, yet he

2    chose not to deny it.  Why?  Because he heard Maria testify.

3    He knows, just like you do, how credible she is; that she told

4    the truth about what he did.  So he can't deny it.

5            Remember, this was a discotheque.  A loud party, 500

6    people, imagine how loud it must have been in that office.

7    Jose Eladio Castro testified that he needed to go not just into

8    the office but into the liquor room and close the door because

9    it was too loud for him to have a conversation on the phone.

10   And thank God he did.  Maria was trapped in that bunker, and

11   but for that -- this wasn't a spur-of-the-moment act by

12   Quezada -- he was going to rape Maria that night.  He knew it,

13   Maria knows it and you know it.

14           How do we know that?  Because when he went into that

15   room, he didn't just rush to grab Maria, pull down her pants

16   and underwear.  Remember back.  What was the first thing he did

17   when he entered that room?  He grabbed the computer mouse.  He

18   checked the cameras.  He wanted to see what was outside that

19   door.

20           This wasn't a room that anyone could just walk into.

21   It was a metal door with a combination lock, with a camera on

22   the outside of the door so he could know who was coming.  He

23   enlarged that camera on the screen, and while Maria was trapped

24   in there with him, he knew no one was there, or so he thought,

25   and that he had time to rape Maria.

1      Thank God Castro was there.  Castro told you that when

2   he exited the liquor room, he saw Quezada holding Maria with

3   her arms pinned in front of her, just like she described; that

4   he told Quezada to stop.  Quezada let go of her, zipped up his

5   pants, adjusted his clothes and left; that Maria fixed her

6   clothes and her exposed breasts, ran to the bathroom crying.

7   That is undisputed.  Maria told Quezada the next day that she

8   was going to do something about it.

9      What did Quezada do?  He said:  I was drunk, crazy.  I

10   don't remember anything.

11      That's what he always did.  Maria knew better, and you

12   know better.  If he was really that drunk, would he have

13   stopped to grab the computer mouse and adjust the computer

14   screens to check the cameras?  Of course not.  And he didn't

15   deny it under oath either.  If Maria had said anything that

16   wasn't true, they'd be jumping up and down saying she's lying,

17   calling her witnesses liars.

18      MR. RESTITUYO:  Objection, your Honor.

19      THE COURT:  You could answer those as you want,

20   Mr. Restituyo.  It's fair argument.

21      MR. BRUSTEIN:  They didn't do that.  They couldn't do

22   that, because Maria wasn't lying.  And as hard as this week has

23   been for Maria, sitting, knowing that Quezada was sitting

24   behind her each day, even now as I'm speaking, the same way she

25   was assaulted each time from behind by her boss, by Quezada,

NanWpizT1                     Summation - Mr. Brustein

1    Maria showed up and told the truth.  She took that stand,

2    looked you each in the eyes, looked Judge Hellerstein in the

3    eyes and told the truth.  She answered every question -- not

4    just mine, not just Restituyo's, Judge Hellerstein's too.

5              You have to credit Maria for her bravery.  It's not

6    easy to get up in front of a bunch of strangers and talk about

7    years of abuse, of what Quezada did when he tried to rape her.

8              Maria's trauma didn't end when the business closed.

9    Maria told you she started taking medication for her depression

10   and high blood pressure in 2011 because of the abusive behavior

11   of Quezada.  But on Christmas, December 2019, Maria tried to

12   kill herself because of what Quezada did.  Maria has told you

13   over and over how shamed she feels because of what Quezada did

14   to her.

15             Maria has nothing to be ashamed of.  Quezada does.  He

16   stole her voice.  He stole her power, and that's why she took

17   those sleeping pills.

18             Maria told you that after she tried to kill herself,

19   her psychiatrist changed her treatment plan, put her on

20   Lexapro, gave her a 24-hour number to call to speak to a

21   counselor to help her through if she felt suicidal; that she's

22   called it.  Maria has told you about the nightmares she's had

23   of Quezada trying to asphyxiate her, of Quezada and Junior

24   trying to run her over with a car.

25             Can you imagine how hard it has been for Maria to sit

1    through this trial with Quezada sitting right behind her?  None

2    of that is disputed.  Quezada has chosen not to deny any of

3    this.

4            Now that we've proven hostile work environment and

5    discrimination, how do we adequately compensate Maria for

6    everything she's been through, everything she's suffered?

7    That's not easy.  I've thought a lot about it.  I've come up

8    with a well-reasoned number:  $3 million.

9            THE COURT:  You're not allowed to mention any numbers.

10           MR. BRUSTEIN:  Understood, your Honor.

11           THE COURT:  The jury will eradicate that from their

12   minds.  The decision on whether to compensate, how to

13   compensate, how much to compensate is entirely yours, and the

14   lawyers are not allowed to suggest any numbers to you.

15           MR. BRUSTEIN:  Without coming up with specific

16   numbers, let me tell you how to evaluate this:

17           First, the October 19, 2019, attempted rape, where he

18   came up behind her, grabbed her, pinned her arms and pulled

19   down her pants and underwear; and

20           Second, the torture, eight years of torture:  Her

21   boss, Quezada peeing with the door open, feet from her desk;

22   masturbating in front of her; walking towards her with his

23   penis exposed, slowly zipping his fly; the hundreds of times

24   he'd come up and sexually assault her from behind, grabbing her

25   breasts, her buttocks.

1        You know, in this country, the death penalty is legal.

2   But the United States Constitution says cruel and unusual

3   punishment is not.

4        THE COURT:  Members of the jury, those phrases are for

5   criminal cases.  This is not a criminal case.

6        Please confine your attention to the merits of this

7   case.

8        MR. BRUSTEIN:  The point is torture is not allowed.

9   What Quezada did all those years is torture Maria.

10       Maria has emotional injuries from this.  You know the

11  injuries don't stop when the sexual assaults stop.  You don't

12  need to be an expert in psychology to know emotional injuries

13  last long, longer than physical pain.  Emotional injuries are

14  hard to deal with.

15       Maria has told you about her nightmares, about how

16  hard it's been to sleep.  We all know how hard one night,

17  restless sleep, tossing and turning, how bad that makes us

18  feel.  Maria has had 12 years of sleepless nights, and her

19  nightmares don't end when she wakes up.  No.  Maria has to live

20  with those for the rest of her life.

21       How many more years will that be?  20?  30?  How do we

22  compensate her not just for the pain up until today but the

23  future pain and suffering?  How do you put a number on that?

24       On the verdict sheet, it's going to ask you for the

25  defendants for which you answered yes in questions 1 and 2, did

1    plaintiff prove by a preponderance of the evidence that she

2    suffered compensatory damages?  And there's a line for the

3    amount of damages.  Don't worry about how big the line is.

4    Take as much space as you need.  Write it in.  Think about not

5    just the past pain, each act, the time she spent trapped in

6    that bunker, but the time she will take to live with these

7    memories for the rest of her life.

8            Underneath that, it's going to ask you to divide among

9    the defendants that you found liable that number.  Defendant

10   Euros as the employer obviously bears some responsibility, but

11   most of the blame, most of the responsibility has to land at

12   the foot of the rapist, the sexual molester, Quezada.

13           However you break down those numbers, it needs to add

14   up to the total amount of compensatory damages.

15           Now, the sheet also lists nominal damages.  Nominal

16   damages are if we've proven that Maria suffered, her rights

17   were violated, but no damages were proven.  I don't really

18   think that's something that makes sense in an attempted rape

19   case, but that aside, the only way you can punish the

20   defendants for what they did is if you found nominal damages,

21   if you didn't think we had proven compensatory damages.  As I

22   said, I don't think that's a factor, but since it's on the

23   sheet, I wanted you to understand what it was, and the judge

24   will explain that to you.

25           Now let's talk about the defendants' theory of the

1    case.

2            Mr. Restituyo told you in his opening statement that

3    there were only two options -- that it didn't happen or she

4    wasn't offended.  They can't sum up on that now because they

5    didn't put any evidence forward that it didn't happen.  It's

6    undisputed that it did happen.

7            And she wasn't offended?  You heard the testimony of

8    Maria and Castro and Dilone.  Wasn't offended?  That's

9    offensive.

10           So what does it leave them with?  Just like I said in

11   my opening, shameless attacks.  Some email from 12 years ago

12   where they claim Maria or Castro said baby or my love?  Maria

13   told you she didn't send that email and that wasn't something

14   she ever said; that her email was hacked and she switched

15   accounts.  But let them attack her for a fake email from ten

16   years ago, or that she didn't tell anyone that she was sexually

17   assaulted by Quezada because he threatened her?  Or that she

18   didn't shout loud enough when he was trying to rape her?

19           You don't need a degree in psychology to know some

20   women suffer silently in abusive relationships for years.  Some

21   women can't scream at all when they're raped or fight back.

22   But Maria tried.  She struggled and tried to push him off, but

23   he was too powerful.  That she didn't shout loud enough?  Shame

24   on them.

25           Now, let's talk about our theory of the case.

1                How do you know it's right?

2                First, it's undisputed; and second, not one but two

3       witnesses with no stake in the case came in, testified and told

4       you what they saw.  Not more, not less, just what they saw.

5                At the beginning of the case, I told you I was going

6       to come back to you and ask you to send a message to Maria that

7       you see her and send a message to the defendants that sexual

8       assault is wrong.  Now is our chance with punitive damages.

9       Punitive damages are meant to punish defendants for outrageous

10      conduct and to send a message to others that what they did is

11      wrong.

12               How do you send that message?

13               It needs to be a big number.  I'm not going to tell

14      you what that number is, but you need to think what number is

15      right to send that message -- that sexual assault is wrong;

16      that what they did to Maria is wrong.

17               On page 3 of the verdict sheet, you'll write that

18      number in, and again, you'll divide the responsibility between

19      Euros El Tina and Quezada.  Then the foreperson will sign the

20      verdict sheet and tell the court security person that you've

21      reached a verdict.

22               Now, Mr. Restituyo is going to try and tell you that

23      what Quezada did wasn't that bad; that Maria's damages are not

24      that great.  He's going to try and minimize everything.  But

25      you know what he said in the opening was it either didn't

1    happen or she wasn't offended.  Don't be distracted by

2    shameless attacks.

3           It's a lot of responsibility to take on Maria's case.

4    I've worked very hard to try and do everything I could for

5    Maria, but now, that responsibility is yours.  I'm giving

6    Maria's case to you.  Please make sure that you make Quezada

7    pay for what he did.  Send a message loud and clear to Maria

8    that you see her, that you hear her.  Send a message loud and

9    clear to Quezada and Euros El Tina that they have no choice but

10   to hear you.  Make them pay.

11          Thank you.

12          THE COURT:  Mr. Restituyo.

13          MR. RESTITUYO:  Can I start setting up, your Honor?

14          THE COURT:  One minute.

15          OK.  Proceed.

16          MR. RESTITUYO:  Good morning, Jury.

17          I want to thank you first for your service and taking

18   the time to be here.  I know it's a burden, and we are all

19   appreciative of the time that you've taken to be here.

20          Ladies and gentlemen, at the beginning of this trial,

21   I told you that you would hear some things that would shock

22   you, some things that would offend you.  I told you that I

23   wanted you to feel shocked and offended.  Feel free.  That's

24   what I said.  I wanted you to feel the outrage and humiliation

25   that was being expressed on that stand.

1          Then I told you that I wanted you to match those

2     emotions with what you would do if you were in a similar

3     position.  If you were that shocked and that outraged and that

4     humiliated and that scared, what would you have done?  Does

5     that match up with anything that happened here?

6          For example, if you were stuck in an office with a man

7     wrapped around you and you felt like you were going to be raped

8     and the guy that could save you was eight feet away, would you

9     shout?  Would you scream for help?  After the incident, would

10    you want to talk about it?  Or would you stay at work like

11    nothing ever happened?

12         What did Ms. Pizarro do?  Does that make sense to you?

13    I'll tell you this, one time, I was eight years old.

14         MR. BRUSTEIN:  Objection.

15         MR. RESTITUYO:  I almost drowned.

16         THE COURT:  Just a minute.  Overruled.  Go ahead.

17    Continue.

18         MR. RESTITUYO:  I almost drowned in --

19         THE COURT:  Don't make yourself the object.

20         MR. RESTITUYO:  You're right, your Honor.  I'm just

21    giving an example.

22         THE COURT:  Take yourself out of the example.

23         MR. RESTITUYO:  I screamed.

24         MR. BRUSTEIN:  Objection, your Honor.

25         THE COURT:  Take yourself out of the example.

1          MR. RESTITUYO:  I'll move on, your Honor.

2          For a long time I've been thinking about this case.

3    Specifically, how does one disprove the negative?  How do you

4    prove that something did not happen?  It's easy to have a

5    dispute about what happened.  That needs evidence.  Things

6    happened, there are clues, you saw it one way, I saw it another

7    way, we have a fight.  What happens when the story's completely

8    made up?

9          How, for example, would you convince me that you never

10   killed anyone?  Not being accused of murder does not mean that

11   you're not some closet serial killer.  Denying it doesn't

12   matter.  You'd have to show me every second of your life;

13   there's a video or a picture.  It's impossible.

14         Similarly, if the Quezadas had gotten up there and

15   told you that for nine years they didn't do anything, that

16   wouldn't matter.  You'd still want the evidence.

17         But there is no evidence of the negative.  It's

18   impossible to prove.  Luckily, the law doesn't place the burden

19   on them to prove the negative.  It places the burden on the

20   accuser to establish that something happened.  So did it

21   happen?

22         Another very interesting thing that I've had to

23   grapple with is this concept of shock and outrage.

24   Specifically, does a statement become true simply because it is

25   outrageous?  What if I told you that last week I saw a dummy?

1          MR. BRUSTEIN:  Objection, your Honor.

2          THE COURT:  One minute.

3          MR. RESTITUYO:  Your Honor, I'll move on.

4          THE COURT:  Sorry?

5          MR. RESTITUYO:  I'll strike it and give another

6     example, your Honor.  It doesn't matter.

7          THE COURT:  The objection's overruled.

8          MR. RESTITUYO:  I'll provide another example

9     (inaudible).

10         What if you heard that last week a gentleman near the

11    courthouse was subdued by three priests who took him into an

12    alley and forced the gentleman to give one of the priests oral

13    sex and that the priest pulled out his penis and he put it on

14    his forehead and he slapped him with it, both his cheeks, with

15    an erect penis.  Would that be true simply because it was

16    outrageous?  Would the priest getting up on the stand and

17    telling you I didn't do it, would that convince you?  The

18    answer's probably not.

19         Similarly, for me to put the Quezadas on the stand to

20    tell you we didn't do this would be pointless.  But since we're

21    playing this thought experiment, let's consider what evidence

22    you might want to see.  If, in fact, the scenario had occurred,

23    you'd probably want to know whether the police was called.

24    You'd probably want to know whether there was any evidence of

25    physical or emotional pain or injury.  You'd probably want to

1    know whether there were pictures or video of the priests or the

2    gentlemen or the act or the scene.  You'd probably want to know

3    whether anyone else saw what happened.  And finally, you might

4    want to know whether the person complaining had told anyone

5    else about it, especially contemporaneously.  Presumably, the

6    more shocked this person was, the quicker they would have let

7    other people know.

8            Now, here, you've heard a lot of undisputed,

9    undisputed, undisputed.  I just want to be clear.  The reason

10   why we're at trial today is because everything that Ms. Pizarro

11   has said has been disputed, and my clients have denied

12   everything --

13           MR. BRUSTEIN:  Objection.

14           MR. RESTITUYO:  -- from day one.

15           THE COURT:  Overruled.  The denial is in the

16   pleadings.  Everything's denied.  That means that the plaintiff

17   has the burden to prove the case by a preponderance of the

18   evidence.  But there was no testimony of denial.

19           MR. RESTITUYO:  Now, talking about this thought

20   experiment, let's talk about what evidence looked like.  Was

21   the police called?  The answer is no.  No, never, anywhere.

22   Ms. Pizarro never called the police to report any of these

23   incidents.  She never reported these incidents to anyone of

24   authority at any time.

25           Pizarro claims she was almost raped and was scared for

her life.  And yet she didn't mention that to anyone?  Her
excuse is that Mr. Quezada was friends with the officers of the
34th precinct, which is the precinct that covers the area
around El Tina Lounge.  But then you learn that the same
precinct was so friendly to him that they shut down his
business.

Now, in fairness, I'm using the words "shut down"; she
did not say that.  She said something way more interesting.
She said that these fine young police officers took time out of
their busy Saturday night to go visit Mr. Quezada at his
establishment, to talk about violations that he should fix in
the future -- not that they're a problem now but that he should
fix.  And they didn't issue him any tickets.  Not one.  They
merely counseled him, and as a result of that counseling,
Mr. Quezada shut down his business, mid-business, and hasn't
opened it since.

How sweet.  These people sound like guardian angels.
I wish I had people like that in my life, they saw me headed
for trouble and they took me aside and said hey, before you get
into trouble, and I wish I was smart enough to take their
counsel.  Ladies and gentlemen, that doesn't even pass the
laugh test.

Imagine if someone came to your work in the middle of
your workday and said I'd like to talk to you about your job,
before you get in trouble.  Now, let's take a walk.  Now,

1   you've done nothing wrong, but I would hate to see you get in

2   trouble.  Maybe you should never come back.  I'm sure you'd

3   walk out of there thinking, wow, what a good friend.  Does that

4   make sense to you?

5           This is what Ms. Pizarro wants you to believe, that

6   these good friends of Mr. Quezada would ignore her rape

7   complaint against him because they were so friendly.  Oh, and

8   by the way, if that sounds ridiculous, then you learn she lives

9   in Queens, a whole other precinct, could have filed her

10  complaint at any time, with no friends of Mr. Quezada.  No

11  complaint was filed.  No police report of anything at any time

12  ever.

13          Is there evidence that she was physically or

14  emotionally hurt?  Now, here's (inaudible).  Ms. Pizarro spent

15  an hour and a half of her testimony explaining how for the past

16  12 years, as a result of my client, she's had depression and

17  that all this time she's been on medication and she almost

18  committed suicide and she was hospitalized and that she dreams

19  about my clients killing her on a regular basis.  You heard me,

20  objection, objection, objection.  That's crazy.  That story is

21  downright shocking.

22          Now think about this:

23          Other than Maria's testimony, what evidence do you

24  have that any of that is true?  Could you even tell me what

25  medicine she claims she was on?  If my client had been

1   suffering depression at the hands of her harasser for 12 years

2   and I had three years to prepare for trial, you would have a

3   prescription and a description.  You would know exactly what

4   she was on, exactly why she was on it and exactly who caused

5   it.

6          Do you have any of that here?  Not one prescription,

7   not one doctor, not one doctor's note, not one hospital

8   admission, not a single piece of evidence other than her words

9   saying that they happened.

10         Ladies and gentlemen, you were on the jury for four

11  days last week.  If I gave you 15 minutes, let alone three

12  years, you'd come up with a half a dozen pieces of evidence to

13  show that you were here.  A jury card, an email, an

14  out-of-office message, a text message, a voice mail, a receipt,

15  a meal voucher.  You name it.  And by the way, while you're

16  here, you don't even have your cell phone and don't tell if you

17  have to leave before you get out of the room.  Think about

18  that.  If you had three years, no evidence of nine years of

19  torture?  Does that make sense to you?

20         So I ask again, does a statement become true merely

21  because it's outrageous?  And if you think, well, no one would

22  lie like that, have you read any good fiction books?  You think

23  fiction writers are the only ones with that skill?  They write

24  fake books because they make real money.  What do you think

25  this case is about?

1      Are there any pictures to support these allegations?

2  The answer is no.  Not a single picture, not a single video of

3  any incident alleged.  Ms. Pizarro has tried to paint a picture

4  in your head with the words that she has stated.  But no actual

5  pictures have been presented of any incident.  Think about

6  that.  We've heard the word "penis" over and over and over

7  again in this courtroom.  He showed his penis, he pulled out

8  his penis, he strolled across the room with his penis, he had

9  his penis against the butt and was moving it.  Penis, penis,

10  penis all over the place.  Not a single dick pic, and yet

11  you've seen a screenshot of a monitor full of cameras.  There

12  are cameras pointing into the very room that show the monitors.

13  This is a bar in Washington Heights.  Do you think those

14  cameras are there for show?

15      Are you going to tell me that in nine years,

16  Ms. Pizarro couldn't figure out how to get one picture of

17  Santiago Quezada with his penis out?  Not one?  With a camera

18  that her husband installed, that she used every single day?  So

19  as to the question are there any pictures or videos of the

20  incident, the answer is no, not a single one.

21      But we're not crazy.  What about the pictures of the

22  presents, you ask.  What about them, I would say.

23      May I show this to the jury, please, Plaintiff's

24  Exhibit 1, page 2.

25      THE COURT:  If it's in evidence --

NanWpizT1                          Summation - Mr. Restituyo

1          MR. RESTITUYO:  It's in evidence, your Honor.

2     Everything I'm going to show is in evidence.

3          THE COURT:  OK.

4          MR. RESTITUYO:  Ms. Pizarro wants you to believe that

5     she has proof that Mr. Quezada accosted her because --

6          MR. BRUSTEIN:  I can't see anything.

7          THE DEPUTY CLERK:  It was on.  Did you guys see it?

8          MR. RESTITUYO:  It's plaintiff's 1, picture 2.

9          MR. BRUSTEIN:  Thank you.

10         THE COURT:  Do you have it, Mr. Brustein?  Is it on

11    your monitor?

12         MR. BRUSTEIN:  No.  Our monitor's black, your Honor.

13         MR. RESTITUYO:  I'll explain everything I'm showing.

14    These are his exhibits.  When they're not, I'll explain.

15         THE DEPUTY CLERK:  It's probably something I can't fix

16    because they're all on.  Is yours on in the back?

17         MR. RESTITUYO:  It is.  Mr. Brustein is welcome to sit

18    at my desk.

19         MR. BRUSTEIN:  That's fine, your Honor.

20         THE COURT:  Go ahead.

21         MR. RESTITUYO:  Ms. Pizarro wants you to believe that

22    she has proof that Quezada Sr. accosted her because she has

23    these items that she took pictures of, and she says they were

24    presented by him.  And I want you to think, seriously, does

25    that make sense?  The only item that can be tied back to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

NanWpizT1                    Summation - Mr. Restituyo

1    Mr. Quezada for sure is a picture of a $2 bill with his

2    signature.  I'm going to place here plaintiff's 1, page 3.  And

3    just for comparison, look back -- you'll be able to ask for

4    these exhibits, but this was picture 1, plaintiff's 1, page 2,

5    all the items; and plaintiff's 1, page 3.

6            Now, this was given to Ms. Quezada three days -- to

7    Ms. Pizarro, sorry -- three days after Mr. Quezada purchased

8    the business from her husband.  And she admitted that it was in

9    commemoration of the purchase of the business.  However, from

10   there, she wants you to believe that Mr. Quezada was brazen

11   enough to put hearts on this bill and her name -- and her name

12   on it.

13           Now, let's just, for the sake of argument, say that he

14   had the balls to do that.  Let's just say that.  So three days

15   into their business relationship, he has the balls -- because

16   that's what it would take -- to give her a $2 bill in front of

17   her husband with hearts and her name on it.  And then for the

18   next nine years, not a damn thing?  Not one voice mail, not one

19   love note, not one email, not one text message?  Nothing?  How

20   does that even make sense?  That brazen on day one -- never

21   again.

22           So then I ask as to the question of whether there are

23   videos or pictures, the resounding answer is no.

24           Did anyone else see what happened?  Here, we

25   supposedly have two witnesses.

1          Mr. Castro, an attorney, who was also suing

2     Mr. Quezada after the business closed, eloquently explained an

3     incident that he claims that he saw.  Mr. Castro wants you to

4     believe that on the evening of October 19, he witnessed

5     Mr. Quezada trying to rape Ms. Pizarro.  He explained to you

6     how he felt shocked by the situation.  He described how he saw

7     Ms. Pizarro disheveled and with her breasts out.  She was

8     flustered and shaken.  And then they didn't even talk about it?

9     Are you for real?  I mean not one conversation?  Didn't even

10    tell anyone else about it?  He didn't even confront Mr. Quezada

11    about it?  He didn't call the police?  Nothing?

12          He's a lawyer.  What do you think the odds of that

13    are?  And just to be clear, he and Ms. Pizarro have been

14    working together since 2012.  He's testifying at her trial.

15    She's testifying in his trial.  And you mean to tell me there's

16    not one email or text message about this, about all the

17    innumerable instances of sexual harassment that he witnessed?

18    Does that make sense?  Did he sound like a person who has

19    trouble with words?

20          Let's talk about Mr. Dilone.  Here's a special guy.

21          Mr. Dilone got up on the witness stand, and he says

22    that he saw Mr. Quezada walk out of the bathroom, penis in

23    hand, walk all the way across the room to Ms. Pizarro's chair,

24    penis in hand, before deciding to put his penis in his pants

25    and zip them up, while standing in front of the two of them.

1   He claims he felt shocked.  And saw her feel humiliated.  But

2   then he did nothing about it.  And by nothing, I mean nothing.

3   He never spoke about it to anyone.  Like no one, like not his

4   partner, like not his colleagues, like not his boss, like not

5   the police, like not Quezada Jr.  Nothing, no one, like it

6   never happened.  No one, that is, except Ms. Pizarro and her

7   attorneys, of course.

8          I'm going to show you now defendants' A into evidence.

9   This is the affidavits of Mr. Dilone.

10          So three years ago, Mr. Dilone himself spoke to

11   plaintiff's attorneys, and they submitted an affidavit in

12   support of this case.

13          MR. BRUSTEIN:  Objection, your Honor.

14          THE COURT:  Sorry?

15          MR. BRUSTEIN:  Objection.  There's no testimony of any

16   of that.

17          THE COURT:  Sustained.

18          MR. RESTITUYO:  Mr. Dilone submitted an affidavit in

19   support of this case.

20          THE COURT:  We're taking this as testimony, so you

21   don't have to show the exhibit.

22          MR. RESTITUYO:  Well, I want to show the exhibit.

23          THE COURT:  It's an exhibit for identification.

24          (Indiscernible overlap)

25          THE COURT:  Mr. Restituyo, when I make a ruling, don't

1   speak over me.  All right?  Listen to my ruling.

2           My ruling is you can't use it.  You can talk about it,

3   but you can't use it.

4           MR. RESTITUYO:  OK.

5           THE COURT:  It's not a real exhibit.  It's just

6   testimony.

7           MR. RESTITUYO:  OK.

8           He signed the document on December -- in December

9   2020, and in that, he talks about this incident, of a walking

10  across the room, penis in hand, etc.  And then he got up on

11  that witness stand and told you, by the way, I also saw him

12  slap a waitress in the ass.

13          Now, here's the funny thing about that.  You think

14  three years ago when he sat down to write this affidavit,

15  somebody told him:  No, no.  I don't want to hear anything.

16  Don't tell me the whole truth, wait for the jury stand.  Do you

17  think he saved it?  You think he forgot, and now magically, all

18  of a sudden, on the stand remembered?  Maybe you think it

19  didn't happen.  And by the way, where is this lady he slapped

20  in the ass anyway?  And by the way, where is the picture or the

21  video of that?

22          Like I said, in a business full of cameras, and you

23  saw the screen, there's not one picture of any incident.

24          So you heard the witnesses who testified.  But what

25  about the witnesses who didn't testify?  How many other

1    employees did you hear from?  How many other women did you hear

2    from?

3              MR. BRUSTEIN:  Objection, your Honor.

4              THE COURT:  Overruled.

5              MR. RESTITUYO:  Not one.  Not one.

6              Who did Ms. Pizarro tell, and when did she tell them?

7    The short answer is she didn't tell anyone anything ever.  She

8    didn't tell the police.  She didn't tell the Quezada family,

9    and you know she had an opportunity to do that, not the wife,

10   not the daughter, not the brothers of Quezada Sr., not the

11   security guard, not the other managers.  No one.  You mean to

12   tell me for nine years she was harassed, didn't send a single

13   message about this to her best friend or her sister?  You know

14   the one who was so worried about her when she was committing

15   suicide?  She didn't tell her anything about this for nine

16   years?  Not one message, not one email, not one voice mail, not

17   one text, nothing, to anyone, ever.  And then the business

18   closes, and magically we're suing?

19             Now, jury, I'm not going to get into the verdict form

20   that Mr. Brustein did.  But at the end of the day, you're going

21   to have to make a decision whether Ms. Pizarro was treated less

22   well.  We've established that there is no evidence.  Plaintiff

23   dropped all her claims against Quezada Jr.  Now you're being

24   asked to determine whether Quezada Sr. and the company treated

25   Ms. Pizarro less well because of her gender.

1    And so I ask you this.  Less well than who?  Less well

2    is a comparative concept, right?  So somebody must have been

3    treated more well.  So who have you heard to compare

4    Ms. Pizarro to?  What other male employee at El Tina Lounge did

5    you hear from?  What other female employee did you hear from?

6    What other manager did you hear from?  The answer is no one.

7    Castro, to be clear, is a promoter and an independent

8    contractor.

9    MR. BRUSTEIN:  Objection.

10    THE COURT:  Overruled.

11    MR. RESTITUYO:  The security guard works for an

12    independent contractor.  You did not hear anyone who worked at

13    El Tina Lounge that was an employee that was treated more well

14    than Ms. Pizarro.  Ms. Pizarro was the boss and remained the

15    boss until the business closed.  Who did she say suffered less

16    than her?  Who testified to tell you that she suffered less

17    than they did?  No one.

18    A word on Ms. Pizarro.

19    Ms. Pizarro was the general manager of El Tina Lounge,

20    a bar-lounge located in Washington Heights.  For nine years El

21    Tina Lounge was open, that El Tina Lounge was open -- for nine

22    years meaning from day one until the end of the business -- she

23    was a supervisor of 30 employees plus contractors.  She managed

24    waitresses, bartenders, security guards, contractors,

25    Mr. Castro, performers, patrons, cast, the owners and almost

1   every other problem that presented itself.  Ms. Pizarro is no

2   slouch.  She knew how to manage people and she knew how to get

3   things done.

4        I'm sure that it is tempting to see Ms. Pizarro's

5   soft-spoken nature and mistake her as frail.  But that is not

6   the case.  Please don't mistake her quiet demeanor for

7   meekness.  And as you will recall, her testimony was cunning

8   and assertive.  She had an answer and, more importantly, an

9   excuse for everything.  She said what she meant to say, and she

10  told you the story that she wanted you to hear.  And yet in the

11  nine years of alleged constant assault and the three years to

12  prepare for this trial, neither Ms. Pizarro nor her attorneys

13  can provide us with a single piece of evidence to back up her

14  allegations.  Not one prescription, not one picture, not one

15  love note, not one text message, not one concrete piece of

16  evidence to back up any of the allegations that she made at

17  this trial.  For God sakes, she couldn't even get another

18  employee to testify.

19       Now I want to talk to you about lack of damages.  If

20  you believe that Ms. Pizarro -- if you believe Ms. Pizarro, you

21  are convinced by her story, that she was sexually harassed and

22  treated less well, then I want you to give her every penny she

23  deserves.  You're not going to hear me ask you to hedge.  Do

24  not hedge.  If she deserves it, give it to her.  But if she

25  didn't prove her case and she can't establish that anything

1    happened to her, then that number, it has to be zero.  There's

2    no damages for losing.  But it might as well be a million

3    dollar victory.  My clients have sat here.  Their names have

4    been dragged through the mud for three years.  Take that into

5    account.

6              When you go back into the jury room to deliberate, all

7    I'm asking you to do is think about these four questions:

8              One, which I asked at the very beginning, did

9    Ms. Pizarro's actions match her outrage?

10             Two, have you seen any corroborating evidence?

11             Three, does a lie become more believable simply

12   because it is shocking and offensive?

13             Four, should a plaintiff be rewarded for lying?

14             Ladies and gentlemen, thank you for your service.  I

15   wish you Godspeed and (inaudible).

16             Have a good day.

17             THE COURT:  Mr. Brustein, ten minutes, for rebuttal.

18             After Mr. Brustein completes his rebuttal, we'll take

19   our morning break.

20             MR. BRUSTEIN:  Shameless attacks.  You heard

21   Mr. Restituyo tell you that you can't believe Maria because she

22   suffered in silence, that you would have acted differently.

23   The question isn't how I or Mr. Restituyo or how any of you

24   might have acted in that situation.  Thank God we don't know.

25   We weren't there.  We heard from three witnesses who were, and

NanWpizT1                    Rebuttal

1   Ms. Pizarro told you why she suffered in silence.

2        He wants you to believe that she didn't prove it

3   because she didn't take a dick pic?  Are you kidding me?  She's

4   not looking for a photograph when she's trying to be raped --

5   when she's trying to avoid being raped.  She's looking for

6   help.  She's trying to protect herself.

7        This is not a fan moment.  This is serious, and

8   Mr. Restituyo, the reason he's hired is because he gets up and

9   talks a great game, smiling, laughing.  This is about serious

10  stuff, about attempted rape.  Shame on them for not taking this

11  seriously.

12       How do men like Quezada get away with this?  Fear and

13  silence.  That's why people suffer in silence.  Because they're

14  afraid.

15       Maria spoke out.  She had two other people speak out

16  too.  Their whole defense -- no one said anything sooner.  Have

17  you ever watched something that you thought was wrong but you

18  weren't brave enough to say something in the moment and you

19  thought to yourself shame on me for not speaking up?

20       They finally spoke up, and they want to shame them

21  because they didn't speak up soon enough?  No.  The way people

22  like this get away with it is silence.

23       Send a message that is loud, that they must hear.

24  Make them pay.

25       Thank you.

NanWpizT1                    Charge

1          THE COURT:  We'll take a short break, members of the

2     jury.  Close up your books.  Keep them on your chairs, and

3     we'll come back in 15 minutes.

4          (Recess)

5          THE COURT:  Be seated.

6          I thought the verdict sheet needed a little

7     clarification, so I did it with questions 3, 4 and 5, which

8     I've distributed, and we'll mark as Court Exhibit 6.

9          Is there any objection?

10         Mr. Brustein.

11         MR. BRUSTEIN:  No objection, your Honor.

12         THE COURT:  Mr. Restituyo.

13         MR. RESTITUYO:  No objection, your Honor.

14         THE COURT:  Thank you.

15         Let's bring in the jury.

16         (Jury present)

17         THE COURT:  Be seated, everyone.

18         It's my duty at this point, members of the jury, to

19    give you the instructions as to the law.  You're required to

20    follow the law as I give it to you.  You are the sole triers of

21    facts.

22         But before we get into this charge, I want to thank

23    you for your patience and attention throughout.  You've been an

24    excellent jury.  You followed the testimony.  You listened

25    carefully.  I could see it on your faces, and you're prepared

1    now to listen to the charge and, after that, to begin your

2    deliberations.

3          A charge does three things.  First, I explain the

4    rules and procedures that generally apply to a civil jury

5    trial.  Second, I explain how to decide whether the plaintiff

6    has proved that defendants violated the laws that the plaintiff

7    claims they violated, and these include liability and damages.

8    And third, I'll explain the procedures by which you should

9    conduct your deliberations.

10         You've heard all the evidence.  You've heard the final

11   arguments of the lawyers, and now these are my instructions.

12         You must take the law as I give it to you.  If any

13   attorney has stated legal principles different from what I

14   state in these instructions, it's my instructions that you

15   should follow.  Consider them as a whole when you deliberate

16   rather than singling out any one instruction as stating the

17   law.  And you should not be concerned about the wisdom of any

18   rule that I state.  Regardless of whatever opinion you think I

19   have, it's your decision about the facts.  I cannot intrude,

20   and I do not wish to intrude, on your province to decide the

21   facts.

22         A jury is critical to the administration of justice.

23   The right of trial by jury is guaranteed by the Constitution.

24   Rights to trial by jury are fundamental to our nation,

25   fundamental to the safeguard of our liberties.

NanWpizT1                      Charge

1        In deciding this case, you'll pass upon the weight of

2   the evidence, not the number of witnesses.  You determine the

3   credibility of the witnesses.  You resolve any conflicts that

4   might exist in the testimony, and you draw whatever reasonable

5   inferences are appropriate from the facts as you see them.

6        The evidence is the answers given by the witnesses --

7   that is, their testimony -- and the exhibits that were received

8   in evidence.  It's these that you base your verdict on, nothing

9   else.

10       What I have said is not evidence.  What the lawyers

11  have said in their openings and closing arguments is not

12  evidence.  The evidence is what the witnesses testified to

13  under oath and what the documents have said.

14       You may not consider any testimony or exhibits or

15  arguments that I directed you to disregard.  If an answer has

16  been stricken, you must entirely disregard it as though the

17  words were never spoken.  If I sustained an objection to a

18  question before the witness answered, please disregard, and you

19  must disregard, the question entirely.  You may draw no

20  inferences from the wording of the question nor speculate about

21  how it might have been answered.

22       Plaintiff Maria Pizarro has alleged that defendants

23  Euros El Tina and Santiago Quezada Sr. violated her rights

24  under federal, state and city law.  As the plaintiff, Pizarro

25  must prove the facts that support her allegations by a

NanWpizT1                    Charge

preponderance of the evidence.

When a party is required to prove a fact by a
preponderance of the evidence, it means that that party must
prove that the fact is more likely true than not true.  A
preponderance of the evidence means the greater weight,
qualitatively, of the evidence.  In determining whether a claim
has been proved by a preponderance of the evidence, you must
consider the relevant testimony of all witnesses, regardless of
who called them, and of all exhibits, regardless of who
produced them.  If you find that the credible evidence on a
given issue is equally divided between the parties -- that is,
it is equally probable that plaintiff Pizarro is right as it is
that defendants are right -- then you must decide that issue
against the plaintiff.

If the evidence relevant to an issue is equal,
plaintiff Pizarro has failed to satisfy her burden of proof.
However, plaintiff Pizarro need prove no more than a
preponderance.  If you find that the scales tip, however
slightly, in her favor -- that is, that what she claims is more
likely true than not true -- she will have proved her case by a
preponderance of the evidence.

I gave you that example of weights evenly divided,
tipping slightly one way or the other, at the beginning of the
case.  This is not a case where anyone has to prove anything
beyond a reasonable doubt.  The standard is preponderance of

the evidence.

        This is an employment discrimination case.  Plaintiff
alleges that she was subjected to sexual harassment so severe
or pervasive as to change the terms and conditions of her
employment, amounting to a hostile work environment; that she
was treated less well than others because of her gender, of her
sex, and that she was discriminated against as a woman.

        Plaintiff makes her complaint against her employer,
Euros El Tina, under federal, state and city law, and she makes
her claim against Santiago Quezada Sr. under New York City law.
They vary slightly, and I'll get into it in a few minutes.

        Plaintiff claimed that she sustained emotional injury
because of these acts and seeks recovery against defendants on
these bases.  And I'll talk more about that in a few minutes as
well.

        Defendants Euros El Tina and Santiago Quezada Jr. deny
plaintiff's allegations.  That's the issue that has been set up
by the assertion of the claims and the denial of the claims.
And then we have the proofs, and that's what you heard during
the trial.

        There are two defendants in this case: the company,
Euros El Tina; and the owner, Quezada Sr.  Plaintiff Pizarro
has the burden of proof by a preponderance of the evidence with
regard to each defendant.  You must make that assessment for
each claim asserted.  Just because you find that plaintiff has

met her burden with respect to one defendant does not

necessarily mean that she's met her burden with respect to the

other.  You must judge each claim against each defendant.

Now, the laws that plaintiff claims were violated:

Title VII of the Civil Rights Act of 1964, the federal

law, Title 42, United States Code, Section 2000e-2(a)(1),

provides that it is unlawful for an employer to discriminate

against any individual with respect to her terms, conditions,

or privileges of employment, because of such individual's race,

color, religion, sex or national origin.  It is unlawful to

discriminate against any individual with respect to her terms,

conditions, or privileges of employment because of such

individual's race, color, religion, sex or national origin.

Under New York State law, which is Executive Law

Section 296.1a, provides that it is an unlawful discriminatory

practice for an employer, because of an individual's gender

identity, to discriminate against such individual in terms,

conditions, or privileges of employment.  The federal and state

laws are equivalent; they're essentially the same.

The New York City Human Rights Law is a little

different.  It's Administrative Code, Section 8-107(1)(a), and

that law provides that it is an unlawful discriminatory

practice for an employer or an employee or agent thereof,

because of her gender, to discriminate against a person in

terms, conditions, or privileges of employment.

NanWpizT1                    Charge

1              It sounds the same, but it amounts to a little

2       difference, which I'll get into.

3              The case against the employers is under federal or

4       state law.  The case against the employee he discriminates

5       against, if he had discriminated, is under city law.  And we'll

6       get into that.

7              First, let me tell you what is a hostile work

8       environment.

9              To succeed on such a claim, an employee must prove

10      against an employer that her work conditions were altered

11      because of four things:

12             One, she was subjected to offensive statements or

13      actions because of her sex or her feminine gender;

14             Two, she did not welcome the offensive statements or

15      actions;

16             Three, the conduct was sufficiently severe or

17      pervasive that a reasonable person in her position would find

18      it hostile or abusive; and

19             Four, she subjectively perceived that the work

20      environment was abusive.

21             We'll get into each one.

22             The first element of a hostile work environment claim

23      is that the employee was subjected to offensive statements or

24      actions because of her sex or her feminine gender.  Plaintiff

25      must prove she was subjected to offensive statements or actions

NanWpizT1                    Charge

because she is a female.  That she's a female is, of course,

not contested.

        The second element of a hostile work environment claim

is that the employee did not welcome the offensive statements

or actions.  Whether Ms. Pizarro did not welcome or consented

to the offensive behavior is a question of fact that the

plaintiff must prove and you must find by a preponderance of

the evidence.  Casual contact and conversation among friends or

coworkers is not considered offensive in the absence of

aggravating circumstances, such as continued contact after an

objection.  Use your common sense to determine if defendants'

behavior was unwelcome.  And plaintiff must prove that it was

unwelcome by a preponderance of the evidence.

        The third element of a hostile work environment claim

is that the conduct was sufficiently severe or pervasive that a

reasonable person in her position would find it hostile or

abusive, thereby altering her working conditions.  There is no

magic formula to this.  In determining if the conduct was

severe or pervasive, you can consider all the circumstances,

including the frequency of the conduct, the severity of the

conduct, whether it was physically threatening or humiliating,

or a casual utterance or conduct, and whether defendants'

course of conduct unreasonably interfered with her work

performance.

        Euros El Tina and Quezada Sr. are governed by somewhat

NanWpizT1                    Charge

different standards under city law.  What I've just said --
severe or pervasive, altering the working conditions -- are
federal and state laws.

          Under city law, plaintiff must prove by a
preponderance of the evidence that she was subjected to
unwanted gender-based conduct that constitutes more than petty
slights or trivial inconveniences, even if the conduct was not
severe or pervasive; namely, that she was treated not well, not
as well as others because of her feminine gender.

          The fourth and final element of a hostile work
environment claim is that the victim subjectively perceived the
work environment to be abusive.  If you find that plaintiff
proved by a preponderance of the evidence that she believed the
work environment to be abusive, this element is satisfied.  If
plaintiff fails to prove this element -- namely, that the
conduct was unwelcome -- defendants are not liable for what
they said or did.

          Plaintiff testified that the hostile work environment
existed throughout her employment between August 2010 and
November 2019, when the business closed.  Because of the
statute of limitations, you may consider only acts that took
place after May 17, 2019, with one important exception.

          If the conduct before and after May 17, 2019, was
sufficiently similar in nature, frequency and severity that it
can be considered sufficiently related as to be part of a

NanWpizT1                    Charge

hostile work environment, you can conclude that.  However, if

the conduct spans across people, departments and large time

intervals without having harassing conduct, then you could find

the acts to be insufficiently related.

Plaintiff has the burden to prove by a preponderance

of the evidence that the hostile acts were sufficiently

related.

Defendant Euros El Tina was plaintiff's employer.  An

employer is presumed to be responsible for a hostile work

environment created by an owner or supervisor with immediate,

or successively higher, authority over the complaining

employee.

An employer may avoid liability if two elements are

met:

First, the employer must have exercised reasonable

care to prevent and correct promptly any sexually harassing

behavior; and

Second, that the employee unreasonably failed to take

advantage of any preventive or corrective opportunities

provided by the employer to avoid harm.

We call this an affirmative defense, and it's the

defendant -- not the plaintiff -- it's defendant Euros's burden

to prove it.  It has the burden of preponderance of the

evidence.  If the defendant Euros fails to prove by a

preponderance of the evidence these two facts -- that it

NanWpizT1                    Charge

exercised reasonable care to prevent and correct promptly any
sexually harassing behavior; and that plaintiff failed to take
advantage of that procedure -- an affirmative defense is
proven.  If a defendant fails to prove that affirmative defense
by a preponderance of the evidence, it's out of the case.

         Against both defendants, Euros El Tina and Santiago
Quezada Sr., plaintiff must prove by a preponderance of the
evidence that she was treated less well, at least in part,
because of her sex, because of her gender as a female, due to
defendants' discriminatory intent.

         I said that Euros El Tina was governed only by federal
and state law.  I was mistaken.  It's also governed by city
law.

         You can find liability under city law without a
tangible adverse employment action.  Plaintiff must show by a
preponderance of the evidence that she was subjected to
differential treatment based on a discriminatory motive or
intent because she was a female.  Even a single comment may be
actionable in the proper context under city law.  However, if
you find that Ms. Pizarro only endured an overbearing or
obnoxious boss, you may find that she has not met her burden.

         To summarize, against defendant Euros El Tina, if
plaintiff proved by a preponderance of the evidence that she
was subjected to offensive behavior due to being a female that
was so severe or pervasive as to alter her employment

NanWpizT1                    Charge

conditions, you find the restaurant liable.  If plaintiff

proved by a preponderance of the evidence that she was

subjected to less well treatment due to being a female,

creating a hostile work environment during her term of

employment at Euros El Tina, you should also find defendant

Euros El Tina liable.

        Against defendant Santiago Quezada Sr., if plaintiff

proved by a preponderance of the evidence that his conduct

subjected her to less well treatment due to being a female,

creating a hostile work environment, you should find Quezada

Sr. liable.

        I'm going to distribute a verdict sheet to you, to the

foreperson.  There are four questions with subdivisions that

you'll be given.

        The first two, on the first page, are liability

questions.  You are to answer as to defendant Euros El Tina,

did the plaintiff Maria Jose Pizarro prove by a preponderance

of the evidence that, A, she endured severe or pervasive

conduct due to her gender, amounting to a hostile work

environment?  You answer yes or no.

        And second, as to defendant Euros El Tina, did

plaintiff Maria Jose Pizarro prove by a preponderance of the

evidence that she was treated less well in the workplace due to

her gender?  Again, it's yes or no.  You can answer both

questions, and you should answer both questions.

1          Second, as to defendant Santiago Quezada Sr., did

2     plaintiff Maria Jose Pizarro prove by a preponderance of the

3     evidence that, as owner or her supervisor, he treated her less

4     well in the workplace due to her gender?  There's only one set

5     of questions for that.  Again, it's yes or no.

6          Now we get to damages.

7          You reach the issue of damages only if you've found

8     liability.  There are three types of damages, which I'll cover:

9     Compensatory damages, nominal damages, and punitive damages.

10          As with all other issues in the case, plaintiff has

11     the burden to prove the damages she actually suffered by a

12     preponderance of the evidence.  Damages must be based on

13     evidence, not on your speculation, sympathy or guesswork.  And

14     the evidence, again, is the testimony that was given and the

15     documents that were shown to you and offered into evidence and

16     accepted in evidence.

17          Plaintiff does not have to prove her damages with

18     mathematical precision.

19          Let me start with nominal damages.

20          If you find that either defendant is liable to

21     plaintiff but find that plaintiff has failed to prove by a

22     preponderance of the evidence that she suffered any actual

23     damages, then you must award her what we call nominal damages.

24          Nominal damages must be awarded when the plaintiff has

25     been deprived by the defendant of a right but has suffered no

actual damage as a natural consequence of that deprivation.

The mere fact that a deprivation of rights occurred is an

injury to the person entitled to enjoy those rights, even when

no actual damages flow from the deprivation.

Nominal damages may be as little as a penny and no

greater than a dollar.

Then there are compensatory damages.

If you find that plaintiff has proven any of the

claims just discussed, then you should determine whether and to

what extent that plaintiff is entitled to damages.

**Compensatory damages can be physical damage -- that**

**is, if you suffer any injury to the person physically -- or**

**they can be emotional damages.  Emotional damage is what**

**happens to you: pain, suffering, lingering feelings, anything**

**of that nature.  The important point is that plaintiff must**

**prove her damages, whether physical or emotional, or both; she**

**must prove that by a preponderance of the evidence, and that's**

**compensatory damages.  You can compensate her for the physical**

**or emotional injury that she has suffered and likely may**

**continue to suffer.  Again, plaintiff's burden is by a**

**preponderance of the evidence.**

Now, if plaintiff proves either compensatory or

nominal damages, she may also be entitled to punitive damages.

To be entitled to punitive damages, the plaintiff must prove

against each defendant that the defendant's conduct not only

NanWpizT1                    Charge

was wrongful but also was malicious, oppressive, wanton, or
showed a callous or reckless disregard of her rights.  The
purpose of punitive damages is to punish a defendant for
shocking conduct and to set an example to deter others from
committing similar acts in the future.  Punitive damages are to
be awarded only if you believe that the defendant acted so
outrageously that an example and a deterrent needs to be
provided to assure that the defendant and others will be less
likely to engage in such conduct in the future.  Any award you
give should be reasonable and proportionate to the need to
punish and deter.

         You should not in any of these respects -- nominal,
compensatory, punitive -- consider attorney's fees.  They are
not to be considered in your calculation.  That is for the
Court to determine.  If attorney's fees should be awarded and
how much they should be is a matter of law.  It's not anything
that you consider.

         Once again, you have the verdict sheet.

         Question 3:  For the defendants for which you answered
yes in questions 1 and 2 -- that is, the liability questions --
did plaintiff prove by a preponderance of the evidence that she
suffered (a) compensatory damages, you answer yes in the amount
of whatever dollar sign you give, and then if you give a
number, then you divide it.  If you find against Euros El Tina,
you say yes.  If you don't, you say no.  If you say yes, you

NanWpizT1                      Charge

1   say how much.  And against defendant Santiago Quezada Sr., you

2   say yes or no and how much.

3        So the first issue is how much in total is she

4   entitled to?  If you put an amount, then you divide it.  It

5   could be zero to 100 percent.  It will be divided among the

6   two, provided you answer yes in the first instance and give an

7   amount in the first instance.  If you don't give any

8   compensatory damages, you check the box "no compensatory

9   damages."

10        And then you answer question (b).  If there were no

11   compensatory damages, is plaintiff entitled to nominal damages?

12   Now, if you've given compensatory damages, there are no nominal

13   damages.  You skip that question.  If you do not give

14   compensatory damages, you consider if plaintiff should or

15   should not be given nominal damages.  Yes or no.

16        Again, first you consider compensatory damages.  If

17   you give compensatory damages, you divide it, zero to 100

18   percent.  If you do not give compensatory damages, you consider

19   nominal damages, yes or no.  If plaintiff is entitled to

20   neither compensatory or nominal damages, you check the box yes

21   or no.

22        Then you turn the page and you go on to the issue of

23   punitive damages.

24        For the defendants for which you answered yes in

25   questions 1 and 2 -- that is, that plaintiff is entitled to

NanWpizT1                    Charge

1    either compensatory or nominal damages against that

2    defendant -- then you go on to ask if plaintiff proved by a

3    preponderance of the evidence that she also should be awarded

4    punitive damages.  So you get to punitive damages only if

5    you've answered yes either to compensatory or nominal.  If you

6    answer neither, you don't get to punitive damages.  If you

7    answer yes to either compensatory or nominal, then you go on to

8    punitive.

9           So the first line is yes, in the amount of -- dollar

10   sign -- you pick out the number that you think is appropriate

11   for punitive damages.  And then again, you divide between the

12   two defendants, yes or no, and how much, and it's zero to 100

13   percent again.  You pick the right amount.  Or no punitive

14   damages, you check the box "no punitive damages."

15          Those are the questions on the verdict sheet.  They

16   will be given to the foreperson, whomever you elect, and when

17   the jury has reached a unanimous verdict, the foreperson signs

18   that verdict sheet and sends me a note, "The jury has reached a

19   verdict."  Do not send me the verdict sheet.  It has to be read

20   in open court.

21          Now, let me talk to you about the nature of evidence.

22          There are two general types: direct and

23   circumstantial.  You may rely upon either in reaching your

24   decision.  Evidence is direct when exhibits that are admitted

25   into evidence show facts or when the testimony is sworn to by

NanWpizT1                        Charge

witnesses who have actual knowledge of them from something

they've derived from the exercise of their senses, something

they heard, something they saw, something they smelled,

something they touched, so on.

Circumstantial evidence is evidence that tends to

prove a disputed fact by proof of other facts.  You infer on

the basis of reason and experience and common sense from an

established fact the existence or nonexistence of another fact.

Both types of evidence have strength and weaknesses.

The law does not require any special standards with regard to

each.  The law requires by taking all the evidence into

consideration whether the plaintiff has met her standard of

proof by a preponderance of the evidence.

There have been things said in the openings and

summations of counsel about whether particular witnesses should

be believed -- that is, their credibility.  You are being

called upon to resolve various factual issues in the face of

different and irreconcilable pictures taken by the plaintiff

and by the defendants.  You have to decide whether the

plaintiff has proved her case by a preponderance of the

evidence.  An important part of this decision will involve

making judgments about the testimony she gave and about the

testimony of other witnesses.  You should carefully scrutinize

all the testimony of each witness, the circumstances under

which each witness testified and any other matter in evidence

NanWpizT1                    Charge

which may help you to decide the truth and the importance of
each witness's testimony.

There is no magic formula for evaluating testimony.
You bring to this courtroom all the experience and background
of your lives in your everyday affairs.  You determine for
yourself every day and in a multitude of circumstances the
reliability of statements which are made to you by others.  The
same tests that you use in your everyday matters of importance
are the tests you use in your deliberations.

Your decision whether or not to believe a witness may
depend on how that witness impressed you.  What was the quality
of the witness's observation of the event about which the
witness was testifying?  Was the witness's vision clear or
obstructed?  Did events happen very fast, at about the same
time and in various places?  Was the witness candid, frank and
forthright?  Did the witness seem as if he or she was hiding
something, being evasive or suspect in some way?  How did the
way in which the witness testified on direct examination
compare with the way in which he or she testified on
cross-examination?  Was the testimony consistent or
contradictory?  Did the witness appear to know what he or she
was talking about, and did the witness strike you as someone
who was trying to report his or her knowledge accurately?

You may consider evidence of a witness's prior
inconsistent statements.  A prior inconsistent statement is a

NanWpizT1                    Charge

sworn statement made at an earlier time that is inconsistent
with the witness's trial testimony.

        If you find that the witness made an earlier statement
that conflicts with his or her trial testimony, you may
consider that fact in deciding how much to credit the witness.
You may consider whether the witness purposely made a false
statement or if it was an innocent mistake; whether the
inconsistency turns on an important fact or a minor detail; the
quality of the witness's explanation for the inconsistency; and
whether you find the witness's explanation appealing to your
common sense.  It's your duty, based on all the evidence and
your own judgment, to decide if the prior statements you have
heard were inconsistent with the trial testimony, and if so,
how much weight, if any, to give to the statement made during
trial.

        How much you choose to believe a witness may be
influenced by the witness's bias.  Does the witness have a
relationship with one of the parties, or was she a party, that
may affect how he or she testifies?  Does the witness have an
interest in the outcome of the case, some incentive of loyalty
or motive that may cause her or him to shade the truth?  Does
the witness have some bias, prejudice or hostility that may
have caused the witness, consciously or not, to give you
something other than a clearly accurate account of the facts he
or she testified about?

NanWpizT1                    Charge

1           These are general rules applicable to many cases, and

2      you apply that which is applicable to this case in your

3      opinion.

4           If a witness has an interest in the outcome, that

5      witness is not necessarily incapable of giving truthful

6      testimony.  It's for you to decide to what extent, if at all,

7      the witness's interest has affected or colored his or her

8      testimony.  But evidence that a witness is biased, prejudiced

9      or hostile with respect to someone else requires you to view

10     that witness's testimony with caution, to weigh the evidence

11     with care and subject it to careful consideration.

12          If you find the witness has willfully testified

13     falsely as to any material fact, you have the right to reject

14     that testimony in its entirety.  Alternatively, even if you

15     find that a witness has testified falsely or inaccurately about

16     one matter, you may reject as false or inaccurate that portion

17     of testimony and accept as true any other portion of testimony

18     that recommends itself to your belief or which you may find

19     corroborated by other evidence in the case.

20          In deciding credibility, in short, you size up a

21     witness in light of his or her demeanor, the explanations given

22     and all the other evidence in the case, just as you would in

23     any important matter where you're trying to decide if a person

24     is truthful, straightforward and accurate in his or her

25     recollection.  Use your common sense, your good judgment and

1   your experience.

2           You may have heard that witnesses have discussed the

3   facts of the case with their lawyers before they appeared in

4   court.  There's nothing unusual or improper about such

5   meetings.  However, it's something you may consider.

6           Lastly, it's perfectly legitimate for counsel to

7   attack the credibility of any witness by attempting to impeach

8   the witness.  That's part of normal client-lawyer activity.

9   But in the end, you ask yourself was that witness credible?

10  How much should I believe in what he or she have said?

11          Defendant Quezada Sr. chose not to testify.  He had

12  the right to testify, and he was present throughout the trial

13  and heard everything that was said against him.  He chose not

14  to testify, and defendants chose not to present any witnesses.

15  That was his right and that was their right.  Defendants ask

16  you to judge this case entirely on plaintiff's proofs.  They

17  contend that it is plaintiff's burden to prove her case by a

18  preponderance of the evidence, and they contend that she failed

19  to satisfy her burden of proof.  The law gives a defendant the

20  right to make such an argument.

21          However, you are the judges of the facts, and you have

22  heard the testimony of Ms. Pizarro, Mr. Castro and Mr. Dilone.

23  The only other person with direct knowledge is Mr. Quezada Sr.

24  Although either party could have called him as a witness, his

25  choice not to testify leaves you with only plaintiff's account

NanWpizT1                    Charge

1    of what happened.  If you find her testimony credible, there is

2    no alternative account that you can consider.  You must ask

3    yourself if, from the credible evidence, plaintiff proved her

4    case of a hostile work environment by a preponderance of the

5    evidence.

6         In determining the facts, you should rely upon your

7    own recollection of the evidence.  What the lawyers have said

8    in their opening statements or in their closing statements, in

9    their objections or in their questions is not evidence.  A

10   question put to a witness is not evidence.  Only the answer,

11   responsive to the question, is evidence.

12        It's the duty of the attorneys on each side of the

13   case to object when the other side offers testimony or other

14   evidence which an attorney believes is not properly admissible.

15   Counsel also have the right and duty to ask the Court to make

16   rulings of law and request conferences at the sidebar out of

17   the hearing of the jury.  That is not your concern.  You should

18   not show any prejudice against any attorney or the attorney's

19   client because of any objection made by that attorney or any

20   request for rulings or any requests for sidebar.  Those are

21   matters of law for me to address.  They're not matters for you.

22   Your reliance is on what the witnesses said and what the

23   documents said.

24        Sometimes I sustained objections.  Sometimes I did

25   not.  My rulings should not affect you in any way.  Do not

NanWpizT1                    Charge

1    guess why I'm making a ruling.  Do not guess, if I sustained an

2    objection, what the witness might have said or what the lawyer

3    might have argued.  That's not in the case.  The only evidence

4    in the case is what the witnesses said and what the documents

5    said.

6           Sometimes I asked questions of a witness.  My

7    questions have no more importance than the lawyers' questions.

8    The fact that I asked a question, again, is of no concern to

9    you.  You are the sole and exclusive judges of the facts.  I

10   have not meant to indicate any opinion as to the facts or what

11   your verdict should be.  The rulings I have made during the

12   trial are not an indication of whatever views I might have.  I

13   have no opinion as to this case.  It's not my job.  It's your

14   job, and I will not intrude on what you have to do.

15          You're not to be swayed by sympathy or bias in coming

16   to a decision.  You're to be guided solely by the evidence and

17   the crucial question "did plaintiff prove her case by a

18   preponderance of the evidence?"  So you should not consider any

19   personal feelings you might have about anyone's personal

20   characteristics or the lawyers' characteristics, not their

21   race, not their religion, not their national origin, not their

22   sex, not their age, not their duty, not anything else, only the

23   merits of the case.  That is your duty and responsibility.

24          Our judicial system cannot work and equal justice

25   under the law cannot be given if you allow your verdict to be

NanWpizT1                         Charge

1    swayed by anything other than the merits of the case.

2         Some of you took notes throughout the case.  Those

3    notes are to assist only the note-taker.  They're not to aid in

4    anyone else's recollection, and they're not to be used to

5    persuade any other juror.  The fact that something is in your

6    notes is of no consequence to anyone else but you.  If there's

7    any question about recollection of any particular item of

8    testimony or any exhibit that you consider important, you can

9    ask that testimony to be brought back to you either in the form

10   of rereading or in the form of a physical copy.

11        Now, your verdict must be unanimous.  Whether it's for

12   or against any particular question, there must be unanimity as

13   to each and every question you answer.

14        Each juror is entitled to his or her opinion.  Each,

15   however, should exchange views with all fellow jurors, for that

16   is the very essence of jury deliberation -- to discuss and

17   consider the evidence, to listen to the arguments of fellow

18   jurors, to present your own views, to consult with one another

19   and to reach an agreement based solely and wholly on the

20   evidence.  Each of you must decide the case for yourselves

21   after consideration with your fellow jurors of the evidence in

22   the case.  You should not hesitate to change an opinion if

23   after discussion with fellow jurors their view appears to be

24   correct and yours does not.  That's the very purpose of

25   deliberations.  However, if, after carefully considering all

1    the evidence and the arguments of your fellow jurors, you

2    entertain a conscientious view that differs from the others,

3    you should stick to your conscientious conviction and not

4    abandon it simply because you are outnumbered.

5            Your final vote must reflect your conscientious

6    convictions as to how the issues should be decided.  Your

7    verdict as to each and every question must be unanimous.

8            The foreperson has a notepad and will be given

9    envelopes.  If any juror has a question either about my rulings

10   or about my instructions or about the evidence in the case, the

11   foreperson is to describe the question and put it in a sealed

12   envelope, give it to the court security officer.  It will be

13   brought to me.  I'll read it to the lawyers, and we'll together

14   consider the answer that we should be giving.  All your

15   questions will be answered.  Sometimes it takes time.

16   Meanwhile, you continue your deliberations.

17           Do not let me know what you're thinking.  Just ask me

18   a question.  Don't tell me who is asking the question.  It's

19   the jury who asks the question.  Don't tell me whether there

20   are any votes one way or the other.  Don't tell me how

21   different people may be thinking.  I do not want to know any of

22   this, and it's no business of anybody's.  You are the jury.

23   What you say to each other is in confidence and should be

24   respected as such.  So I just want to know what the question is

25   to give you information, and nothing else.

NanWpizT1                    Charge

1          Your verdict will and must be announced only in open

2     court at the end of your deliberations.  When you finish your

3     deliberations, the foreperson will then put down the answers

4     you unanimously give.  When all the questions are answered, a

5     note should be sent, "The jury is ready for their verdict."

6     Then you will be brought out into court, and the foreperson

7     will read the verdict.  First the document is inspected to make

8     sure it's proper in form, and then the foreperson will read it.

9          I think I've completed what I have to say to you, but

10    let me see if either lawyer has anything to modify or change.

11          Counsel, please, sidebar.

12          (At sidebar)

13          THE COURT:  Mr. Brustein.

14          MR. BRUSTEIN:  Yes, your Honor.  I believe you need to

15    instruct the jury as to how they choose a foreperson.

16          THE COURT:  Sorry?

17          MR. BRUSTEIN:  How the jury chooses a foreperson.

18          THE COURT:  I have to do that.  Thank you.

19          MR. RESTITUYO:  The last question as to damages, your

20    Honor, I think it's unclear.  May I?

21          THE COURT:  Where?

22          MR. RESTITUYO:  This one, the "yes," "no," "neither."

23    First it's not stated as a question, and then it's unclear

24    whether neither, nor will be yes or no.

25          THE COURT:  What do you want me to do?

NanWpizT1                    Charge

1          MR. RESTITUYO:  I think maybe right now the quickest

2   answer is have them write out the response.  I think the

3   easiest way for them is to have them write out the response --

4   yes, damages; no, damages.  That way it's clear.

5          THE COURT:  Do you mean check a box?

6          MR. RESTITUYO:  Yeah.  First, it's not a question.

7   Second is "neither," "nor," the double negative could be a

8   positive, is my point.

9          THE COURT:  Are you telling me to strike out question

10  6ix?

11         MR. RESTITUYO:  You can.  If you do, then it's

12  self-explanatory.

13         THE COURT:  Strike out question 6?

14         MR. BRUSTEIN:  I have no objection to that, your

15  Honor.

16         THE COURT:  OK.

17         MR. RESTITUYO:  Here's a pen, if you want.

18         THE CLERK:  I can do it electronically.

19         THE COURT:  Or we can just cross it out.  Just cross

20  it out.

21         THE DEPUTY CLERK:  Let her print it for the jury.  On

22  ours you can just cross out.

23         MR. RESTITUYO:  Perfect.

24         MR. BRUSTEIN:  That's fine, your Honor.

25         THE COURT:  OK.  You can go back to your seats.

NanWpizT1                      Charge

1           (In open court)

2           THE COURT:  One minute.

3           I have two points, members of the jury, that need to

4    be clarified.

5           No. 1 is that I didn't tell you about the rules of

6    forepersons.  The jury should make that the first order of

7    business, to elect their foreperson.  If you fail to elect a

8    foreperson, by convention in this court, juror No. 1 will be

9    the foreperson.  But it's for you to vote and decide.

10          The second thing is counsel pointed out a logical

11   inconsistency in the jury verdict sheet.

12          They've suggested, and I've agreed, to take out the

13   last part of question 3.  So first you're asked about

14   compensatory damages.  Then you're asked if there are no

15   compensatory damages, is plaintiff entitled to nominal damages?

16   Yes or no.  And then by repeating the negative, I created

17   confusion.  So we've crossed out the last subparagraph, (c).

18   We'll give you a clean copy that doesn't have it.  And that

19   finishes what I have to tell you.

20          Now Ms. Jones is going to give you envelopes and a

21   verdict sheet.  And we're ready to swear the court security

22   officer.

23          (Court security officer sworn)

24          THE COURT:  The jury may now retire to begin

25   deliberations.  There will be lunch for you at 1 o'clock.

NanWpizT2

```
 1                 (At 12:48 p.m., the jury retired to deliberate upon a
 2      verdict)
 3                 THE COURT:  You may be seated.
 4                 Make sure Ms. Jones knows how to reach you.
 5                 (Recess pending verdict)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

NanWpizT2

AFTERNOON SESSION

235 p.m.

THE COURT:  Be seated, please.

We've received two notes from the jury, which I shared with you.  They've been marked Court Exhibits 7 and 8.

Court Exhibit 7 reads as follows:

"Please redefine compensatory and punitive damages."  And it's signed -- I don't know; we'll find out -- 1:30 p.m., today's date.

And exhibit 8 reads:

"Are there other owners of the business?  What is the structure of ownership percentages?"

It came in at 2 o'clock.

Turning to the second question first, the only testimony I remember on this is Ms. Pizarro's testimony that Quezada Sr. bought the business from Ms. Pizarro and her husband.

Is there any other evidence in the case?

It's not what the situation is; it's what the evidence is.

MR. BRUSTEIN:  One second, your Honor?  I'm trying to recollect the testimony.

Your Honor, my recollection is that during the cross-examination of Mr. Castro, Mr. Restituyo elicited an identification of Santiago Quezada Jr. and asked who he was,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

NanWpizT2

1  and I believe, if my memory serves correct, he talked about him

2  being an owner.

3      THE COURT:  I remember the question, but I don't

4  remember the answer.

5      Mr. Restituyo, what's your memory?

6      MR. RESTITUYO:  I don't remember the answer.

7  That's -- you don't -- in actuality, that's not the case.

8      THE COURT:  October 17, on the Live Note, here is the

9  question:

10  "Q.  What were her duties?

11  "A.  Generally to follow the instructions of Santiago Quezada

12  Sr. and Santiago Quezada Jr., who were the owners."

13      I'll read that line to them from Mr. Castro's

14  testimony.

15      As to the first question, "Please redefine

16  compensatory and punitive damages," I propose to read the model

17  instructions from the treatise on federal employment jury

18  instructions, which I handed out and which we can mark as Court

19  Exhibit 9.

20      Are there objections?

21      Mr. Brustein.

22      MR. BRUSTEIN:  No, your Honor.

23      THE COURT:  Mr. Restituyo.

24      MR. RESTITUYO:  No objection, your Honor.

25      THE COURT:  OK.

NanWpizT2

|    |    |
|----|----|
| 1  | MR. RESTITUYO:  Your Honor, will there be an |
| 2  | instruction with respect to punitive damages? |
| 3  | THE COURT:  I'll read what I had before. |
| 4  | MR. RESTITUYO:  OK.  That's fine. |
| 5  | (Jury present) |
| 6  | THE COURT:  Be seated, everyone. |
| 7  | Thank you for your notes, members of the jury.  I'm |
| 8  | required to read them to you to make sure that they're your |
| 9  | notes. |
| 10 | The first note, coming in at 1:30 p.m. and signed |
| 11 | by -- is that Mr. Wallack? |
| 12 | THE FOREPERSON:  Yes. |
| 13 | THE COURT:  You're the foreperson. |
| 14 | THE FOREPERSON:  Yes. |
| 15 | THE COURT:  The question is, "Please redefine |
| 16 | compensatory and punitive damages."  We marked the first note |
| 17 | Court Exhibit 7. |
| 18 | The second note is:  "Are there other owners of the |
| 19 | business?  What is the structure or ownership percentages?" |
| 20 | I'll answer the second note first.  There's only one |
| 21 | item of testimony that deals with the ownership, maybe two. |
| 22 | One is the testimony Ms. Pizarro gave -- that Mr. Quezada Sr. |
| 23 | bought the business from Ms. Pizarro and her husband. |
| 24 | The second, in Castro's testimony, he was asked: |
| 25 | "Q.  What were her duties? |

NanWpizT2

"A.   Generally, to follow the instructions of Santiago Quezada

Sr. and Santiago Quezada Jr., who were the owners."

That's all the evidence that we have on that point.

On the first point, "Please redefine compensatory and

punitive damages," I'll divide them up.

As to compensatory damages, I told you essentially

this:  That plaintiff is entitled to recover as compensatory

damages the amount of money that will justly and fairly

compensate her for any injuries proximately caused by the

defendants' conduct, including mental anguish, emotional harm,

fear, and humiliation proximately caused by the defendants'

conduct.

I could give you a more elaborate charge if that might

be helpful.

Plaintiff is also entitled to recover damages in an

amount which will reasonably compensate her for the loss and

injuries suffered as a result of defendants' unlawful conduct.

You may award plaintiff reasonable compensation for

the following:

1.   Pain, suffering and physical or emotional distress;

2.   Embarrassment and humiliation;

3.   Loss of enjoyment of life -- that is, plaintiff's loss

of the ability to enjoy certain aspects of her life as a result

of defendants' discriminatory actions; and

4, which is not relevant, any out-of-pocket expenses or

NanWpizT2

losses incurred as a result of the unlawful discrimination.

You may consider the testimony and the demeanor of plaintiff in considering and determining a fair allowance for any damages for emotional distress, humiliation and loss of enjoyment of life.  Emotional harm may manifest itself, for example, as sleeplessness, anxiety, stress, depression, marital strain, embarrassment, humiliation, loss of respect, emotional distress, loss of self-esteem or excessive fatigue.  Physical manifestations of emotional harm may also occur, and there's been no evidence of that in this case, such as ulcers, headaches, skin rashes, gastrointestinal disorders or hair loss.

In the determination of the amount of the award, it will often be impossible for you to arrive at a precise award.  These damages are intangible, and it is difficult to arrive at a precise evaluation of actual damages for emotional harm from gender discrimination.  No opinion of any witness is required as to the amount of such reasonable compensation.  Nonetheless, it is necessary to arrive at a reasonable award that is supported by the evidence.

To be entitled to punitive damages, the plaintiff must prove against each defendant that the defendant's conduct not only was wrongful but also was malicious, oppressive, wanton or showed a callous or reckless disregard of her rights.  The purpose of punitive damages is to punish defendants for

NanWpizT2

shocking conduct and to set an example to deter others from

committing similar acts in the future.

Punitive damages are to be awarded only if you believe

the defendant acted so outrageously that an example and a

deterrent needs to be provided to assure that the defendant and

others will be less likely to engage in such conduct in the

future.  Any award you give should be reasonable and

proportionate to the need to punish and deter.

Is there any further question?

You may continue to deliberate.  Thank you very much.

(Jury deliberations continued; time noted:  3:00 p.m.)

THE COURT:  See you at the next question or the next

note.

MR. BRUSTEIN:  Thank you, your Honor.

(Recess pending verdict)

THE COURT:  Be seated.

We have a note; we'll mark it Court Exhibit 9:  "We

have reached a verdict."  3:35 p.m.

Call the jury.

(Jury present)

THE COURT:  Be seated, everyone.

Ms. Jones, take the attendance of the jury.

THE DEPUTY CLERK:  Ladies and gentlemen of the jury,

please answer present when your name is called.

(Jury roll called)

NanWpizT2

1          THE COURT:  All members of the jury are present.

2          I have a note marked as Court Exhibit 9:  "We have

3     reached a verdict."

4          Mr. Foreperson, would you please give Ms. Jones your

5     verdict sheet for my inspection.

6          Please return the verdict sheet to the foreperson.

7          THE DEPUTY CLERK:  Mr. Foreperson, please rise.

8          As to defendant Euros El Tina, did the plaintiff Maria

9     Jose Pizarro prove, by a preponderance of the evidence, that,

10    (a) she endured severe or pervasive conduct due to her gender,

11    amounting to a hostile work environment?

12         THE FOREPERSON:  Yes.

13         THE DEPUTY CLERK:  (b) she was treated less well in

14    the workplace due to her gender?

15         THE FOREPERSON:  Yes.

16         THE DEPUTY CLERK:  As to defendant Santiago Quezada

17    Sr., did plaintiff Maria Jose Pizarro prove, by a preponderance

18    of the evidence, that, as owner or her supervisor, he treated

19    her less well in the workplace due to her gender?

20         THE FOREPERSON:  Yes.

21         THE DEPUTY CLERK:  For the defendant for which you

22    answered "yes" in questions 1 and 2, did plaintiff prove, by a

23    preponderance of the evidence, that she suffered compensatory

24    damages?

25         THE FOREPERSON:  Yes.

NanWpizT2

1          THE DEPUTY CLERK:  In the amount of?

2          THE FOREPERSON:  1,725,000.

3          THE DEPUTY CLERK:  Divided among defendants, defendant

4   Euros El Tina.

5          THE FOREPERSON:  725,000.

6          THE DEPUTY CLERK:  If yes, for how much should the

7   defendant be responsible?

8          THE COURT:  He answered yes.

9          THE DEPUTY CLERK:  For defendant Santiago Quezada Sr.?

10         THE FOREPERSON:  1 million.

11         THE COURT:  Did you answer the questions yes or no?

12         THE DEPUTY CLERK:  Yes.

13         THE FOREPERSON:  Yes and no.

14         THE COURT:  You have to check a box.  Which one?

15         THE DEPUTY CLERK:  Yes and yes.

16         THE COURT:  Which one, Mr. Foreperson?

17         THE FOREPERSON:  For defendant Euros El Tina, yes.

18         THE DEPUTY CLERK:  And for defendant Santiago Quezada

19   Sr.

20         THE FOREPERSON:  Yes.

21         THE DEPUTY CLERK:  For the defendant for which you

22   answered "yes" in questions 1 and 2 -- that is, that plaintiff

23   is entitled to compensatory or nominal damages against the

24   defendant -- did plaintiff prove, by a preponderance of the

25   evidence, that she also should be awarded punitive damages?

NanWpizT2

<span>1</span>             THE FOREPERSON:  Yes, in the amount of 1 million.

<span>2</span>             THE DEPUTY CLERK:  Divided among defendants, defendant

<span>3</span>   Euros El Tina.

<span>4</span>             THE FOREPERSON:  Yes, 375,000.

<span>5</span>             THE DEPUTY CLERK:  Defendant Santiago Quezada Sr.

<span>6</span>             THE FOREPERSON:  Yes, 625,000.

<span>7</span>             THE COURT:  Thank you, Mr. Foreperson.

<span>8</span>             Ms. Jones, would you take the verdict sheet and show

<span>9</span>   it to counsel.

<span>10</span>             Thank you, Mr. Foreperson.

<span>11</span>             THE FOREPERSON:  Thank you.

<span>12</span>             THE COURT:  Do the parties wish the jury to be polled?

<span>13</span>             MR. BRUSTEIN:  No, your Honor.

<span>14</span>             MR. RESTITUYO:  No, your Honor.

<span>15</span>             THE COURT:  Thank you.

<span>16</span>             Members of the jury, you've done your duty.  You

<span>17</span>   served here, you served well, you served honorably.  You were

<span>18</span>   attendant to the evidence.  You deliberated and you've reached

<span>19</span>   a verdict.  For this I thank you.  For this the administration

<span>20</span>   of justice thanks you.

<span>21</span>             I said in the instructions that juries are fundamental

<span>22</span>   to the liberties of American citizens.  They assure equal

<span>23</span>   justice under the law.  They assure a disciplined courtroom.

<span>24</span>   They assure a fair and impartial verdict reached by a person's

<span>25</span>   peers.  There is no substitute for this.  I don't think any

NanWpizT2

1    other country does this to the extent that we do.  I am proud

2    of our jury system.  I hope you are.  I hope you've enjoyed

3    your service.

4            I said at the outset that you are not to speak about

5    this to anyone.  You are now free of any restrictions of the

6    courtroom, but you may decide, as a matter of your own

7    consciousness and as a matter of respect for your fellow

8    jurors, that you should keep the confidence of one another and

9    not disclose what any particular one thought or what you all

10   thought.  It's your business.  It's nobody else's business, but

11   you are free to do what you do.

12           Ms. Jones will collect your books.  We'll destroy your

13   notes.  And I thank you again for your service.

14           Good afternoon.

15           (Jury discharged)

16           THE COURT:  Be seated, please.

17           I have a question of fees to entertain.  How should we

18   proceed, Mr. Brustein?

19           MR. BRUSTEIN:  Your Honor, I would request time to be

20   able to provide an application to the Court.

21           THE COURT:  How much time would you like?

22           MR. BRUSTEIN:  Your Honor, I would ask for 45 days.

23           THE COURT:  45 days?  You need that much?

24           MR. BRUSTEIN:  The reason for that, your Honor, is I

25   have a few other motions due, and I didn't want to have to ask

NanWpizT2

1  for more time.

2          THE COURT:  All right.  We'll get a date for you.

3          Let me suggest this.  There should be a date before

4  you send it to me when you give it to Mr. Restituyo and discuss

5  with him how much you can agree to and how much you can't.

6  Would you like 45 days for that?

7          MR. BRUSTEIN:  Yes, your Honor.

8          THE COURT:  That would be December 8 for giving a copy

9  to Mr. Restituyo, and December 22 for giving me your filing

10  with whatever agreement you get from Mr. Restituyo.

11          If there is no agreement, when would you like to

12  respond, Mr. Restituyo?

13          MR. RESTITUYO:  By January 26, your Honor.

14          THE COURT:  January 26.

15          Reply, if any, will be due February 8.

16          MR. BRUSTEIN:  I'm sorry.  Did you say 8th or 18th?

17          THE COURT:  8th, a short reply.

18          Mr. Restituyo, you can have motions now for a new

19  trial and for judgment according to the law.  When would you

20  like to file those motions, or do you want to make them orally?

21          MR. RESTITUYO:  No.  I'd like a written motion, your

22  Honor, and could I get --

23          THE COURT:  Let me check the rule.

24          Rule 50(b) provides motion for judgment as a matter of

25  law after trial may be made "no later than 28 days after the

NanWpizT2

1    entry of judgment, or if the motion addresses a jury issue not

2    decided by verdict, no later than 28 days after the jury was

3    discharged."  You have until 28 days from today.

4              MR. RESTITUYO:  Judgment will be entered today, your

5    Honor?

6              THE COURT:  Which will be November 23.  I think that

7    may be jurisdictional, but I don't know.  Can you do it by

8    November 23?

9              MR. RESTITUYO:  If that's what I have, I'll make it

10   work.  Although isn't November 23 Thanksgiving, your Honor?

11             THE COURT:  Yes.  And I think the 24th is a holiday,

12   so it will be November 27.  But for your sake, I'm not sure

13   that you want to hedge a bet.  I can fix it November 27, but if

14   it's jurisdictional, that won't make a difference.  So act

15   accordingly.

16             MR. RESTITUYO:  Understood.

17             THE COURT:  I consider that you've made your motions

18   during trial, so you're eligible to make this motion.

19             MR. RESTITUYO:  Thank you, your Honor.

20             THE COURT:  All right.  Opposition December 14.

21             Reply December 23.

22             MR. BRUSTEIN:  I apologize.  Could you just repeat

23   those two dates one more time, your Honor?

24             THE COURT:  I'm going to repeat all the dates.

25             Motions for judgment as a matter of law under Rule 50

NanWpizT2

1    and motions for retrial under Rule 59, the time to file such

2    motions is November 27, allowing for the fact that Thanksgiving

3    Day and the Friday after that are holidays and there's a

4    weekend that follows, Saturday and Sunday.  November 27 is the

5    following Monday.  November 22 is the last business day before

6    Thanksgiving.  By my count, Mr. Restituyo will be able to file

7    his motion until November 27.

8                Opposition by December 14.

9                Reply by December 22.

10               And as to the motion to establish attorney's fees, by

11   December 8 you will give your motion to Mr. Restituyo,

12   Mr. Brustein.  And two weeks later, by December 22, you will

13   file your motion along with whatever admissions or consents you

14   get from Mr. Restituyo.

15               Opposition is by January 26.

16               Reply by February 8.

17               We will issue an order reflecting these dates.

18               Is there anything else?

19               MR. BRUSTEIN:  Not from the plaintiff, your Honor.

20               MR. RESTITUYO:  Nothing from defendants, your Honor.

21               THE COURT:  Thank you, both, very much.

22               MR. BRUSTEIN:  Thank you, your Honor.

23               (Adjourned)

24

25