**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
MARIA JOSE PIZARRO,                                    No: 20-CV-5783 (AKH)

                                        Plaintiff,

          - against-


EUROS EL TINA RESTAURANT LOUNGE AND
BILLIARDS CORP., SANTIAGO QUEZADA, AND
SANTIAGO QUEZADA, JR.,

                                        Defendants.
------------------------------------------------------------------------x

---

**OPPOSITION TO DEFENDANTS' MOTION**
**PURSUANT TO F.R.C.P. 50 AND F.R.C.P. 59**

---

# TABLE OF CONTENTS

Table of Authorities ..................................................................................................3

Preliminary Statement...............................................................................................5

Statement of Relevant Facts......................................................................................5

Argument ...................................................................................................................9

      I.      The Court Should Deny Defendants' Rule 50 Motion ...........................9

             **A.** Ms. Pizarro was treated less well than the males working at Euros.................9

             **B.** The jury returned a verdict in favor of Ms. Pizarro on her Title VII and NYSHRL claims, so any perceived requirement for comparators (under the NYCHRL) does not even matter. ...................................................................11

      II.     Defendants Are Not Entitled to a New Trial. .......................................11

      III.    The Jury Verdict Is Not Excessive, But Even If It Is, Remittitur Should Be Minimal ...............................................................................................13

             **A.** The Court should not disturb the jury's award ...............................13

             **B.** Defendants did not argue that punitive damages are excessive and are thus precluded from doing so. ................................................................................16

Conclusion ..............................................................................................................18

## TABLE OF AUTHORITIES

*Bohack Corp. v. Iowa Beef Processors, Inc.*, 715 F.2d 703 (2d Cir. 1983)....................................11

*Breest v. Haggis,* 2023 WL 374404 (N.Y. Sup. Ct. Jan. 24, 2023) ................................................15

*Broecker v. New York City Dep't of Educ.*, 2023 WL 7485465 (2d Cir. Nov. 13, 2023) ..............17

*Carroll v. Trump*, 2023 WL 4612082 (S.D.N.Y. July 19, 2023) ............................................13, 16

*Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011)............................10

*C.R.R. vs. Bressniel Jansen*, 2017 WL 7906461 (Fla. Cir. Ct. 2017)...........................................14

*DiSorbo v. Hoy*, 343 F.3d 172 (2d Cir. 2003) ................................................................................16

*Doe v. Delarosa*, 2014 WL 7927468 (Fla. Cir. Ct. 2014) .............................................................14

*Egan v. Gordon*, No. 904231-20 (N.Y. Sup. Ct. Albany Cty. Nov. 10, 2022) ..............................14

*Graham v. City of New York*, 128 F.Supp.3d 681 (E.D.N.Y. 2015) ...............................................11

*Greenbaum v. Handelsbanken,* 67 F.Supp.2d 228 (S.D.N.Y. 1999) ..............................................17

*Hill v. Airborne Freight Corp.,* 212 F.Supp.2d 59 (E.D.N.Y. 2002) ..............................................17

*Ibrahim v. Fid. Brokerage Servs. LLC*, 2020 WL 107104 (S.D.N.Y. Jan. 9, 2020).......................10

*Jane Doe, Pro Ami v. Crime Prevention Agency*, 2018 WL 2949238 (Ga. State Ct. 2018) ..........15

*Jarvis v. Ford Motor Co.*, 283 F.3d 33 (2d Cir. 2002) ...................................................................11

*K.C. v. Going Places*, 2022 WL 1617851 (Ill. Cir. Ct. 2016) ........................................................14

*Knox v. John Varvatos Enters. Inc.*, 512 F.Supp.3d 470 (S.D.N.Y. 2021) .......................................9

*Krause v. Lancer & Loader Group*, 965 N.Y.S.2d 312 (Sup. Ct. New York Cty. 2013) ...............11

*Lavoie v. Pacific Press & Shear Co.*, 975 F.2d 48 (2d Cir. 1992) .................................................11

*Mayo-Coleman v. American Sugar Holdings*, 2018 WL 2684100 (S.D.N.Y. June 5, 2018).........16

*McIntyre v. Manhattan Ford, Lincoln-Mercury,* 256 A.D.2d 269.................................................17

*McQuillin v. Perez*, 2005 WL 2398200 (Fla. Cir. Ct. 2005) .........................................................14

*MJAC Consulting, Inc. v. Barrett*, 2006 WL 2051129 (S.D.N.Y. July 24, 2006) .........................12

*MS v. PCM Barker Cypress*, 2012 WL 1243849 (Tex. Dist. 2012) ....................................14

*Osorio v. Source Enterprises, Inc.*, 2007 WL 683985 (S.D.N.Y. Mar. 2, 2007)...........................13

*Plaintiff v. Luster*, 2003 WL 23519466 (Cal. Ct. Oct. 1, 2003) .....................................14

*Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252 (S.D.N.Y. 2014) ...........................11

*Qorrolli v. Metropolitan Dental Associates,* 2022 WL 17689836 (S.D.N.Y. Dec. 15, 2022)........15

*Santos-Vidal v. Hongye L.L.C.*, 2017 WL 5186772 (Cal. Super. Ct. Los Angeles Cnty. 2017).....14

*Smith v. Lightning Bolt Productions*, 861 F.2d 363 (2d Cir. 1988)................................11

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) .................................18

*Suri v. Grey Global Group, Inc.*, 164 A.D. 3d 108 (1st Dep't 2018) ...........................10

*Thomas v. Roach,* 165 F.3d 137 (2d Cir. 1999)..................................................17

*Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140 (2d Cir. 2014)................................13, 17

*United States v. Greer,* 285 F.3d 158 (2d Cir.2002) ...........................................17

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003)..........................................17

*Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174 (2d Cir. 2016) ........................................9

*Villata v. JS Barkats, PLLC*, 2021 WL 2458699 (S.D.N.Y. Apr. 16, 2021)............................9, 10

*Webber v. Dash*, 607 F. Supp. 3d 407 (S.D.N.Y. 2022) ...................................11

*Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655 (2d Cir. 2012)................................16

**PRELIMINARY STATEMENT**

On October 23, 2023, after hearing all the evidence in the case, an attentive and engaged jury returned a verdict for Maria Pizarro in the total of $2.725 million – $1.725 million in compensatory damages and $1 million in punitive damages – on her claims for sexual harassment/hostile work environment under Title VII of the Civil Rights Act ("Title II"), the New York State Human Rights Law (the "NYSHRL"), and the New York City Human Rights Law (the "NYCHRL"). Defendants now move for judgment as a matter of law and a new trial.

Remittitur is the crux of Defendants' motion. The jury's verdict regarding compensatory damages should not be remitted because of the heinous nature of the undisputed sexual harassment that Ms. Pizarro endured. In 2011, Santiago Quezada, Sr. lifted up Ms. Pizarro's skirt in front of a group of people at a political event; from mid-2011 until October 19, 2019, Mr. Quezada would grab her breasts twice a month and squeeze her behind at least once per month; and on October 19, 2023, Mr. Quezada tried to rape her. In addition, the punitive damages award should stand because Defendants did not challenge them and the ratio of punitive damages to compensatory damages is well within the limits in similar cases.

**STATEMENT OF RELEVANT FACTS**

Mr. Quezada sexually harassed Ms. Pizarro on a monthly basis for almost ten years, and Ms. Pizarro confronted him either or both verbally and physically every time. (Trial Transcript, Exhibit 5 to Decl. of Martin Restituyo ("TT"), ECF Dkt. No. 165-5. The first incident occurred in mid-2011 at a political function at a location called "809." (TT at 51:20–52:3) Mr. Quezada lifted Ms. Pizarro's dress in front of everyone in attendance and exposed her underwear and buttocks. (TT at 52:4-11) After the incident, Ms. Pizarro ran to the bathroom and was crying and felt very ashamed. (TT at 52:15-19) She called Mr. Quezada and told him that she would never

accompany him to another event ever again and never wore a dress in front of him again. (TT at 53:9-17)

From mid-2011 until October 19, 2019, Mr. Quezada would grab Ms. Pizarro's breasts twice a month and squeeze her behind at least once per month. (TT at 54:17-20) In return, she would stand up from her desk, lift up her arms, and "tell him that he had to [end] that behavior." (TT at 54:3-10) In addition, Mr. Quezada would follow her to the bar and "grab [her] buttock, tightening it." (TT at 55:12-22) Ms. Pizarro "felt very bad, humiliated. And the worst thing is that the employees also saw that." (TT at 55:25-56:1) Mr. Quezada would squeeze Ms. Pizarro's bottom approximately once a month. (TT at 57:14-15) She would tell him that she was going to call security, and he would respond that security was his employees; that he was their boss. (TT at 56:16-20)

Mr. Quezada would also tell inappropriate stories in front of Ms. Pizarro. (TT at 57:16-58:10, 59:6 -22) In addition, Mr. Quezada would use the bathroom with the door open, where Ms. Pizarro could see him, and on one occasion even masturbated. (TT at 34:7-12; 62:1-64:19) She would tell him to close the door. (TT at 65:3-4) On many occasions, Mr. Quezada would also "place perfume on her desk and would call [her] and tell [her] that he had left a gift for [her] there." (TT at 66:17-66:22) Ms. Pizarro would tell him not to place any gifts; she did not need them. (TT at 67:1-8)

On October 19, 2019, Mr. Quezada came into the office, pushed himself onto Ms. Pizarro, grabbed her breasts, started taking off her (and his) clothes, and pressed his penis against her buttocks. (TT at 88:1–91:8) Ms. Pizarro struggled with him until Mr. Castro, thankfully, emerged from within the office. (*Id.*) Mr. Quezada fixed his zipper and left immediately. (TT at 91:17-19) Mr. Castro gave a similar recantation; he received a phone call and went into the rear

of the office where the liquor was kept and made phone calls for 10-13 minutes. (TT at 34:13-25) After the phone call, he came out to find Mr. Quezada handling Ms. Pizarro "in a violent way," "rubbing her with force" with his hands in front of Ms. Pizarro. (TT at 35:7-11) Ms. Pizarro cried and went into the bathroom. (TT at 37:20–38:3) <u>This is all undisputed, as Defendants chose not to testify or put any witnesses on the stand.</u>

Ms. Pizarro testified to suffering from depression starting in mid-2011 as a consequence of Mr. Quezada's actions. (TT at 96:21-97:10) As a result of her depression, in 2011, Ms. Pizarro began taking anti-depressants, which progressed until Christmas 2019 when she attempted suicide, and her doctor referred her to a psychiatric clinic. (TT at 97:11-98:15) After that incident, Ms. Pizarro's sister came to visit her and, with [her doctor], they looked for a clinic that treats the Ms. Pizarro until now. (TT at 98:16-18) A psychiatrist changed her previous depression medication, but Ms. Pizarro still has thoughts of killing herself and has been labeled a "high risk patient" with a toll-free suicide hotline (TT at 98:25-99:17) Ms. Pizarro testified to having recurring nightmares about Mr. Quezada (and his son) and suffering from posttraumatic stress disorder. (TT at 99:18-21, 101:8-22)

At the charging conference, the parties had the following exchange with the Court:

> MR. BRUSTEIN: Page 15, your Honor. I do not believe that there's been any evidence submitted to the jury upon which they could make a finding of the elements for an affirmative defense. So I don't believe that it's something that should be put to the jury.
>
> MR. RESTITUYO: I disagree with that, your Honor.
>
> THE COURT: Tell me.
>
> MR. RESTITUYO: Yes. So that is information that I can -- from the information that I've elicited from Ms. Pizarro, I can establish my affirmative defense.
>
> THE COURT: Which one?

MR. RESTITUYO: That she would've, for example, <u>unreasonably failed to take advantage of preventative or corrective opportunity</u>. I elicited that she didn't tell anybody, that she had opportunities to tell people, etc.

THE COURT: That's not an affirmative defense.

MR. RESTITUYO: That's not what?

THE COURT: <u>That's not an affirmative defense. The only affirmative defense against the company is that if she failed to use a procedure at the company to remedy the problem.</u> But you brought out nothing about such a –

MR. RESTITUYO: Well, Mr. Quezada Jr. is an owner of the company and presumably, according to her, her supervisor.

THE COURT: I don't believe you brought that affirmative defense out.

MR. RESTITUYO: She stated that, your Honor.

THE COURT: I'm not going to give that. Withdrawn. We'll let the jury decide. There is nothing wrong in this charge. If the jury thinks it's important, they'll take it. If not, they won't take it. I'm leaving it.

(TT at 188:10–189:16 (emphasis added)).

Never did Mr. Restituyo mention anything about taking measures to "avoid harm otherwise." *See* Defendants' Memorandum in Support of Motion for Judgment as a Matter of Law and New Trial ("Def. Br.") at p. 13. The "avoid harm otherwise" argument is a new one that the Court should not entertain.

Finally, with respect to including an affirmative defense to the verdict sheet – the statute of limitations defense – Defendants' counsel did not object at all to the Verdict Sheet at trial (or ever). In fact, the Court struck this defense at the parties' pretrial conference. (Pretrial Conference Transcript, Exhibit 4 to Decl. of Martin Restituyo, ECF Dkt. No. 165-4 at 3:24–5:2).

**ARGUMENT**

**I.   THE COURT SHOULD DENY DEFENDANTS' RULE 50 MOTION.**

A party may move for judgment as a matter of law after the action has been submitted to the jury. Fed. R. Civ. P. 50(b). A party is entitled to Judgment as a Matter of Law when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [opposing] party on that issue." *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 180 (2d Cir. 2016). The Court may set aside a jury's verdict "where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against him." *Id*. In reviewing a Rule 50 motion, all credibility determinations and reasonable inferences of the jury are given deference and a court may not weigh the credibility of witnesses. *Id*. "[A] court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury, and must disregard all evidence favorable to the moving party that the jury is not required to believe." *Knox v. John Varvatos Enters. Inc.*, 512 F.Supp.3d 470, 478 (S.D.N.Y. 2021) (internal citations omitted).

**A.   Ms. Pizarro was treated less well than the males working at Euros.**

All the things Quezada did to Ms. Pizarro – he grabbed her breasts, squeezed her buttocks, showed his penis to her and masturbated in front of her, and tried to rape her – is because she is a woman. The members of the jury knew, as would any reasonable person, that Mr. Quesada was not running around Euros pressing his penis on the behinds of male employees or grabbing the chests and buttocks of male employees. The reason he grabbed Ms. Pizarro's breasts, squeezed her buttocks, showed his penis to her and masturbated in front of her, and tried to rape her is because of her sex and gender. *Villata v. JS Barkats, PLLC*, 2021 WL 2458699 at

9

\*10 (S.D.N.Y. Apr. 16, 2021) ("Villalta has amply alleged that she was 'treated less well' than her male counterparts as her job offer and continued employment were conditioned upon acquiescing to Barkats' sexual assault.").

There is no serious question in this case that such behavior constitutes treating an employee "less well" based on the employee's sex. *See Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 261 (S.D.N.Y. 2014) ("Any reasonable observer, if asked what motivated [a male supervisor to invite a female employee to a bar, stroke her hand, and kiss her], would almost certainly answer that [his] actions were prompted by the female employee's gender, not by her interest in collecting stamps or her affection for a particular sports team."); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 301 (S.D.N.Y. 2011) (holding that reasonable jury could find that single instance of unwanted genital contact is actionable); *Suri v. Grey Global Group, Inc.*, 164 A.D. 3d 108, 116–17 (1st Dep't 2018) (denying summary judgment on NYCHRL claim because defendant commented on plaintiff's physical appearance, put his hand on her thigh, and diminished her role after he was rejected). *Ibrahim v. Fid. Brokerage Servs. LLC*, 2020 WL 107104, at \*5 (S.D.N.Y. Jan. 9, 2020).

As evidenced by the above cases, the New York City Human Rights Law does not require specific male comparators in sexual assault cases. As such, the arguments raised by Defendants about the lack of comparators is a red herring.

In addition, Defendants' counsel never objected to the jury instructions – there is no talk of comparators anywhere in the transcript – so he must not be able to bring it up now. Parties who wish to object to a Court's jury instruction or verdict sheet must do so on the record, stating distinctly the matter objected to and the grounds for the objection. Fed. R. Civ. P. 51(c)(1). Moreover, "to avail itself of relief under this Rule, a party must object before the jury retires to

deliberate." *Jarvis v. Ford Motor Co.*, 283 F.3d 33, 56 (2d Cir. 2002). The Second Circuit has "emphasized that failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection." *Id.* at 57 (*quoting Lavoie v. Pacific Press & Shear Co.*, 975 F.2d 48, 55 (2d Cir. 1992) (internal alterations and quotation marks omitted); *see also Smith v. Lightning Bolt Productions*, 861 F.2d 363, 370 (2d Cir. 1988) (objections to the "form or substance of such questions" are waived unless the party objects prior to the jury retiring) (*citing Bohack Corp. v. Iowa Beef Processors, Inc.*, 715 F.2d 703, 710 at n. 8 (2d Cir. 1983))." *Webber v. Dash*, 607 F. Supp. 3d 407, 414 (S.D.N.Y. 2022). Indeed, at the charging conference, Defendants' counsel stated, "Your Honor, I don't have any objections to this entire document [of jury instructions]" or the verdict sheet. (TT at 187:1-7)

**B.     The jury returned a verdict in favor of Ms. Pizarro on her Title VII and NYSHRL claims, so any perceived requirement for comparators (under the NYCHRL) does not even matter.**

Ms. Pizarro brought claims under Title VII, the NYSHRL, and the NYCHRL. Defendants now hang their hat on the "less well" standard set forth under the NYCHRL – for the first time – but do not challenge the Title VII or NYSHRL claims at all. The NYSHRL allows for individual liability, *Krause v. Lancer & Loader Group*, 965 N.Y.S.2d 312, 323 (Sup. Ct. New York Cty. 2013), and the jury found that Mr. Quezada was liable under all three statutes, so Defendants are individually liable under the NYSHRL even if not the NYCHRL – a distinction without a difference.

**II.     DEFENDANTS ARE NOT ENTITLED TO A NEW TRIAL.**

Grounds for granting a new trial include a verdict that is against the weight of the evidence, substantial errors in the admission or exclusion of evidence, and non-harmless errors in jury instructions or verdict sheets. *Graham v. City of New York*, 128 F.Supp.3d 681, 692-93 (E.D.N.Y. 2015) (citations omitted). A jury's verdict should "rarely be disturbed" and a motion

for a new trial should be granted only if the court is convinced that the jury's verdict is "seriously erroneous or a miscarriage of justice." *Id*. (citations omitted). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *MJAC Consulting, Inc. v. Barrett*, 2006 WL 2051129 at *3 (S.D.N.Y. July 24, 2006) (citation omitted).

First, Defendants admit that a defending employer may avoid liability only if (a) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, <u>and</u> (b) the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Def. Br. at p. 12 (citation omitted). Here, Defendants clearly failed to "exercise[] reasonable care to prevent and correct promptly any sexually harassing behavior" by allowing Mr. Quezada to do what he pleased with Ms. Pizarro for almost ten years. Further, Ms. Pizarro <u>did</u> try to "avoid harm otherwise" by telling Mr. Quesada to stop, pushing him off her, physically trying to stop him, and telling him to close the door while urinating, among other things. She struggled physically and verbally to protect herself from Quezada. At trial, Defendants' counsel objected to the jury instructions only insofar as they "unreasonably failed to take advantage of preventative or corrective opportunity." (TT at 188:10–189:16) He mentioned nothing about the language "avoid harm otherwise" at any time, so he cannot now use it as a basis for challenging the verdict. "It is well-settled that Rule 59 is not a vehicle for … presenting the case under new theories." *MJAC Consulting*, 2006 WL 2051129 at *3.

Second, with respect to including an affirmative defense to the verdict sheet – the statute of limitations defense – Defendants' counsel did not object at all to the Verdict Sheet at trial (or ever). Defendants cannot now "present[] the case under new theories." *Id*. Indeed, the Court

struck this defense at the parties' pretrial conference. (Pretrial Conference Transcript, Exhibit 4
to Decl. of Martin Restituyo, ECF Dkt. No. 165-4 at 3:24–5:2)

## III.   THE JURY VERDICT IS NOT EXCESSIVE, BUT EVEN IF IT IS, REMITTITUR SHOULD BE MINIMAL.

### A.   The Court should not disturb the jury's award.

This was not an isolated event, nor was it limited to a few events. Ms. Pizarro was
sexually assaulted at least three times per month over an eight-year period – a total of over 250
times. No one disputed that. Mr. Quezada masturbated in front of Ms. Pizarro. No one disputed
that. Mr. Quezada urinated in front of Ms. Pizarro numerous times and zipped up his zipper three
feet away from her. Again, no one disputed that. Ms. Pizarro saw a psychiatrist and took
medication after trying to commit suicide. It has been four years now, and Ms. Pizarro still has
nightmares. In this case, an expert is not necessary to tell the Court how badly damaged she is.
*See Osorio v. Source Enterprises, Inc.*, 2007 WL 683985 at *5 (S.D.N.Y. Mar. 2, 2007)
(upholding $4 million verdict for retaliation); *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 166
(2d Cir. 2014) ($1.32 million).

This case resembles *Carroll v. Trump*, where the jury's compensatory damages award of
$2 million for a sexual battery claim involving assault in a department store dressing room and
digital and forcible penetration did not deviate materially from reasonable compensation for pain
and suffering so as to make it excessive under New York law. *Carroll v. Trump*, 2023 WL
4612082 at *18-22 (S.D.N.Y. July 19, 2023). The *Carroll* plaintiff suffered physical injury and
long-lasting emotional and psychological trauma after the incident. *Id*. Like the *Carroll* plaintiff,
Ms. Pizarro suffered long-lasting emotional and psychological trauma after the incident.
However, the *Carroll* case dealt with just one incident – not over 250 times as is the case here.

13

While the court in *Carroll* found $2 million in compensatory damages to be reasonable, much higher awards for sexual assault have also been found reasonable.  In *Egan v. Gordan*, the court awarded $13.8 million in compensatory damages to a rape and sexual assault survivor who "continuously relive[d]" the abuse through "flashbacks," was diagnosed with post-traumatic stress disorder, experienced hypervigilance and sleep disturbance, and whose career and personal life were upended by the abuse she suffered. *See* November 10, 2022 Decision and Order in *Egan v. Gordon*, No. 904231-20 (N.Y. Sup. Ct. Albany Cty. Nov. 10, 2022) NYSCEF No. 26. In *McQuillin v. Perez*, a jury awarded $15 million in damages, including $6 million in compensatory damages – $9.1 million in 2022 dollars – to a 32-year-old woman who was raped once by a professional baseball player. *McQuillin v. Perez*, 2005 WL 2398200 (Fla. Cir. Ct. 2005); *see also C.R.R. vs. Bressniel Jansen*, 2017 WL 7906461 (Fla. Cir. Ct. 2017) (awarding $49.2 million total damages, including $19.2 million in compensatory damages, to teen survivor of rape and sexual assault who suffered psychological injuries, "constant fear," and "anxiety"); *Santos-Vidal v. Hongye L.L.C.*, 2017 WL 5186772 (Cal. Super. Ct. Los Angeles Cnty. 2017) ($15.5 million for pain and suffering to rape and sexual harassment survivor); *Doe v. Delarosa*, 2014 WL 7927468 (Fla. Cir. Ct. 2014) ($12.4 million in compensatory damages to survivor for single incidence of sexual assault who suffered "mental anguish" and "emotional anguish"); *MS v. PCM Barker Cypress*, 2012 WL 1243849 (Tex. Dist. 2012) ($12 million compensatory damages to single adult rape survivor for pain and suffering, loss of normal life, and emotional distress); *K.C. v. Going Places*, 2022 WL 1617851 (Ill. Cir. Ct. 2016) ($7.8 compensatory damages for pain and suffering to single adult sexual assault survivor); *Plaintiff v. Luster*, 2003 WL 23519466 (Cal. Ct. Oct. 1, 2003) (awarding $10 million in compensatory damages and $10 million in punitive damages to victim of single rape who "suffered

14

psychological injuries resulting in post-traumatic stress disorder"); *Jane Doe, Pro Ami v. Crime Prevention Agency*, 2018 WL 2949238 (Ga. State Ct. 2018) (awarding $1 billion in compensatory damages for pain and suffering of teenage girl in single incidence of rape)." *Breest v. Haggis,* 2023 WL 374404, at *3-4 (N.Y. Sup. Ct. Jan. 24, 2023).

While Defendants have conceded that courts have found $500,000.00 in compensatory damages for emotional distress acceptable, *see* Def. Br. at p. 17; *Mayo-Coleman v. American Sugar Holdings, Inc.*, 2018 WL 2684100 at *5 (S.D.N.Y. June 5, 2018) ($500,000), those cases pale in comparison to what Ms. Pizarro endured.

The cases cited by Defendants are easily distinguishable, as they do not relate to either the emotional distress of being violently sexual assaulted or repeatedly sexually assaulted over many years, both of which were the case in the present matter.  For example, Defendants claim *Qorrolli v. Metropolitan Dental Associates* is "identical" to this case. Def. Br. at p. 17; *see Qorrolli v. Metropolitan Dental Associates, D.D.S.-225 Broadway, P.C.*, 2022 WL 17689836 (S.D.N.Y. Dec. 15, 2022). In *Qorrolli*, the plaintiff "introduced evidence that her job caused her anxiety and depression, that she saw a psychiatrist for a period of time and took medication in order to treat her symptoms, and that she experienced physical manifestations of the distress in the form of panic attacks, and damage to her nose." *Id.* at *24-26. Like the plaintiff in *Qorrilli*, Ms. Pizarro saw a psychiatrist and took medication in order to treat her symptoms. Unlike the plaintiff in *Qorrilli*, however, Ms. Pizarro was sexually harassed at least three times per month over an eight-year period – he grabbed her breasts an undisputed twice a month and squeezed her behind at least once per month – for a total of <u>over 250 times</u>. Mr. Quezada masturbated and urinated in front of her. And Ms. Pizarro tried to commit suicide – a far cry from sustaining some type of damage to her nose. *Id.* at *24. This case is not *Qorrolli*.

More than a decade ago, the Second Circuit upheld an award of $1 million in a race

discrimination case which involved no expert testimony. *See Zeno v. Pine Plains Cent. Sch.*

*Dist.*, 702 F.3d 655, 673 (2d Cir. 2012). The Second Circuit has long recognized that it "must

take into account inflation, as the reasonable range for [Plaintiff's] injuries today is higher than

what it would have been ten years ago." *DiSorbo v. Hoy*, 343 F.3d 172, 185 (2d Cir. 2003).

Accounting for inflation, from 2012, a $1 million verdict today would be roughly $1.355 million

today. *See* US Bureau of Labor and Statistics website, at CPI Inflation Calculator.[1]  As bad as

the discrimination encountered in *Zeno* was, it lasted a shorter period of time and did not rise to

the violent and sexual assaults suffered by Ms. Pizarro. As such, the Court should find that a

compensatory award of $1.725 million compensatory award is fair and reasonable and should not

be disturbed.

The mere fact that courts have found $500,000 to be a reasonable award in one case is not

a basis for this Court to find that the jury's award in the present case was excessive.  "Although a

review of comparable cases is appropriate, we need not average the high and low awards; we

focus instead on whether the verdict lies within the reasonable range." *Restivo v. Hessemann,*

846 F.3d 547, 587 (2d Cir. 2017).  As a court just found $2 million to a reasonable compensatory

damages award in a case involving a single sexual assault, the jury's award in this case does not

deviate materially from what is reasonable. *See Carroll*, 2023 WL 4612082. Accordingly, Ms.

Pizarro respectfully requests that the Court not remit the compensatory award.

### B.    Defendants did not argue that punitive damages are excessive and are thus precluded from doing so.

The Second Circuit has long considered arguments not raised in an initial motion to be

waived. *See, e.g., United States v. Greer,* 285 F.3d 158, 170 at n. 3 (2d Cir.2002); *Thomas v.*

---

[1] https://www.bls.gov

*Roach,* 165 F.3d 137, 146 (2d Cir.1999); *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003).

"[P]laintiffs forfeited this argument when they failed to assert it in their opening brief." *Broecker*

*v. New York City Dep't of Educ.*, 2023 WL 7485465, at *3 (2d Cir. Nov. 13, 2023). Here,

Defendants do not challenge the $1 million punitive damages award against Mr. Quezada and

Euros. Therefore, those damages must stand.

      Even if the Court were to consider the appropriateness of the punitive damages award, it

should still stand. "Upon reviewing the Second Circuit and New York cases brought to our

attention, it appears that punitive awards for workplace discrimination rarely exceed $1.5

million." *See, e.g., Hill v. Airborne Freight Corp.,* 212 F.Supp.2d 59, 76–77 (E.D.N.Y. 2002)

(awarding $1 million, spread across multiple plaintiffs, for discrimination and retaliatory

conduct); *Greenbaum v. Handelsbanken,* 67 F.Supp.2d 228, 269–71 (S.D.N.Y.1999) (Sotomayor,

J.) (upholding $1.25 million award in sex discrimination case, noting that the defendants'

actions, while malicious and deceitful, were "certainly less reprehensible than the worst

imaginable violations"); *McIntyre,* 256 A.D.2d at 271, 682 N.Y.S.2d at 169 (remitting award to

$1.5 million in case concerning harassment, retaliatory discharge, and IIED); *Turley v. ISG*

*Lackawanna, Inc., 774 F.3d 140, 166 (2d Cir. 2014).*

      Here, the punitive damages are less than the compensatory damage award of $1.725

million, which displays that the jury truly thought out how much it would take to punish and

deter Mr. Quezada. Even assuming, *arguendo*, the Court were to reduce the compensatory

damages, the $1 million in punitive damages would still be well within the range of awards that

have been acceptable. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 426 (2003)

(While "there are no rigid benchmarks that a punitive damages award may not surpass," "an

award of more than <u>four</u> times the amount of compensatory damages might be close to the line of

constitutional impropriety.") (emphasis added). Accordingly, the Court should also not disturb the jury's punitive damages award, first because Defendants have not objected to it in their initial moving papers, but second because it is within the range of acceptable awards.

## CONCLUSION

For the reasons set forth above, Ms. Pizarro respectfully requests that the Court deny Defendants' motions in full.

Dated:  New York, New York
        December 14, 2023

                              MARK A. MARINO, PC


                              ____/s/ Mark Marino_____
                              Mark Marino, Esq.
                              99 Wall Street, Suite 1865
                              New York, New York 10005
                              Tel:  212-748-9552
                              Fax:  646-219-5350