UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARIA J. PIZARRO, | Civ. No.: 1:20-cv-05783 (AKH) |
| Plaintiff, | |
| – against – | |
| EUROS EL TINA RESTAURANT LOUNGE AND BILLIARDS CORP, SANTIAGO QUEZADA, and SANTIAGO QUEZADA, JR., | **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| Defendants, | |
| – and – | |
| J. E. CASTRO, ELDAIO CASTRO PRODUCTIONS, INC., EMITON FERNANDEZ a.k.a. EMILIO FERNANDEZ, NARCISO GOMEZ, ZOLIMAR MEJIA a.k.a. ZULIMAR MEJIA, and TOMAS ANDRES PIZARRO ZEPEDA, | |
| Third Party Defendants. | |

Plaintiff/Counterclaim Defendant Maria Jose Pizarro ("Ms. Pizarro") submits this Memorandum of Law in Support of Motion for Summary Judgment as against Defendants/Counterclaim Plaintiffs Santiago Quezada, Sr. ("Senior"), Santiago Quezada, Jr. ("Junior"), and Euros El Tina Restaurant Lounge and Billiards Corp. ("Euros") (collectively, "Defendants"):

**PRELIMINARY STATEMENT**

Ms. Pizarro moves for summary judgment on all claims in order to avoid Defendants' efforts to further retaliate against and harass her in state court. All of the Counterclaims should be thrown out because the allegations – as presented in the pleadings and amplified in the Quesada's depositions – are either barred or lack all plausibility. Defendants expect the Court to

believe that Ms. Pizarro and the Co-Conspirators swindled Euros out of over $600,000 in 2017-2018, when they admitted during their own depositions that they did not lose any money before 2019. No rational jury could believe their story.

## STATEMENT OF FACTS

Defendants brought counterclaims based on allegations that Ms. Pizarro and the Co-Conspirators stole hundreds of thousands of dollars from Euros during 2017-2018. *See* Answer with Counterclaims, ECF Dkt. 46 ("Count.") at ¶ 93. Defendants, however, have no evidence that anything was taken from Euros before 2019. *See* Plaintiff's Rule 56.1 Statement ("Pl. 56.1") at ¶¶ 2, 19, 32. In their depositions, for the first time, they claimed that from May 2019 through November 2019, Ms. Pizarro stole bottles of alcohol. Pl. 56.1 at ¶ 33. Importantly, Euros did not buy the bottles of alcohol but used money from Senior's other businesses to buy the alcohol.[1] Pl. 56.1 at ¶¶ 20, 21.

Defendants claim that Ms. Pizarro stole over $600,000 from Euros, yet they never noticed missing money until May 2019, when they allege that some bottles of alcohol went "missing." Pl. 56.1 at ¶¶ 32, 33, 36. Senior and Junior both testified that they were unaware of the any money being stolen from Euros prior to 2019. Pl. 56.1 at ¶¶ 1, 2, 32. In fact, during his deposition, Junior admitted that he did not have evidence of Ms. Pizarro taking money from Euros. Pl. 56.1 at ¶¶ 2, 21. And – for the purposes of this motion – even giving Defendants the

---

[1] Junior testified that Defendants "would deposit money from other businesses into that account. So the money to pay the alcohol wasn't com[ing] from Euros. Even sometimes to pay rent was coming from the other restaurants upstairs" as far back as 2012. Pl. 56.1 at ¶ 42. Junior further admitted that Euros was taking money from other businesses and putting the money into Euros' own accounts. Pl. 56.1 at ¶¶ 20-22, 42.

benefit of the doubt that any bottles were actually missing/stolen, Defendants have no evidence to prove how many bottles they lost or how much they cost. Pl. 56.1 at ¶¶ 7, 25-27.[2]

While Defendants attempt to claim that Ms. Pizarro must have stolen from them because she had no other source for acquiring so much money, Senior admitted[3] that he had actually paid Ms. Pizarro $660,000 when he bought the business now known as Euros from her in 2010. Pl. 56.1 at ¶ 36. The money Ms. Pizarro sent overseas – to internet scammers – simply came from her savings from her sale of the business to Senior. Declaration of Maria Pizarro, Ex. 4 to Brustein Decl. at ¶¶ 2-4.

Throughout discovery, Defendants failed to identify each of the specific accounts where the Defendants had money, how much money those accounts had before any purported theft, and how much those accounts have now after the purported theft, saying nothing of Defendants failure to provide the corresponding documentation to support those allegations. Brustein Decl. at ¶ 6. Indeed, Defendants objected to producing documents showing Euros profits and losses and never produced those documents during discovery. Brustein Decl. at ¶¶ 7-9. In fact, Defendants threw away all receipts – generated by Ms. Pizarro nightly – which they purport would help prove their case. Pl. 56.1 at ¶¶ 8-9, 16-18. Defendants did not tell their accountant, their security guards, or even their insurance company about the alleged theft. Pl. 56.1 at ¶¶ 12-15. Further, they did not make out a police report because they didn't know who had stolen the bottles. Pl. 56.1 at ¶ 10.

---

[2] Defendants have no video evidence of Ms. Pizarro stealing from them despite having cameras all throughout Euros since 2010 and, specifically, in the office where the bottles were stored. Pl. 56.1 at ¶¶ 3-4, 11, 22.

[3] Not for nothing, Senior has a conviction for lying/perjury. He lied to customs officials by declaring he only had $10,000 when he had $115,000 hidden in his socks. Pl. 56.1 at ¶¶ 39-40.

Defendants went so far as to hire an investigator to investigate Ms. Pizarro – *after* she made her allegations of sexual harassment. Pl. 56.1 at ₱ 28. While Junior referred to what happened to Ms. Pizarro as allegations of sexual harassment, a four day jury trial was held in October 2023. Brustein Decl. at ₱ 10. During that trial, the witnesses testified that Ms. Pizarro was sexually assaulted for eight years by Senior, including an attempted rape and an episode of Senior masturbating in front of her. Pl. 56.1 at ₱ 38. The jury found that Defendants Senior and Euros were liable – in the amount of $2.725 million in compensatory and punitive damages. Brustein Decl. at ₱ 10; *see generally* Verdict Sheet, at Civil Docket Sheet, at Document No. 196.

In denying Defendants' Motion for Remittur, the Court found that:

> Plaintiff testified that Quezada groped and molested her on numerous occasions, disregarding her objections and protestations, that she feared rape and sexual assaults, and was driven to suicidal ideations. She testified that she tried to take her own life after Defendant Quezada attempted to rape her. Plaintiff's credibility was untouched by strenuous cross-examination… Plaintiff's testimony, corroborated by other witnesses, illuminated a decade-long and worsening pattern of physical and verbal harassment by Quezada, of groping and pinching, of exposures of private parts and a masturbation in front of her, and an attempted rape. No employee should be subjected to such conduct. Defendants' reprehensible conduct fully justifies the jury's award of punitive damages. One million dollars may be high, but Quezada's conduct warrants the award.

Court's 2/27/24 Decision, ECF Dkt. No. 195, at pp. 5-6.

The investigator conducted a two-week investigation and could find no evidence that Ms. Pizarro had taken anything from Euros. Pl. 56.1 at ¶¶ 28-29. Junior also had the capacity to surveil Ms. Pizarro from his phone, which he did. Pl. 56.1 at ¶¶ 23-24. Despite watching her on camera, Defendants never saw her steal anything. Pl. 56.1 at ¶¶ 22, 25.

Defendants allege that Plaintiff committed the following: wire fraud in violation of 18 U.S.C. § 1343; money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B), (a)(2)(B), and (a)(3)(B); engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a); and interstate transportation of stolen property in violation of 18 U.S.C. § 2314. Count. at ¶ 9. Defendants also bring a civil RICO claim, as well as conspiring to violate RICO. Count. ¶¶ 120-131. Finally, Defendants bring state law claims for conversion, fraud, and unjust enrichment. Count. ¶¶ 132-150.

## ARGUMENT

**I.      STANDARD OF LAW ON A MOTION FOR SUMMARY JUDGMENT.**

In considering a motion for summary judgment, the Court resolves all ambiguities and draws all reasonable inferences against the moving party. *Lindsay v. Ass'n of Prof'l Flight Attendants*, 581 F.3d 47, 50 (2d Cir. 2009). "Summary judgment is appropriate only 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (citations omitted). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Lindsay, 581 F.3d at 50. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. ***If the evidence is merely colorable or is not significantly probative, summary judgment may be granted***." *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted) (emphasis added). Importantly, if "the facts alleged are so contradictory that doubt is cast upon their plausibility, the court may ***pierce the veil of the complaint's factual allegations*** and dismiss the claim." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F. 3d 98, 106 (2d Cir. 2011) (*quoting Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (emphasis added)). "To hold otherwise, and require district courts to allow parties to defeat summary judgment simply by testifying to the allegations in their pleadings … would license the mendacious to seek windfalls in the litigation lottery." *Id*. (citation omitted).

## II. THERE IS NO IMPLIED RIGHT OF ACTION FOR DEFENDANTS' CLAIMS OF WIRE FRAUD, MONEY LAUNDERING, ILLICIT MONETARY TRANSACTIONS, OR TRANSPORTING ILLEGAL GOODS.

Defendants allege, among other things, that Plaintiff committed the following: wire fraud in violation of 18 U.S.C. § 1343; money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B), (a)(2)(B), and (a)(3)(B); engaging in monetary transactions in property derived from specified unlawful activity in violation of 18 U.S.C. § 1957(a); and interstate transportation of stolen property in violation of 18 U.S.C. § 2314. Count. at ¶ 9. There is, however, no implied right of action for these otherwise criminal offenses. *See Cort v. Ash*, 42 U.S. 66, 79 (1975); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994). Thus, these claims fail as a matter of law.

### III. DEFENDANTS' RICO CLAIMS FAIL BECAUSE THE ALLEGATIONS ARE NOT PLAUSIBILE.

Defendants bring a civil RICO claim – specifically, a violation of 18 U.S.C. §§ 1962(c) and (d) – as well as conspiring to violate RICO. Count. ¶¶ 120-131. The fatal flaw of these causes of action, is that by Defendants' own admissions, the allegations are insufficient to violate RICO.

In their Counterclaims, Defendants alleged that from April 2017 to July 2018 – a period of just fifteen months – Ms. Pizarro and the Co-Conspirators stole over $435,000 from Euros. Count. at ¶¶ 93, 94. However, Senior and Junior both testified that they were unaware of the any money being stolen from Euros prior to 2019.  Therefore, no credible view of the evidence could support a finding that any money was stolen from Euros prior to 2019 by anyone, much less, Ms. Pizarro.

During his deposition, Junior admitted that he did not have any evidence of Ms. Pizarro taking money from Euros. The only theft that Senior and Junior even alleged Euros suffered were missing bottles of alcohol in 2019 before Euros closed in November 2019.  The RICO claim must be dismissed because they lack "continuity." A RICO plaintiff must show a "pattern of racketeering activity" based upon the occurrence of at least two predicate acts within a ten-year period. 18 U.S.C. § 1961(5). The predicate acts must be "related" and "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The continuity requirement can be satisfied by either "closed-ended" or "open-ended" continuity.[4] *De Sole v. Knoedler Gallery, LLC, et al.*, 974 F.Supp.2d 274, 305-06 (S.D.N.Y. 2013).

---

[4] "Closed-ended continuity" is shown by proving a series of related predicate acts extending over a ***finite period of time***. When calculating the relevant time period for closed-ended continuity, the court considers

When calculating the relevant time period for closed-ended continuity supporting a pattern of racketeering activity for purposes of a RICO claim, the Court must consider only the time period during which defendants committed the alleged predicate acts. The Counterclaims allege that "[i]n the *short span of time from April 2017 to July 2018*, Plaintiff and the Co-Conspirators stole hundreds of thousands of dollars of Defendants' money and sent it to Africa…." Count. at ¶ 93 (emphasis added). Those allegations were debunked by Senior and Junior's own admissions during their depositions, when they admitted that nothing was stolen from Euros before 2019. Even crediting their claim that someone had stolen bottles of alcohol from Euros in 2019, as Euros closed in November 2019, and even assuming that stolen bottles of alcohol could be a basis for a RICO claim, less than twelve months is far shorter than the two-year requirement; thus, Defendants cannot satisfy the continuity requirement and the RICO claim fails. *De Sole*, 974 F.Supp.2d at 305-08 ("The Second Circuit has never found a period of less than two years of activity sufficient to satisfy the closed-ended continuity requirement.").

Even if the continuity requirement could be met, which it cannot, the RICO claim would still fail because of the Defendants lack of specific details regarding Defendants' accounts. Not only did Defendants fail to provide financial records for their accounts during discovery sufficient to show that Euros suffered any losses, but Junior testified that Defendants "would deposit money from other businesses into that account. So the money to pay the alcohol wasn't come from Euros. Even sometimes to pay rent was coming from the other restaurants upstairs" as far back as 2012. Junior further admitted that Euros was taking money from other businesses and putting the money into Euros' own accounts. Despite Defendants moving money on a

---

only the time period during which defendants committed the alleged predicate acts. On the other hand, with open-ended continuity, a RICO plaintiff must show that there was a threat of continuing criminal activity extending ***indefinitely into the future***. *De Sole v. Knoedler Gallery, LLC, et al.*, 974 F.Supp.2d 274, 305-06 (S.D.N.Y. 2013). Here, closed-ended continuity is relevant since the predicate acts – with respect to the portion of the action claiming $435,000 in damages sent to Africa – are finite in nature.

monthly basis between their different businesses, Defendants have failed to identify each of the specific accounts where the Defendants had money, how much money those accounts had before any purported theft, and how much those accounts have now after the purported theft, saying nothing of Defendants failure to provide the corresponding documentation to support those allegations.  For all of those reasons, Defendants RICO claim must fail.

## IV. DEFENDANTS' CLAIMS FAIL BECAUSE THEY CANNOT PROVE ANY DAMAGES.

It is axiomatic that to survive a summary judgment motion for Defendants' state claims of conversion, fraud, and unjust enrichment, Defendants must be able to prove they suffered damages with certainty. *Cruz v. TD Bank, NA*, 855 F. Supp. 2d 157, 174 (S.D.N.Y. 2012) (elements of a conversion claim); *Kaye v. Grossman*, 202 F. 3d 611, 614 (2d Cir. 2000) (elements of a fraud claim); *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F. 3d 296, 306 (2d Cir. 2004) (elements of an unjust enrichment claim).

Defendants have produced no evidence that Euros actually suffered any damages. Indeed, "the facts [alleged in the Counterclaims and the depositions] are so contradictory that doubt is cast upon their plausibility, [so] the court may pierce the veil of the complaint's factual allegations and dismiss the claim." *Rojas*, 660 F. 3d at 106.

### A. Defendants cannot show that the business lost a dollar, much less show that with any specificity.

Defendants' testimony suggests that no money was lost to Ms. Pizarro. And – for the purposes of this motion – even assuming any bottles were stolen, they have no evidence to prove how many bottles they lost or how much they cost.  Defendants have not provided any financial statements, receipts, etc. In fact, they threw away all receipts which would purportedly would have helped prove their case. Defendants did not tell their accountant, their security guards, or

even their insurance company about the alleged theft. Further, they did not make out a police report.

Defendants claim that Ms. Pizarro stole over $600,000, yet they never noticed missing money until May 2019 when they suspected that some bottles apparently went "missing." Notably, Defendants objected to Plaintiff's discovery request for documents showing Euros' profits and losses for 2016 to the present on the grounds that "it seeks information that is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence," and produced no documents responsive to the request.  Defendants never produced documents showing Euros profits and losses for the period of 2016 through the Euros' closing in November 2019. Importantly, Defendants have no evidence that Ms. Pizarro took even a single bottle, let alone hundreds of thousands of dollars.

**B.     Defendants cannot show that Ms. Pizarro took a single dollar from them.**

Defendants have no video evidence of Ms. Pizarro stealing from them despite having cameras all throughout Euros since 2010 and, specifically, in the office where the bottles were stored. In fact, they are not sure that the video would show anything at all. Defendants went so far as to hire an investigator to investigate Ms. Pizarro – *after* she made her allegations of sexual harassment. The investigator conducted a two-week investigation and could not find no evidence that Ms. Pizarro had taken anything from Euros.

Junior had the capacity to surveil Ms. Pizarro from his phone, which he did. Despite watching her on camera, Defendants never saw her steal anything.  Senior testified that he did not make a police report about the purportedly missing bottles because he did not know who had taken them.  Defendants only basis to claim that Ms. Pizarro had stolen from them was that she had sent money overseas.  While Defendants attempt to claim that Ms. Pizarro must have stolen

from them because she had no other source for acquiring so much money, Senior admitted that he had actually paid Ms. Pizarro over $600,000 when he bought the business now known as Euros from her. As Ms. Pizarro testified that the money she sent overseas came from her savings from her sale of the business to Senior, it is clear that these frivolous claims are nothing more than retaliation for Ms. Pizarro's complaints of sexual harassment and sexual assault by Senior, for which a jury found to be legitimate. Accordingly, Ms. Pizarro respectfully requests that **ALL** of the federal and state claims should be dismissed with prejudice so that Ms. Pizarro is not required to fight the state law claims in another proceeding.

## CONCLUSION

For the foregoing reasons, Plaintiff Maria Jose Pizarro respectfully requests that the Court dismiss Defendants' federal and state claims with prejudice as well as any other relief the Court deems just and proper.

Dated: New York, New York
April 17, 2024

                                                       */s/ Evan Brustein*
Evan Brustein, Esq.
Brustein Law PLLC
299 Broadway, 17th Floor
New York, New York 10007
Tel: (212) 233-3900
Fax: (212) 285-0531
*Attorney for Plaintiff*